IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

JOSE MEDIAVILLA,                                                    INDEX #:
                                                                   14CV8624(VSB)(HBP)
                                                                   ECF CASE

                              PLAINTIFF,

            vs.                                                    FIRST AMENDED
                                                                   COMPLAINT
THE CITY OF NEW YORK, a municipal entity,                          [JURY TRIAL
NYPD LIEUTENANT MICHAEL ZIELINSKI,                                 DEMANDED]
NYPD DEPUTY CHIEF STEVE ANGER,
NYPD PO ANTHONY CIARAMITARO (#27932),
NYPD CAPTAIN JOHN DUFFY,
NYPD LIEUTENANT FRANK VIVANNO,
NYPD LIEUTENANT STEVEN LLARDDO,
NYPD LIEUTENANT THOMAS FEENEY,
NYPD SERGEANT JOSEPH DIAZ,
NYPD SERGEANT MICHAEL O'NEILL,
NYPD SERGEANT FIOR BATISTA,
NYPD DEPUTY INSPECTOR ELISA COKKINOS,
NYPD SERGEANT SLAYNE,
NYPD INSPECTOR O'DONNEL,
NYPD LIEUTENANT BILL COOK,
NYPD PO MICHAEL CRUZ,
NYPD LIEUTENANT DANIEL J. ALBANO,
NYPD SERGEANT EDWARD VINCE,
and NEW YORK CITY POLICE
OFFICERS "JOHN DOES 1-10"
                              DEFENDANTS.
_____

*"I ... do solemnly swear (or affirm) that I will support and defend the Constitution of the United States against all enemies, foreign and domestic; that I will bear true faith and allegiance to the same; and that I will obey the orders of the President of the United States and the orders of the officers appointed over me, according to regulations and the Uniform Code of Military Justice. So help me God."*

                              -United States Armed Forces Oath of Enlistment
                              10 U.S.C. §502

Plaintiff JOSE MEDIAVILLA, by his attorneys, STECKLOW COHEN & THOMPSON, complaining of the defendants, respectfully alleges as follows:

## I. PRELIMINARY STATEMENT

1.      Plaintiff brings this action for compensatory damages, punitive damages and attorney's fees pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988 for violations of his civil rights, as said rights are secured by said statutes and the Constitutions of the State of New York and the United States.

2.      Plaintiff JOSE MEDIAVILLA is a thirty-two year-old male ex-Marine. Mr. MEDIAVILLA believes in the power of peaceable assembly to affect political and social change, and in the guarantees of the United States Constitution to peaceably assemble and petition the government for a redress of grievances. Acting on this belief, he became involved with the Occupy Wall Street ("OWS") movement on its inaugural date, September 17, 2011.

3.      OWS is a movement that, *inter alia*, protests the institutionalized inequality in this country that funnels almost all the nation's political power, wealth and resources to a tiny fraction of people and their corporations, and denies the vast majority of ordinary Americans their fair share.

4.      Defendants arrested Plaintiff JOSE MEDIAVILLA on November 5, 2011 and on November 12, 2011. On both occasions Mr. MEDIAVILLA was lawfully exercising his First Amendment protected rights to free speech and assembly. Nonetheless, the Defendant POLICE OFFICERS arrested, detained, and charged Mr. MEDIAVILLA with crimes and violations that he did not commit.

5.      As a result of the Defendants' conduct of November 5, 2011, Mr. MEDIAVILLA had to appear before the court on multiple occasions until the matter was disposed of by Adjournment in Contemplation of Dismissal.

6.      As a result of the Defendants' conduct of November 12, 2011, Mr. MEDIAVILLA had to appear in court on multiple occasions, until February 28, 2012, when the matter was dismissed.

7.      Mr. MEDIAVILLA now brings the instant action to vindicate his constitutional rights, and to seek answers as to why a veteran who honorably served his country was subjected to false arrests, malicious prosecution and excessive force in retaliation for his exercise of First Amendment rights.

## II. JURISDICTION

8.       This action is brought pursuant to 42 U.S.C. §§ 1983 and 1988, and the First, Fourth, Fifth and Fourteenth Amendments to the United States Constitution. Jurisdiction is conferred upon this Court by 28 U.S.C. §§ 1331, 1343(a)(3) and (a)(4) and the aforementioned statutory and constitutional provisions.

9.      Plaintiff further invokes this Court's supplemental jurisdiction, pursuant to 28 USC. § 1367, over any and all State law claims and causes of action.

## III. VENUE

10.      Venue is proper for the United States District Court for the Southern District of New York, pursuant to 28 U.S.C. § 1391(b) because the claims arose in this district.

## IV. JURY DEMAND

11.     Plaintiff respectfully demands a trial by jury of all issues in this matter pursuant to Fed. R. Civ. P. 38(b).

### V. THE PARTIES

12.     Plaintiff is a resident of the State of New York, City of Wassaic and the County of Dutchess.

13.     Defendant THE CITY OF NEW YORK was and is a municipal corporation duly organized and existing under and by virtue of the laws of the State of New York.

14.     Defendant THE CITY OF NEW YORK maintains the New York City Police Department ("NYPD"), a duly authorized public authority and/or police department, authorized to perform all functions of a police department as per the applicable sections of the New York State Criminal Procedure Law, acting under the direction and supervision of the aforementioned municipal corporation, City of New York.

15.     That at all times Defendant POLICE LIEUTENANT MICHAEL ZIELINSKI ("Defendant POLICE LIEUTENANT ZIELINSKI") was a duly sworn police lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE LIEUTENANT ZIELINKSI in both his official and individual capacities.

16.     That at all times Defendant POLICE DEPUTY CHIEF ANGER ("Defendant POLICE DEPUTY CHIEF ANGER") was a duly sworn police chief of the NYPD and was acting under the supervision of said department and according to his

official duties. Plaintiff sues Defendant POLICE DEPUTY CHIEF ANGER in both his official and individual capacities.

17.     That at all times Defendant NYPD PO ANTHONY CIARAMITARO (#27932) ("Defendant POLICE OFFICER CIARAMITARO") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties.   Plaintiff sues Defendant POLICE OFFICER CIARAMITARO in both his official and individual capacities.

18.     That at all times Defendant NYPD CAPTAIN JOHN DUFFY ("Defendant POLICE  CAPTAIN DUFFY") was a duly sworn police Captain of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE CAPTAIN DUFFY in both his official and individual capacities.

19.     That at all times Defendant NYPD LIEUTENANT FRANK VIVANNO ("Defendant POLICE LIEUTENANT VIVANNO") was a duly sworn police Lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE LIEUTENANT VIVANNO in both his official and individual capacities.

20.     That at all times Defendant NYPD LIEUTENANT STEVEN LLARDDO ("Defendant POLICE LIEUTENANT LLARDDO") was a duly sworn police Lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE LIEUTENANT LLARDDO in both his official and individual capacities.

21.     That at all times Defendant NYPD LIEUTENANT THOMAS FEENEY ("Defendant POLICE LIEUTENANT FEENEY") was a duly sworn police Lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE LIEUTENANT FEENEY in both his official and individual capacities.

22.     That at all times Defendant NYPD SERGEANT JOSEPH DIAZ ("Defendant POLICE SERGEANT DIAZ") was a duly sworn police Sergeant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE SERGEANT DIAZ in both his official and individual capacities.

23.     That at all times Defendant NYPD SERGEANT MICHAEL O'NEILL ("Defendant POLICE SERGEANT O'NEILL") was a duly sworn police Sergeant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE SERGEANT O'NEILL in both his official and individual capacities.

24.     That at all times Defendant NYPD SERGEANT FIOR BATISTA ("Defendant POLICE SERGEANT BATISTA") was a duly sworn police Sergeant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE SERGEANT BATISTA in both his official and individual capacities.

25.     That at all times Defendant NYPD DEPUTY INSPECTOR ELISA COKKINOS ("Defendant POLICE DEPUTY INSPECTOR  COKKINOS") was a duly sworn police Deputy Inspector of the NYPD and was acting under the supervision of said

department and according to his official duties.  Plaintiff sues Defendant POLICE NYPD DEPUTY INSPECTOR COKKINOS in both her official and individual capacities.

26.    That at all times Defendant NYPD SERGEANT SLAYNE ("Defendant POLICE SERGEANT SLAYNE") was a duly sworn police Sergeant of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE SERGEANT SLAYNE in both his official and individual capacities.

27.    That at all times Defendant NYPD DEPUTY INSPECTOR O'DONNEL ("Defendant POLICE DEPUTY INSPECTOR  O'DONNEL") was a duly sworn police Deputy Inspector of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE NYPD DEPUTY INSPECTOR O'DONNEL in both his official and individual capacities.

28.    That at all times Defendant NYPD LIEUTENANT BILL  COOK ("Defendant POLICE LIEUTENANT COOK") was a duly sworn police Lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties.  Plaintiff sues Defendant POLICE LIEUTENANT COOK in both his official and individual capacities.

29.    That at all times Defendant NYPD PO MICHAEL CURZ  ("Defendant POLICE OFFICER CRUZ") was a duly sworn police officer of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE OFFICER CRUZ in both his official and individual capacities.

30.     That at all times Defendant NYPD LIEUTENANT DANIEL J. ALBANO ("Defendant POLICE LIEUTENANT ALBANO") was a duly sworn police Lieutenant of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE LIEUTENANT ALBANO in both his official and individual capacities.

31.     That at all times Defendant NYPD SERGEANT EDWARD VINCE ("Defendant POLICE SERGEANT VINCE") was a duly sworn police Sergeant of the NYPD and was acting under the supervision of said department and according to his official duties. Plaintiff sues Defendant POLICE SERGEANT VINCE in both his official and individual capacities.

32.     That at all times hereinafter mentioned, the Defendant POLICE OFFICERS "John Does 1-10" (referred to collectively along with the individually-named defendants as "The Defendant POLICE OFFICERS") were duly sworn police officers of the New York City Police Department and were acting under the supervision of said department and according to their official duties. Plaintiff JOSE MEDIAVILLA sues each of the Defendant POLICE OFFICERS "John Does 1-10" in both their official and individual capacities.

33.     That at all times relevant to this action, the Defendant POLICE OFFICERS either personally or through their employees, were acting under color of state law and/or in compliance with the official rules, regulations, laws, statutes, customs, usages and/or practices of the State or City of New York.

34.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

35.     Each and all of the acts of the Defendant POLICE OFFICERS alleged herein were done by said defendants while acting within the scope and in furtherance of their employment by Defendant THE CITY OF NEW YORK.

## VI. FACTS COMMON TO ALL CLAIMS

36.     Occupy Wall Street (also referred to herein as "Occupy" and "OWS") is a popular political movement that seeks, among other things, to bring greater fairness to the way in which power and resources are shared among citizens of the United States.

37.     Occupy Wall Street consists of a large number of people nationwide who share a common consensus that American society is structured in a way that unfairly benefits the rich and powerful at the expense of ordinary people.

38.     OWS contends that negative consequences of this structure include income inequality, poverty, mass imprisonment of citizens, offensive wars, environmental degradation, taxpayers paying for the mistakes of reckless corporations, and undue influence of corporations on government.

39.     Those involved with Occupy Wall Street share the belief that change is possible through peaceful protest.

40.     The Occupy Wall Street movement began to take action on September 17, 2011, by beginning a protest-occupation of Zuccotti Park, located in New York City's

Wall Street financial district. Occupy Wall Street-related protests sprang up in many other cities throughout the United States, and the world.  A group of protestors remained at Zuccotti Park until November 15, 2011, when they were forcibly ejected during a midnight police raid, accompanied by mass arrests of protestors and journalists.

41.    Plaintiff JOSE MEDIAVILLA was a participant in the Occupy Wall Street movement.

42.    Plaintiff JOSE MEDIAVILLA enlisted in the United States Marine Corps in 2000—duly sworn to serve and defend the Constitution of the United States.

43.    While on active duty, Plaintiff JOSE MEDIAVILLA, *inter alia*, participated in joint POW MIA recovery missions alongside members of the Air Force, Navy, and other Marines.  Mr. MEDIAVILLA worked with anthropologists in excavating and gathering photographic evidence of plane wrecks from World War II, the Vietnam War and the Korean War and bringing the remains of the fallen members of the military home to the United States.

44.    Plaintiff JOSE MEDIAVILLA remained an active duty member of the United States Marine Corps until being Honorably Discharged in August of 2007.

45.    Plaintiff JOSE MEDIAVILLA received a Bachelor of Science degree in Film in 2009 from Full Sail University, in Winter Park, Florida.

46.    So as to not burden taxpayers, Plaintiff JOSE MEDIAVILLA chose not to use the "GI Bill" to fund his education.

47.    Rather, Plaintiff JOSE MEDIAVILLA used student loans to cover education costs, accruing thousands of dollars in debt.

48.     It was this financial hardship that led Plaintiff JOSE MEDIAVILLA to participate in Occupy Wall Street.

49.     At all times relevant herein, Plaintiff JOSE MEDIAVILLA was living in One Liberty Plaza, Manhattan, N.Y.

50.     On Saturday November 5, 2011, at or around 3:30pm, Plaintiff JOSE MEDIAVILLA was present in and around Foley Square.

51.     At all times relevant to the November 5, 2011 events described herein, Plaintiff JOSE MEDIAVILLA was participating in an Occupy demonstration.

52.     Defendant POLICE OFFICERS prevented the Occupy participants, including Plaintiff JOSE MEDIAVILLA, from ascending the steps of the New York State Supreme Court Building, located at 60 Centre Street.

53.     Upon information and belief, Defendant POLICE OFFICERS knew that the New York State Supreme Court Building was closed on November 5, 2011.

54.     Upon information and belief, Defendants were aware that the New York State Supreme Court Building, including the steps, has previously been used for such commercial endeavors as tapings of "Law and Order" and parties hosted by Vanity Fair.

55.     Knowing that no disorderly conduct was being committed, Defendant POLICE LIEUTENANT ZIELINSKI used a bullhorn to issue an unlawful order to disperse.

56.     Upon information and belief, Defendant POLICE DEPUTY CHIEF ANGER instructed POLICE LIEUTENANT ZIELINSKI to issue the unlawful order to for demonstrators to disperse.

57.     Plaintiff JOSE MEDIAVILLA attempted to alert Defendant POLICE OFFICERS that their actions in prohibiting access to the steps of the New York State Supreme Court Building violated the Constitution of the United States.

58.     Defendant POLICE OFFICERS continued to forcibly prevent Occupy demonstrators from gathering in front of the New York State Supreme Court Building.

59.     Plaintiff JOSE MEDIAVILLA then began chanting, "Treason!"

60.     Without warning, the Defendant POLICE OFFICERS grabbed Plaintiff JOSE MEDIAVILLA, forcing him away from the other demonstrators.

61.     Defendant POLICE OFFICERS, including Defendant POLICE OFFICER CIARAMITARO, arrested Plaintiff JOSE MEDIAVILLA.

62.     The Defendant POLICE OFFICERS, including Defendant POLICE OFFICER  CIARAMITARO, made false sworn statements charging Plaintiff JOSE MEDIAVILLA with Disorderly Conduct and Resisting Arrest.

63.     Plaintiff JOSE MEDIAVILLA did not engage in Disorderly Conduct, Resisting Arrest, or any other violation or crime.

64.     Plaintiff JOSE MEDIAVILLA's conduct was limited to lawful exercise of political speech in accordance with his own First Amendment right to peaceably assemble.

65.     The Defendant POLICE OFFICERS placed plastic flex-cuffs tightly around Plaintiff JOSE MEDIAVILLA's wrists, causing significant pain to Plaintiff's hands and wrists.

66.     The Defendant POLICE OFFICERS transported Plaintiff JOSE MEDIAVILLA to One Police Plaza.

67.     There the Defendant POLICE OFFICERS detained Plaintiff JOSE MEDIAVILLA for approximately 24 hours.

68.     Plaintiff JOSE MEDIAVILLA was arraigned November 6, 2011.

69.     Plaintiff JOSE MEDIAVILLA was released on his own recognizance.

70.     Plaintiff JOSE MEDIAVILLA appeared before the Court on more than five occasions following the arrest by Defendant POLICE OFFICERS on November 5, 2011.

71.     Plaintiff JOSE MEDIAVILLA was forced to appear before the court on or around January 25, 2013, to answer the Defendant POLICE OFFICERS' baseless charges.

72.     On or around January 25, 2013, the Court adjourned the case pursuant to New York Criminal Procedure Law §170.55.

73.     On or around July 24, 2013, the charges against Plaintiff JOSE MEDIAVILLA were dismissed and sealed pursuant to New York Criminal Procedure Law §170.55.

74.     On or about November 12, 2011, JOSE MEDIAVILLA was participating in a demonstration related to Occupy Wall Street.

75.     At all relevant times, JOSE MEDIAVILLA was exercising rights guaranteed to him by the United States Constitution.

76.     Without probable cause, POLICE OFFICER DEFENDANT JOHN DOE 1 grabbed Mr. MEDIAVILLA and arrested him.

77.     Mr. MEDIAVILLA was transferred to One Police Plaza, where he was held for approximately ten (10) hours before being released with a summons.

78.     Mr. MEDIAVILLA was forced to return to court on numerous occasions related to this false arrest.

79.     On or about February 28, 2012, this matter was dismissed against Mr. MEDIAVILLA.

80.     As a result of the foregoing, Plaintiff JOSE MEDIAVILLA has sustained, *inter alia*, mental injuries, emotional distress, embarrassment, humiliation, and deprivation of his constitutional rights.

81.     As a result of the Defendants' constitutionally violative conduct, Plaintiff JOSE MEDIAVILLA demands judgment from Defendants in a sum of money to be determined at trial.

## FIRST CLAIM FOR RELIEF

## DEPRIVATION OF FEDERAL CIVIL RIGHTS UNDER 42 U.S.C. § 1983

82.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

83.     All of the aforementioned acts of the Defendant THE CITY OF NEW YORK, and the Defendant POLICE OFFICERS and their agents, servants and employees ("Defendants"), were carried out under the color of state law.

84.     All of the foregoing acts by Defendants deprived Plaintiff of federally protected rights, including, but not limited to, the right:

a.   Not to be deprived of liberty without due process of law;

b.   To be free from seizure and arrest not based upon probable cause;

14

    c.   To freedom from being subjected to false criminal charges by the police;

    d.   To freedom from excessive force being used upon him;

    e.   To freedom from retaliatory prosecution;

    f.   To freedom from abuse of process;

    g.   To freedom of speech and expression; and

    h.   To receive equal protection under the law.

85.    All of the aforementioned acts deprived Plaintiff of the rights, privileges and immunities guaranteed to citizens of the United States by the First, Fourth, Fifth, and Fourteenth Amendments to the Constitution of the United States of America, and in violation of 42 U.S.C. § 1983.

86.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, with all of the actual and/or apparent authority attendant thereto.

87.    The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers, pursuant to the customs, usages, practices, procedures, and the rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

88.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress,

anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property, loss of wages, out-of-pocket expenses and damage to his reputation and standing within his community.

89.     Accordingly, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SECOND CLAIM FOR RELIEF
## FALSE ARREST UNDER 42 U.S.C. § 1983

90.     Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

91.     As a result of the aforesaid conduct by Defendants, Plaintiff to illegal, improper and false arrests by the Defendants and each time was taken into custody and caused to be falsely imprisoned, detained, and confined without any probable cause, privilege, or consent.

92.     The Defendant POLICE OFFICERS unlawfully detained Plaintiff in their custody for approximately twenty-four (24) hours following Plaintiff's arrest on November 5, 2011.

93.     The Defendant POLICE OFFICERS unlawfully detained Plaintiff in their custody for approximately ten  (10) hours following Plaintiff's arrest on November 12, 2011.

94.     As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of property, damage to property,

loss of wages, out-of-pocket expenses and damage to his reputation and standing within his community.

95.     As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### THIRD CLAIM FOR RELIEF
### FAILURE TO INTERVENE UNDER 42 U.S.C. §1983

96.     Plaintiff JOSE MEDIAVILLA repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

97.     Throughout Plaintiff's arrests by the Defendants, the individual Defendants had an affirmative duty to intervene on Plaintiff JOSE MEDIAVILLA's behalf to prevent the violation of his constitutional rights.

98.     On each occasion, the individual Defendants failed to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights despite having had realistic opportunities to do so.

99.     On each occasion, the individual Defendants failed to intervene on Plaintiff's behalf to prevent the violation of his constitutional rights despite having substantially contributed to the circumstances within which Plaintiff's rights were violated by their affirmative conduct.

100.     As a result of the aforementioned conduct of the individual Defendants, Plaintiff's constitutional rights were violated.

101.     As a result of the above constitutionally impermissible conduct, Plaintiff

was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses and damage to his reputation and standing within his community.

102.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## FOURTH CLAIM FOR RELIEF

## MALICIOUS PROSECUTION UNDER 42 U.S.C. §1983

103.    The Defendant POLICE OFFICERS instituted criminal proceedings against Plaintiff on November 12, 2011.

104.    This prosecution terminated in Plaintiff's favor with dismissal of all charges against him.

105.    There was no probable cause to initiate or continue this prosecution.

106.    The Defendant POLICE OFFICERS acted maliciously in initiating the proceedings.

107.    Plaintiff was forced to appear before the court on numerous occasions in order to answer the criminal proceedings that the Defendant POLICE OFFICERS maliciously initiated against him.

108.    Plaintiff was repeatedly and continually deprived of his liberty as a result.

109.    As a result of the foregoing, Plaintiff sustained, *inter alia*, physical injuries, physical pain, mental injuries, emotional distress, embarrassment, humiliation,

out of pocket expenses, loss of liberty, loss of standing within his community, and deprivation of his constitutional rights.

110.    Accordingly, Plaintiff seeks compensation in an amount to be determined at trial.

## FIFTH CLAIM FOR RELIEF

## EXCESSIVE FORCE UNDER 42 U.S.C. § 1983

111.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

112.    On November 5, 2011, one the Defendant POLICE OFFICERS used excessive force in handcuffing Plaintiff in the absence of a warrant or probable cause for his arrest.

113.    On November 5, 2011, the Defendant POLICE OFFICERS used excessive force in handcuffing Plaintiff with plastic flexi-cuffs that were at all times too tight, thereby causing significant pain to his hands and wrists.

114.    On November 12, 2011, one the Defendant POLICE OFFICERS used excessive force in handcuffing Plaintiff in the absence of a warrant or probable cause for his arrest.

115.    On November 12, 2011, the Defendant POLICE OFFICERS used excessive force in handcuffing Plaintiff with plastic flexi-cuffs that were at all times too tight, thereby causing significant pain to his hands and wrists.

116.    At no point during the above-mentioned actions did the circumstances presented to the Defendants support any of the above-mentioned applications of force on Plaintiff.

117.    Plaintiff was subjected to excessive force in violation of his rights as guaranteed under the United States Constitution and the Civil Rights Act of 1871, 42 U.S.C. Section 1983.

118.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses, and damage to his reputation and standing within his community.

119.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

## SIXTH CLAIM FOR RELIEF
## RETALIATION FOR FIRST AMENDMENT PROTECTED EXPRESSION UNDER 42 U.S.C. § 1983

120.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth herein.

121.    On November 5, 2011 and on November 12, 2011, the Defendant POLICE OFFICERS arrested Plaintiff in order to retaliate against him for being present at an OWS event and engaging in First Amendment protected expression, including but not limited to criticizing the police.

122.    Plaintiff was not engaged in any illegal activity of any kind or sort each time the Defendant POLICE OFFICERS arrested him.

123.    The Defendant POLICE OFFICERS utilized excessive force against Plaintiff in order to retaliate against him for lawfully exercising his First Amendment protected rights to free speech, expression, and association.

124.    The actions of the Defendant POLICE OFFICERS heretofore described, were designed to and did cause bodily harm, pain and suffering in direct retaliation for Plaintiff's exercise of his civil and constitutional rights of free speech, free expression and expressive association as guaranteed by the First and Fourteenth Amendments to the United States Constitution as well as the Constitution of the State of New York.

125.    As a result of the foregoing, Plaintiff is entitled to compensatory damages and punitive damages against the Defendants in amounts to be determined at trial.

126.    As a result of the above constitutionally impermissible conduct, Plaintiff was caused to suffer personal injuries, violation of his civil rights, emotional distress, anguish, anxiety, fear, humiliation, loss of freedom, loss of wages, out-of-pocket expenses, and damage to his reputation and standing within his community.

127.    As a result of Defendants' impermissible conduct, Plaintiff demands judgment against Defendants in a sum of money to be determined at trial.

### SEVENTH CLAIM FOR RELIEF
### MUNICIPAL LIABILITY UNDER *MONELL* ARISING FROM
### UNCONSTITUTIONAL POLICIES AND CUSTOMS UNDER 42 U.S.C. § 1983

128.    Plaintiff repeats, reiterates, and re-alleges each and every allegation contained in the above paragraphs with the same force and effect as if fully set forth

herein.

129.     Defendants arrested, harassed, battered, berated, and caused Plaintiff to suffer injuries in the absence of any evidence of criminal wrongdoing, notwithstanding their knowledge that their conduct would jeopardize Plaintiff's liberty, well-being, safety and constitutional rights.

130.     The acts complained of were carried out by the aforementioned individual Defendant POLICE OFFICERS in their capacities as police officers and officials, with all the actual and/or apparent authority attendant thereto.

131.     The acts complained of were carried out by the aforementioned individual defendants in their capacities as police officers and officials pursuant to the customs, policies, usages, practices, procedures, and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department, all under the supervision of ranking officers of said department.

132.     The aforementioned customs, policies, usages, practices, procedures and rules of Defendant THE CITY OF NEW YORK and the New York City Police Department include, but are not limited to, the following unconstitutional practices:

<u>WRONGFULLY TARGETING PARTICIPANTS IN OCCUPY WALL STREET ACTIVITIES FOR ARREST, DETENTION, OR PROSECUTION;</u>

133.     According to *The New York Times*, as of June 18, 2012, over 2,500 participants in Occupy Wall Street activities had been arrested in Manhattan alone.  Upon information and belief, the vast majority of the cases were dismissed or otherwise resolved without criminal penalty.

134.    In other words, over the period of less than a year, Defendant THE CITY OF NEW YORK caused hundreds or thousands of protestors — who had committed no crime — to be arrested for participation in First Amendment protected activities.

135.    Upon information and belief, the NYPD's response to the Occupy movement followed mass arrest policies that were established at the time of the 2004 Republican convention, during which over 1,800 people were arrested, with more than 90 percent of the arrest cases being dismissed or ending with not-guilty verdicts.

136.    Upon information and belief, the police have been documented to have filed false criminal charges against OWS participants who were arrested during a January 1, 2012 Occupy Wall Street march.

137.    Upon information and belief, in one such arrest, Alexander Arbuckle was arrested on charges that he was standing in the street blocking traffic.  The arresting officer, Officer Elisheba Vera, swore to this version of events on the witness stand at trial.  However, photo and video evidence – including video taken by the NYPD's video unit – demonstrated that Arbuckle was on the sidewalk when he was arrested.  As the magazine *The Nation* reported: "As it turns out, Officer Elisheba Vera lied to the court." Arbuckle was found not guilty.

138.    Upon information and belief, Damien Treffs was a legal observer accompanying a January 1, 2012 march.  He was violently arrested without warning.  The District Attorneys office declined to prosecute the case because probable cause was lacking for the arrest.

139.    Upon information and belief, police officers committed perjury in order

to press charges against another protestor, Jessica Hall, who was arrested for blocking

street traffic on November 17, 2011.  As *The Nation* reported, the truth exposed at her

trial was quite different:  "During trial, Sergeant Michael Soldo told the court that he

arrested Hall because she was blocking traffic.  But Soldo later admitted under cross-

examination, and the NYPD's own video confirmed, that it was the NYPD metal

barricades that prevented vehicles from passing."

140.    Upon information and belief, police lied to support the arrest of a protestor

arrested at an Occupy-related protest on September 19, 2011, The protestor was arrested

for – according to NYPD spokesman Paul Browne – leaping over a police crowd-control

barrier.  Video of the incident, however, showed that the arresting officers reached across

the barrier and forcibly dragged the individual over it.

141.  Upon information and belief, Defendant CITY OF NEW YORK tacitly condones

its police officers' continuing and widespread practice of undertaking extraordinary and

unjustified uses of force against persons engaged in the practice of exercising their First

Amendment Protected rights to free speech and association.

142.  Upon information and belief, Defendant CITY OF NEW YORK tacitly condones

its police officers' continuing and widespread practice of undertaking extraordinary and

unjustified uses of force against person specifically engaged in the practice of exercising

their First Amendment Protected rights to free speech and association while participating

in or observing assemblies, marches, and events related to Occupy Wall Street.

143.  At all times relevant herein, as set forth more fully below, Defendant City of New

York had de  facto policies, practices, customs and usages of failing properly to train,

screen, supervise, and  discipline agents, employees, and police officers, and of failing to

inform the individual defendants and their supervisors of their need to train, screen, supervise or discipline said defendants, which were a direct and proximate cause of the unconstitutional conduct and civil rights violations alleged herein and the damages attendant thereto.

144.  In January 2012, the concentrated and collaborative efforts of seven law school clinics throughout the United States founded the *Protests and Assembly Rights Project* in order to "Investigate… the United States' response to Occupy Wall Street in light of the government's international legal obligations."

145.  These same concentrated and collaborative efforts helped the *Protests and Assembly Rights Project* draft and thereafter, in July of 2012, publish, "Suppressing Protest: Human Rights Violations In The U.S. Response To Occupy Wall Street" ("The Report"); wherein, the authors state, "In many instances, the… [NYPD] have responded aggressively to nonviolent protests, and have escalated situations ——— through arbitrary or misapplications of the law, an excessive police presence, or the use of unwarranted force. The police response has thus . . . undermined basic assembly and expression freedoms [and] [a]t times . . . presented a threat to the safety of New Yorkers."

146.  In efforts to explain and/or identify the source of the NYPD's "aggressive responses to nonviolent protests", The Report calls attention to the fact that, "in recent years, New York City has witnessed a shift from 'reactive' policing to 'proactive' policing under Commissioner Raymond Kelly's 'Safe Streets, Safe City' initiative…. [meaning] that police adopt measures in advance to minimize the potential impact and size of a protest, which might include preparing a large police force to arrive at a

scheduled protest location before the event begins, or regulating permits for the protest in a manner designed to redirect the protest."

147.  Despite the positive implications in the title of Commissioner Kelly's 'Safe Streets, Safe City' initiative, this 'proactive' form of policing has failed to keep OWS protesters, observers, and bystanders alike safer, but instead, has led to repeated and continuing acts of police officers committing "clear violations of the government's obligation to uphold assembly and expression rights…. [amounting together to] protest suppression[.]"

148.  Further, The Report cites several instances of "Overpolicing and Poor Communication" conducted by the NYPD, where generally "[a]t times, the number of officers on hand [at OWS assemblies, marches, and events] has rivaled or even exceeded the number of protestors . . . repeatedly, the number of visible police [has been] manifestly excessive in comparison to both the peaceful nature of the assembly and the number in attendance at the protests." to wit; "[o]casionally, officers in visibly threatening "hard" uniform (e.g.. body padding, helmets, shields) have attended protests, including small protests posing no evident threat."

149.  Witnesses have observed NYPD officers who have been assigned to perform crowd control duties and overall help provide for individuals' safety instead strike, beat, and otherwise berate civilians without reason, without notice, and without consequence; to wit, "One protestor . . . reported being punched in the left temple by an officer, without any apparent provocation or notice [and thereafter] [t]he punch led to swelling, bleeding, bruising, dizzy spells, and nausea [which required] the individual [to seek] emergency medical treatment[,]" further, "[one legal observer who was also a retired New York

Supreme Court judge] . . . witnessed an officer throw a woman to the ground 'out of nowhere' and hit her in the head[,]" and still further, "[one video from an OWS event] shows that an officer approached a woman from behind and grabbed her by the strap of her backpack and her scarf for no apparent reason[;] the officer [then] began to pull the woman towards him . . . for approximately fifteen seconds, and appeared to possibly be choking her via the strap of her scarf [and after this incident] the police appeared not to take any action [against the officer]."

150.  The Report posits how, following incidents of police brutality such as these, the conduct of the NYPD in response to OWS assemblies, marches, and events has and continues to cause "[p]rotestors [to] reasonably perceive that they cannot safely protest [and thus remain] constantly on guard for potential arbitrary police force, or decide to leave the assembly[,]"; and as a result OWS participants, observers, and bystanders and civilians generally "view a[n] NYPD officer as someone who can take out [his] baton and beat [an individual] and face no repercussion."

151.  Or further, stated differently by a graduate student who had attended multiple OWS events before and leading up to The Report's publication, "'It's a shock when you expect police to protect you, but you see them beat people . . . [I] grew up thinking that the cops are 'the good guys' but . . . when you see them beat people for no reason, it changes your world. You don't feel safe."

152.  Upon information and belief, Defendant CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking extraordinary and unjustified uses of force against persons engaged in the practice of exercising their First Amendment Protected rights to free speech and association.

153.  Upon information and belief, Defendant CITY OF NEW YORK tacitly condones its police officers' continuing and widespread practice of undertaking extraordinary and unjustified uses of force against person specifically engaged in the practice of exercising their First Amendment Protected rights to free speech and association while participating in or observing assemblies, marches, and events related to Occupy Wall Street.

154.  This tacit allowance of police misconduct against those participating in First Amendment Expressive Speech Activity at Occupy Wall Street is evidenced by the number of civil rights lawsuits filed against the City of New York related to unlawful arrests and related claims of bad arrests that occurred at Occupy Wall Street activities.

155.  To date, there have been approximately twenty-eight (28) separate lawsuits settled by the City of New York involving bad arrests arising out of Occupy Wall Street.

156.  To date, there have been approximately five (5) lawsuits dismissed or voluntarily withdrawn that alleged bad arrests arising out of Occupy Wall Street.

157.  To date, there are at least thirty-four (34) separate lawsuits still pending in the Southern District of New York arising out of allegations of bad arrests and police misconduct at Occupy Wall Street.

158.  Each of these litigations involves at least one plaintiff, but many involve multiple plaintiffs.  As an example, Garcia v. Bloomberg, is a class action related to the arrest of seven hundred (700) individuals on or about October 1, 2011 on the Brooklyn Bridge.

159.  As a further example, Berg v. NYC, 12CV3391, is a class action related to unlawful detention behind barricades on November 30, 2011 of approximately one hundred (100) individuals.

160.  As a further example, <u>Carvalho v. NYC</u>, 13CV4174, is a lawsuit filed on behalf of nine (9) individuals who, while participating in the celebration of the six-month anniversary of Occupy Wall Street on March 17, 2012, allege that they were unlawfully detained.

161.  As a further example, the City of New York paid out over two-hundred and thirty thousand ($230,000) dollars to settle claims brought by the Occupy Wall Street librarians for damage done to their property during the November 15, 2011 midnight eviction. <u>Occupy Wall Street v. NYC</u>, 12CV4129.

162.  As a further example, the City of New York paid out over six-hundred thousand ($600,000) dollaras to settle claims brought by fourteen (14) individuals who were unlawfully arrested and detained, and related to Occupy Wall Street.  <u>Peat v. NYC</u>, 12CV8230.

163.  The Defendant POLICE OFFICERS implemented and applied force and arrested Plaintiff in the manner described herein, without individualized probable cause that such force was necessary or justified, and, as result, injured the Plaintiff.

164.  Upon information and belief, the Defendant POLICE OFFICERS were implementing the foregoing unlawful custom, practice, and/or policy of targeting participants in Occupy Wall Street activities without cause for arrest, detention, or prosecution on the occasions of their arrests of Plaintiff JOSE MEDIAVILLA.

165.  Upon information and belief, the Defendant POLICE OFFICERS were implementing the foregoing unlawful custom, practice, and/or policy of arresting individuals selected at random during peaceable assemblies in the manner described

herein, on the occasions of their arrests of Plaintiff JOSE MEDIAVILLA.

166.  As a result of Defendants' impermissible conduct, Plaintiff JOSE MEDIAVILLA

demands judgment against Defendants in a sum of money to be determined at trial.

WHEREFORE and in light of the foregoing, it is respectfully requested that the Court assume jurisdiction and:

[a] Invoke pendent party and pendent claim jurisdiction.

[b] Award appropriate compensatory and punitive damages.

[c] Empanel a jury.

[d] Award attorney's fees and costs.

[e] Award such other and further relief as the Court deems to be in the interest of justice.

DATED:    New York, New York
          November 4, 2014

                         Respectfully submitted,

                         WYLIE M. STECKLOW [WS 6012]
                         STECKLOW COHEN & THOMPSON
                         217 CENTRE STREET – 6TH FLOOR
                         New York, New York 10013
                         [212] 566-8000 // [212] 202-4952 (FAX)
                         Wylie@WYLIELAW.COM
                         ATTORNEYS FOR PLAINTIFF