14 CV 8624 (VSB)

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE MEDIAVILLA,

                                                                    Plaintiff,

                              -against-

CITY OF NEW YORK, et al.

                                                                    Defendants.

# MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' MOTION TO DISMISS

*ZACHARY W. CARTER*
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

Of Counsel: Joy Anakhu & Andrew Lucas
Tel:  (212) 356-2323
Matter No. 2014-043975

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ......................................................................................................... ii

PRELIMINARY STATEMENT ................................................................................................... 1

STATEMENT OF FACTS ............................................................................................................ 1

RULE 12(B)(6) STANDARD FOR DISMISSAL ........................................................................ 3

ARGUMENT

        THE AMENDED COMPLAINT FAILS TO
        SUFFICENTLY ALLEGE FACTS TO SUPPORT
        ANY CLAIMS ............................................................................................. 5

        ANY CLAIM PREDICATED ON PLAINTIFF'S
        ARRESTS FAIL AND QUALIFIED IMMUNITY
        ATTACHES TO THE ACTIONS OF THE
        OFFICERS. ................................................................................................... 6

        ANY CLAIMS PREDICATED ON EXCESSIVE
        FORCE SHOULD BE DISMISSED .......................................................... 15

PLAINTIFF'S CLAIMS ARE TIME BARRED .......................................................................... 17

        THE AMENDED COMPLAINT FAILS TO
        ALLEGE ANY FACTS TO SUPPORT
        PERSONAL INVOLVEMENT FOR MANY OF
        THE INDIVDUAL DEFENDANTS .......................................................... 19

        PLAINTIFF FAILS TO STATE A CLAIM FOR
        MUNICIPAL LIABILITY AGAINST THE CITY
        OF NEW YORK .......................................................................................... 21

CONCLUSION ............................................................................................................................ 24

# TABLE OF AUTHORITIES

<u>**Cases**</u>                                                                                          <u>**Pages**</u>

Alexander v. Forrest City Pierrepont Associates et al.,
   94 Civ. 3961 (ILG), 1995 U.S. Dist. LEXIS 22079 (E.D.N.Y. June 29, 1995) ...................... 16

Ashcroft v. Iqbal,
   129 S. Ct. 1937 (2009) ................................................................................................. 3

Ashcroft v. Iqbal,
   556 U.S. 662 (2009) ................................................................................................... 20

Atlantic Corp. v. Twombly,
   550 U.S. 544 (2007) ................................................................................................... 20

Bass v. Jackson,
   790 F.2d 260 (2d Cir. 1986) ...................................................................................... 17

Bell Atlantic v. Twombly,
   127 S. Ct. 1955 (2007) ............................................................................................ 1, 3

Bernard v. United States,
   25 F.3d 98 (2d Cir. 1994) ........................................................................................... 4

Bery v. City of New York,
   97 F.3d 689 (2d Cir. 1996) .......................................................................................... 7

Bradway v. Gonzales,
   26 F.3d 313 (2d Cir. 1994) .......................................................................................... 9

Burg v. Gosselin,
   591 F.3d 95 (2d Cir. 2010) ........................................................................................ 13

Burnette v. Carothers,
   192 F.3d 52 (2d Cir. 1999) .......................................................................................... 3

Celotex Corp. v. Catrett,
   477 U.S. 317 (1986) ................................................................................................... 19

City of Los Angeles v. Heller,
   475 U.S. 796 (1986) ................................................................................................... 19

Concerned Jewish Youth v. McGuire,
   621 F.2d 471 (2d Cir. 1980) ........................................................................................ 8

Cook v. Sheldon,
   (41 F.3d at 80) ............................................................................................................. 5

**<u>Cases</u>**                                                                          **<u>Pages</u>**

<u>Covington v. City of New York</u>,
   171 F.3d 117 (2d Cir. 1999)......................................................................... 4

<u>Curiano v. Suozzi</u>,
   63 N.Y.2d 113 (1984) ................................................................................... 5

<u>DeFilippo v. County of Nassau</u>,
   183 A.D.2d 695 (2d Dep't 1992)................................................................. 12

<u>Devenpeck v. Alford</u>,
   543 U.S. 146 (2004)....................................................................................... 8

<u>Dunaway v. New York</u>,
   442 U.S. 200 (S. Ct. 1979)............................................................................ 5

<u>Esmont v. City of New York</u>,
   371 F.Supp. 2d 202 (E.D.N.Y. 2005) ........................................................ 15

<u>Fabrikant v. French</u>,
   691 F.3d 193 (2d Cir. 2012).................................................................... 4, 6

<u>Faruki v. City of New York</u>,
   2012 U.S. Dist. Lexis 47310 (S.D.N.Y. 2012) ......................................... 14

<u>Faruki v. City of New York</u>,
   517 Fed. Appx. 1 (2d. Cir. 2013) ............................................................... 13

<u>Garcia v. Bloomberg</u>,
   865 F. Supp. 2d 478 (S.D.N.Y. 2012)........................................................ 21

<u>Garrett v. Port Auth.</u>,
   2006 U.S. Dist. LEXIS 55548 (S.D.N.Y. Aug. 7, 2006) ........................... 13

<u>Graham v. Connor</u>,
   490 U.S. 386 (1989)..................................................................................... 14

<u>Hauser v. Bartow</u>,
   273 N.Y. 370 (1937) ...................................................................................... 5

<u>Higginbotham v. City of New York</u>,
   2015 U.S. Dist. LEXIS 62227 (S.D.N.Y. May 12, 2015)........................... 15

<u>Hunter v. Bryant</u>,
   502 U.S. 224 (1991)..................................................................................... 10

**Cases**                                                                    **Pages**

In re Elevator Antitrust Litig.,
    502 F.3d 47 (2d Cir. 2007).................................................................. 3

Irish v. City of New York,
    2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. Dec. 6, 2010) ........................ 6

Jaegly v. Couch,
    439 F.3d 149 (2d Cir. 2006).................................................................. 8

Jenkins v. City of New York,
    98 Civ. 7170 (JGK), 1999 U.S. Dist. LEXIS 15353 (S.D.N.Y. Sept. 29, 1999),
    aff'd, 216 F.3d 1072 (2d Cir. 2000)...................................................... 11

Johnson v. City of New York,
    2008 U.S. Dist. LEXIS 78984 (S.D.N.Y 2008) ...................................... 7

Johnson v. Glick,
    481 F.2d 1028 (2d Cir. 1973)................................................................ 14

Kerman v. City of New York,
    261 F.3d 229 (2d Cir. 2001)................................................................. 14

King v. Am. Airlines, Inc.,
    284 F.3d 352 (2d Cir. 2002)................................................................. 3

Klein v. Williams,
    144 F.R.D. 16 (E.D.N.Y. 1992) ........................................................... 17

Kuck v. Danaher,
    600 F.3d 159, 168 (2d Cir. 2010)......................................................... 6

Lennon v. Miller,
    66 F.3d 416 (2d Cir. 1995).............................................................. 7, 9

Lopez v. City of New York,
    901 F. Supp. 684 (S.D.N.Y. 1995) ...................................................... 5

Lowth v. Town of Cheektowaga,
    82 F.3d 563 (2d Cir. N.Y. 1996).......................................................... 11

Malley v. Briggs,
    475 U.S. 335 (1986)............................................................................ 10

Marcavage v. City of New York,
    689 F.3d 98 (2d Cir. 2012)............................................................ 7, 8, 11

**<u>Cases</u>**                                                                                              **<u>Pages</u>**

<u>Martinez v. City of New York</u>,
   2008 U.S. Dist. LEXIS 49203 (S.D.N.Y. 2008) ......................................................... 19

<u>Martinez v. Muentes</u>,
   340 Fed. Appx. 700 (2d Cir. 2009) ........................................................................... 19

<u>Mastrovincenzo v. City of New York</u>,
   435 F.3d 78 (2d Cir. 2006) ................................................................................... 7, 12

<u>McKinnon v. Patterson</u>,
   568 F.2d 930 (2d Cir. 1977),
   <u>cert denied</u> , 434 U.S. 1087 (1978)) ........................................................................ 17

<u>Mendez v. Elliot</u>,
   45 F.3d 75 (4th Cir. 1995) ........................................................................................ 16

<u>Monell v. Department of Social Services of the City of New York</u>,
   436 U.S. 658 (1978) ........................................................................................... 18, 19

<u>Mozzochi v. Borden</u>,
   959 F.2d 1174 (2d Cir. 1992) ..................................................................................... 5

<u>Murphy v. Lynn</u>,
   118 F.3d 938 (2d Cir. N.Y.1997) .................................................................. 10, 12, 13

<u>Nardelli v. Stamberg</u>,
   44 N.Y.2d 500 (1978) ............................................................................................... 11

<u>O'Neill v. Town of Babylon</u>,
   986 F.2d 646 (2d Cir. 1993) ....................................................................................... 4

<u>Pearl v. City of Long Beach</u>,
   296 F.3d 76 (2d Cir. 2002) ....................................................................................... 16

<u>Pearson v. Callahan</u>,
   555 U.S. 223 (2009) ................................................................................................... 9

<u>Posr v. Court Officer Shield # 207</u>,
   180 F.3d 409 (2d Cir. 1999) ..................................................................................... 10

<u>Purcell v. Coughlin</u>,
   790 F.2d 263 (2d Cir. 1986) ..................................................................................... 18

<u>Ricciuti v. N.Y.C. Transit Auth.</u>,
   124 F.3d 123 (2d Cir. 1997) ..................................................................................... 10

**<u>Cases</u>**                                                                      **<u>Pages</u>**

<u>Rincon v. City of New York</u>,
  2005 U.S. Dist. LEXIS 4335, (S.D.N.Y. 2005) ...................................................... 14

<u>Rohman v. New York City Transit Auth.</u>,
  215 F.3d 208 (2d Cir. N.Y. 2000) ................................................................... 10, 12

<u>Romano v. Howarth</u>,
  998 F.2d 101 (2d Cir. 1993) ............................................................................. 15

<u>Rounseville v. Zahl</u>,
  13 F.3d 625 (2d Cir. 1994) ................................................................................ 11

<u>Santulli v. Russelo</u>,
  2013 U.S. App. LEXIS 5285 (2d Cir. 2013) ....................................................... 6

<u>Savino v. City of New York</u>,
  331 F.3d 63 (2d Cir. 2003) ........................................................................... 5, 8, 9

<u>Sealey v. Giltner</u>,
  116 F.3d 47 (2d Cir. 1997) ................................................................................ 18

<u>Sforza v. City of New York</u>,
  2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. Mar. 31, 2009) ...................................... 6

<u>Singer v. Fulton County</u>,
  63 F.3d 110 (2d Cir. 1995) ............................................................................... 4, 5

<u>Singleton v. City of N.Y.</u>,
  632 F.2d 185 (2d Cir. 1980) .............................................................................. 16

<u>Strumpf v. Asdourian</u>,
  2006 N.Y. Misc. LEXIS 3976 (N.Y. Sup. Ct. 2006) ............................................ 12

<u>Thimmesch v. City of New York</u>,
  2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. Apr. 9, 2013) ........................................ 15

<u>Tracy v. Freshwater</u>,
  623 F.3d. 90 (2d Cir. 2010) ............................................................................... 14

<u>United States v. Walsh</u>,
  194 F.3d 37 (2d Cir. 1999) ................................................................................ 14

<u>Washington v. Cnty. Of Rockland</u>,
  373 F.3d 310 (2d. Cir. 2004) ............................................................................. 13

**Cases**                                                               **Pages**

Whren v. United States,
    517 U.S. 806 (1996) ......................................................................... 5

Williams v. Smith,
    781 F.2d 319 (2d Cir. 1986) ...................................................... 17, 18

Wilson v. Garcia,
    471 U.S. 261 (1985) ....................................................................... 16

Wright v. Smith,
    21 F.3d 496 (2d Cir. 1994) ........................................................... 18

Ying Jing Gan v. City of New York,
    996 F.3d 522 (2d Cir. 1993) ......................................................... 20

Yosef v. Passamaquoddy Tribe,
    876 F.2d 283 (2d Cir. 1989) ...................................................... 16, 17

Zellner v. Summerlin,
    494 F.3d 344 (2d Cir. 2007) ......................................................... 8, 9

**Statutes**

42 U.S.C. § 1983 .......................................................... 1, 12, 13, 16, 17, 18, 19

Fed. R. Civ. P. 8(a) ................................................................................ 1, 4

Fed. R. Civ. P. 12(b)(6) ....................................................................... 1, 3, 5

New York City Charter § 435(a) ....................................................... 6, 7, 12

N.Y. Penal Law § 195.05 ...................................................................... 6, 10

N.Y. Penal Law § 240.20(1) ............................................................... 10, 11

N.Y. Penal Law § 240.20(6) ....................................................................... 6

N.Y. Penal Law § 120.15 ……………………………………………………………..

Defendants City of New York, Michael Zielinski, Steven Anger, Anthony Ciaramitaro and Elisa Cokkinos, by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Memorandum of Law in support of their motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure.

## PRELIMINARY STATEMENT

Plaintiff Jose Mediavilla brings this action pursuant to 42 U.S.C. § 1983 and §1988 alleging that he was deprived of his Constitutional rights on or about November 5, 2011 and November 12, 2011.  See First Amended Complaint, annexed to the Declaration of Joy T. Anakhu dated May 28, 2015, as exhibit "A".

Defendants now move to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that: (1) the Amended Complaint fails to meet the plausibility standard, as outlined in Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007) and Fed. R. Civ. 8(a); (2) probable cause existed for plaintiff's arrest and prosecution, and qualified immunity precludes any liability; (3) Plaintiff's claims are time barred; (4) Plaintiff pleads no facts to suggest personal involvement of some individual officers; (5) plaintiff fails to plead a cause of action for excessive force; and (6) plaintiff fails to allege a pattern or practice that could give rise to municipal liability.

## STATEMENT OF FACTS

On November 5, 2011, at approximately 3:30 pm, plaintiff was present near Foley Square participating in an Occupy Wall Street ("OWS") demonstration.  See Plaintiff's First Amended Complaint annexed as Exhibit A, ¶¶ 50-51. Plaintiff was exercising political speech and peacefully assembling with other protestors. Id. ¶ 64.  Officers precluded protestors from climbing the steps of the State Supreme Court building at 60 Centre Street, although officers were aware that the building was closed. Id.  ¶¶ 52-53. Lieutenant Michael Zielinski issued

orders for the crowd of protestors to disperse. Id. ¶ 55. Plaintiff believed that Deputy Chief Steven Anger instructed Lieutenant Zielinski to issue the orders for the demonstrators to disperse. Id. ¶ 56. Plaintiff believed that Lieutenant Zielinski was aware that no disorderly conduct was being committed. Id. ¶ 55. Plaintiff therefore believed that the orders to disperse were unlawful. Id. ¶¶ 55-56. Plaintiff attempted to explain to Lieutenant Zielinski that he considered preventing access to the steps unconstitutional, and began chanting "treason!" Id. ¶¶ 57-59. Plaintiff was subsequently taken away from other protestors and placed under arrest. Id. ¶¶ 60-61. Officers placed tight plastic flex-cuffs around plaintiff's wrists, which caused plaintiff pain to his hands and wrists. Id. ¶ 65. Plaintiff was transported to a precinct and was held until his arraignment approximately 24 hours later. Id. ¶¶ 66-69. Plaintiff ultimately accepted an Adjournment in Contemplation of Dismissal for the charges stemming from his November 5, 2011 arrest. Id. ¶¶ 72-73.

Plaintiff cannot deny that numerous orders to disperse were issued and plaintiff failed to comply with those orders. See generally video provided by plaintiff in early March, "MV1", annexed as Exhibit C as well as additional videos labeled "TARU Morales" and "Youtube1", annexed as Exhibits D and E, respectively. Alternatively, plaintiff cannot plausibly allege that he was not given adequate time to comply with the dispersal orders. See Exhibit C at 00:03-08:24.

On or about November 12, 2011, plaintiff was participating in another demonstration related to Occupy Wall Street whereby he was exercising rights guaranteed by the United States Constitution. Id. ¶¶ 74-75. Without cause plaintiff was arrested and transported to a precinct where he was held for some time before being released with a summons. Id. ¶¶ 76-77. After some court appearances, this matter was dismissed against plaintiff. Id. ¶¶ 78-79.

## RULE 12(B)(6) STANDARD FOR DISMISSAL

In deciding a motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure, the court "accept[s] the allegations contained in the complaint as true and drawing all reasonable inferences in favor of the nonmoving party." King v. Am. Airlines, Inc., 284 F.3d 352 (2d Cir. 2002) (quoting Burnette v. Carothers, 192 F.3d 52, 56 (2d Cir. 1999)).

A complaint may be dismissed pursuant to Rule 12(b)(6) where it fails to plead "enough facts to state a claim to relief that is plausible on its face." See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1975 (2007). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." See Twombly, 127 S. Ct. at 1965; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While Twombly does not require heightened fact pleading of specifics, it does require enough facts to 'nudge [plaintiff's] claims across the line from conceivable to plausible.'"). A complaint satisfies the plausibility standard "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." See Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009).

Evaluating the sufficiency of a complaint is a "context-specific task that requires the reviewing court to draw on its judicial experience and common sense." See id. at 1950. The Court may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Id. at 1949. After examining the remaining factual allegations, if "the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged - but it has not 'show[n]' – 'that the pleader is entitled to relief.'" See id. at 1950 (quoting Fed. R. Civ. P. 8(a)).

In resolving a motion to dismiss, the Court may take judicial notice of court transcripts, which are "public documents of which the plaintiff has notice." Brodeur v. City of

-3-

New York, 2005 U.S. Dist. LEXIS 10865 at *3 (E.D.N.Y. 2005) (citing Cortec Indus., Inc. v. Sum Holding *L.P.*, 949 F.2d 42, 47-48 (2d Cir. 1991)). The Court may also consider documents submitted by the moving party, "so long as such documents either are in the possession of the party opposing the motion or were relied upon by that party in its pleadings." Prentice v. Apfel, 11 F. Supp. 2d 420, 424 (S.D.N.Y. 1998) (citing Brass v. Am. Film Technologies, Inc., 987 F.2d 142, 150 (2d Cir. 1993)). See also Oxman v. Downs, 999 F. Supp. 2d 404, 407 (E.D.N.Y. 2014) ("[A] plaintiff cannot evade a properly argued motion to dismiss simply because [the] plaintiff has chosen not to attach [a document] to the complaint or to incorporate it by reference.") (citing Karmilowicz v. Hartford Fin. Servs. Group, 494 F. App'x 153, 155-57 (2d Cir. 2012). Plainly, audio-visual materials are no different from "documents" for purposes of this analysis.[1]  See generally Scott v. Harris, 550 U.S. 372, 378 (2007) (adopting version of events reflected on video in deciding motion, where "[t]he videotape quite clearly contradicts the version of the story" advanced by the plaintiff ").

Finally, to the extent the Court declines to review the videos and court transcript appended to this motion, defendants respectfully request that the Court convert this motion to a motion under Fed. R. Civ. P. 56. pursuant to Fed. R. Civ. P. 12(d).

For the reasons set forth below, defendants respectfully submit that plaintiff's complaint must be dismissed in its entirety for failure to state a claim upon which relief can be granted.

---

[1]   The Federal Rules treat "documents" the same way as "sound recordings, images and other data compilations" for discovery purposes, for example.  *See* Fed. R. Civ. P. 34(a)(1)(A).

**ARGUMENT**

**THE AMENDED COMPLAINT FAILS TO SUFFICIENTLY ALLEGE FACTS TO SUPPORT ANY CLAIMS**

As outlined under Rule 8(a)(2) of the Federal Rules of Civil Procedure, a complaint must contain a "short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Under this standard, a complaint must contain "sufficient factual matter … to state a claim to relief that is plausible on its face." Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (May 19, 2009) (citing Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1974 (2007)). In other words, "bald assertions and conclusions of law will not suffice." Leeds v. Meltz, 85 F.3d 51, 53 (2d Cir. 1996). A party's "obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." Twombly, 550 U.S. at 555 (internal quotation marks and alteration omitted). In order to state a claim, the factual allegations contained in the pleading "must be enough to raise a right to relief above the speculative level." Id.; see also In re Elevator Antitrust Litig., 502 F.3d 47, 50 (2d Cir. 2007) ("While [Twombly] does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible.") (internal quotation marks and alteration omitted).

Here, it is clear that plaintiff has not provided sufficient factual allegations in his amended complaint to plausibly show that his constitutional rights were violated. This is particularly evidenced by plaintiff's recitation of the events leading to his November 12, 2011 arrest. The complaint summarily states plaintiff was participating in an OWS demonstration whereby he was exercising rights guaranteed to him by the United States Constitution. See Exhibit A, ¶¶ 74-75. Plaintiff then goes on to state that he was arrested and later released with a

summons.  Id. ¶¶ 76-77. That is essentially the extent of plaintiff's version of events. There is no mention within the amended complaint as to the location of plaintiff's arrest, the time of day in which the arrest/events occurred, the charges levied against plaintiff, or his own conduct.

Moreover, conclusory statements cannot "substitute for minimally sufficient factual allegations." Paycom Billing Servs. v. Mastercard Int'l, Inc., 467 F.3d 283, 289 (2d Cir. 2006) (internal quotation marks omitted); see also Amron v. Morgan Stanley Inv. Advisors Inc., 464 F.3d 338, 344 (2d Cir. 2006) (noting that "bald assertions and conclusions of law will not suffice" to defeat a motion to dismiss) (internal quotation marks omitted).

Although plaintiff pleads slightly more information with regard to his November 5, 2011 arrest, this date of incident also fails the plausibility standard as he provides only conclusory statements that the officers' orders to disperse were "unlawful."  See Exhibit A, ¶¶ 55-56. No mention is made as to how or why the orders were unlawful.  Further for both dates, plaintiff makes only conclusory statements that he was engaged in constitutionally protected activity but fails to provide any details.  Id.  ¶¶ 64, 74-75.

**ANY CLAIM PREDICATED ON PLAINTIFF'S ARRESTS FAIL AND QUALIFIED IMMUNITY ATTACHES TO THE ACTIONS OF THE OFFICERS**

Plaintiff's claims for false arrest, failure to intervene, malicious prosecution, and first amendment retaliation fail as probable cause existed for his arrest and prosecution.  The existence of probable cause to arrest constitutes justification and is a complete defense to plaintiff's claims relating to his arrest.  Covington v. City of New York, 171 F.3d 117, 112 (2d Cir. 1999); Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).  "There can be no federal civil rights claim for false arrest where the arresting officer had probable cause. Probable cause is established when the arresting officer has knowledge or reasonably trustworthy information

sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Singer v. Fulton County, 63 F.3d 110, 118 (2d Cir. 1995)(internal quotations omitted); citing  Bernard v. United States, 25 F.3d 98, 102 (2d Cir. 1994); O'Neill v. Town of Babylon, 986 F.2d 646, 650 (2d Cir. 1993).

Probable cause is an objective test, and any alleged alternative motives are irrelevant.  "[M]otivation is not a consideration in assessing probable cause." Singer, 63 F.3d 118.  "[W]e refuse to examine the motivation behind the decision by the sergeant to seek an arrest warrant." Mozzochi v. Borden, 959 F.2d 1174, 1179 (2d Cir. 1992); Whren v. United States, 517 U.S. 806, 812-13 (1996).  Put differently, the subjective motives of either the arrestees, or the officers are irrelevant to the probable cause analysis which turns instead on the facts and circumstances known to the officer.  "Probable cause exists where the facts and circumstances within the officer's knowledge and of which they had reasonably trustworthy information are sufficient in themselves to warrant a man of reasonable caution in the belief that an offense has been, or is being committed by the person to be arrested." Dunaway v. New York, 442 U.S. 200, 208 (1979).

In order to assert a failure to intervene claim, plaintiff must show that an officer either observed or had reason to know of a constitutional violation but failed to intervene. See Vesterhalt v. City of New York, 667 F. Supp. 2d 292, 297 (S.D.N.Y. 2009). Failure to intervene can make an officer liable for any preventable harm caused by the actions of another officer. Id. However, before an officer can be held liable for failure to intervene, there must first be a finding that the officer had a realistic opportunity to prevent the harm from occurring.  See Anderson v. Branen, 17 F.3d 552, 557 (2d Cir. 1994).  Additionally, there can be no failure to intervene, where there is no constitutional violation.  Feinberg v. City of New York, 2004 U.S. Dist. LEXIS

16098 at *4 (S.D.N.Y. 2004) ("If the Court determines that the officer's conduct did not violate a constitutional right, however, the analysis ends.")

Likewise in order for plaintiff to prevail on a malicious prosecution claim he must show: "(1) that the defendant initiated a prosecution against the plaintiff, (2) that the defendant lacked probable cause to believe the proceeding could succeed, (3) that the defendant acted with malice, and (4) that the prosecution was terminated in the plaintiff's favor."--* Posr v. Court Officer Shield # 207, 180 F.3d 409, 417 (2d Cir. 1999) (citing Ricciuti v. N.Y.C. Transit Auth., 124 F.3d 123, 130 (2d Cir. 1997)). Further, in addition to the elements of malicious prosecution under state law, in order to allege a cause of action for malicious prosecution under §1983, plaintiff must also show that there was a sufficient post-arraignment liberty restraint to implicate his Fourth Amendment rights. Rohman v. New York City Transit Auth., 215 F.3d 208, 215 (2d Cir. 2000) (citing Murphy v. Lynn, 118 F.3d 938, 944-46 (2d Cir. 1997). Yet, so long as there was probable cause to arrest, there is probable cause to prosecute unless the discovery of some intervening fact makes the groundless nature of the criminal charges readily apparent. Lowth v. Town of Cheektowaga, 82 F.3d 563, 571 (2d Cir. 1996).

Lastly, to state a claim for First Amendment Retaliation, plaintiff must establish "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 2013 U.S. App. LEXIS 5285, *3-4 (2d Cir. 2013). Probable cause is a complete defense to a claim of First Amendment Retaliation. "Fabrikant's claims of…unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…." Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).

-8-

Although plaintiff pleads no plausible facts to decipher what he may have been charged with on November 12, 2011, he does assert that he was charged, *inter alia*, with disorderly conduct for his November 5, 2011 arrest. Based on the facts within the complaint as it relates to that date, and from the irrefutable video evidence, plaintiff could have been properly charged with an array of statutes including N.Y. Penal Law §§195.05; 240.20(1)(6); and 120.15.

Under N.Y. Penal Law §195.05 "A person is guilty of obstructing governmental administration when he intentionally obstructs, impairs or perverts the administration of law or other governmental function or prevents or attempts to prevent a public servant from performing an official function, by means of intimidation, physical force or interference, or by means of any independently unlawful act[.]" Based on the allegations set forth within the Complaint, plaintiff obstructed governmental administration, *inter alia*, by interfering with the officers' more general duties under New York City Charter §435(a). The charter states "the police department and force shall have the power and it shall be their duty to…preserve order at…all public meetings and assemblages … regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for the facilitation of traffic and the convenience of the public…" Id.

Here, the facts as available establish the following: officers were present during an OWS demonstration where unquestionably a large group of protestors had gathered. See Exhibit A, ¶¶ 51-52. While facilitating crowd control, officers issued orders, via bullhorn, for the protestors to disperse. Id. ¶¶ 55-56. Further, video evidence supports that numerous orders were issued after a crowd had swelled to such numbers that pedestrian traffic was impeded. See Exhibit C at 00:03-08:24, and generally Exhibits D and E.  Plaintiff cannot deny that he failed to comply with at least ten (10) orders to disperse by remaining in the exact location where the orders were issued. This refusal to disperse interfered with the officers' duties to maintain a

congestion-free sidewalk and maintain order during a mass demonstration. Further irrefutable video evidence shows plaintiff's further physical interference. Plaintiff can be seen on video approaching Lt. Zielinski and shaking a document, at eye level, only inches away from the officer's face as he shouts "treason!"   Exhibit C, at 7:58.   When plaintiff draws near, Lt. Zielinski is clearly shown saying "move back, move back sir, move back," to Plaintiff Mediavilla personally from approximately Id. at 08:08-08:12.   Lt. Zielinski then issued additional orders to disperse, stating the sidewalk is closed prior to plaintiff's arrest, which occurs at approximately Id. at 08:22.

Therefore, plaintiff cannot deny that his verbal and physical conduct interfered with the officers' attempts to maintain a congestion-free sidewalk as well as order during a demonstration. Further, any argument that his physical actions were not enough to effectively interfere and hamper officers' efforts is without merit. As noted in this Circuit, plaintiff's mere refusal to comply was enough to establish probable cause for OGA. See Brown v. City of New York, 2014 U.S. Dist. LEXIS 83513 at *21 (S.D.N.Y. 2014) citing C.G. v. City of New York, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. 2013) (Refusing to obey orders to leave the area can be the basis for an arrest for obstructing governmental administration); Marcavage v. City of New York, 2010 U.S. Dist. LEXIS 107724 at *30 (S.D.N.Y. 2010) (finding probable cause for OGA where officers, carrying out a governmental function of regulating pedestrian traffic during a demonstration, ordered plaintiffs to leave the area numerous times before their arrest); Johnson v. City of New York, 2008 U.S. Dist. LEXIS 78984 at *10 (S.D.N.Y 2008) ("an officer has probable cause to arrest for obstructing governmental administration where a person refuses to comply with an order from a police officer"); see also Lennon v. Miller, 66 F.3d 416, 424 (2d

Cir. 1995) (finding probable cause for arrest where plaintiff refused to follow officer's order to leave her vehicle).

As noted in <u>Bery v. City of New York</u>, the City of New York "…certainly has a significant interest in keeping its public spaces safe and free of congestion." <u>Bery v. City of New York</u>, 97 F.3d 689, 697 (2d Cir. 1996); <u>accord</u> <u>Mastrovincenzo v. City of New York</u>, 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk and street congestion in a city with eight million inhabitants[] constitutes[s] [a] significant governmental interest[]…") (internal quotation marks omitted); <u>see</u> <u>also</u> <u>Concerned Jewish Youth v. McGuire</u>, 621 F.2d 471, 478 (2d Cir. 1980) (where the Court found that the interests of residents, visitors and workers must be balanced with that of protestors). Due to the strong interest the City of New York has in maintaining order during mass demonstrations, officers should not be forced to wait for congestion to arise before parameters are put in place to prevent it.

Likewise, the facts as presented also gave officers probable cause to arrest plaintiff for disobeying lawful police orders in violation of N.Y. Penal Law §240.20(6). Subsection (6) of the Disorderly Conduct statute provides that "[a] person is guilty of disorderly conduct when, with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof: … (6) He congregates with other persons in a public place and refuses to comply with a lawful order of the police to disperse." N.Y. Penal Law, § 240.20(6). "An individual's refusal to obey a police order to disperse can only be justified when the circumstances show conclusively that the police officer's direction was purely arbitrary and not calculated in any way to promote the public order." <u>People v. Hanson</u>, 178 Misc.2d 932, 937 (Dist. Ct. Nassau County 1998); <u>People v. Grant</u>, 126 Misc.2d 18, 20-21 (Crim. Ct. Bx. County 1984) (same). It is well-settled, of course, that "[c]ontrol of crowds is a legitimate police

-11-

function." Schumann v. New York, 270 F. Supp. 730, 733 (S.D.N.Y. 1967); Matter of Ashley M., 30 A.D.3d 178, 180 (1st Dept. 2006) ("Crowd control is a legitimate governmental function exercised by the police department").

New York courts generally recognize that disobedience of a lawful police order to disperse, without more, is sufficient to establish probable cause for the criminal defendant's arrest. In People v. Gamble, Docket # 01-21968, 2001 NY Slip Op 40595U, 2001 N.Y. Misc. LEXIS 1278 (City Ct., Poughkeepsie Dec. 20, 2001), the court upheld an accusatory instrument alleging that the defendant "congregated with other persons and, after being cited for a loud music ordinance," was ordered to disperse by a police officer but "fail[ed] to follow that directive." Gamble, at *6. The court found that these allegations set forth "all the elements of the offense of Disorderly Conduct." Id.

Here, plaintiff admits he was on a public sidewalk with other protestors at an OWS demonstration. See Exhibit A, ¶¶ 51,52. Further, plaintiff cannot deny that he failed to follow the directives to disperse. Additionally, video evidence shows that numerous orders were given and plaintiff had ample time to comply and disperse. See Exhibits C, D, and E generally. The law regarding orders issued by police provides considerable discretion. As noted above, "[a]n order to disperse is lawful unless the order was purely arbitrary and not calculated in any way to promote the public order." Crenshaw v. City of Mount Vernon, 372 F. Appx 202, 206 (2d Cir. 2010). As the videos irrefutably show, this was not arbitrary and the orders were patently lawful. Additionally, plaintiff will be unable to argue that because the sidewalk was less crowded at the time of his arrest, after orders to disperse had been ongoing for more than ten minutes, the orders were no longer valid. U.S. v. Nelson, 500 Fed. Appx. 90 (2d Cir. 2012).

N.Y. Penal Law §240.20(1), is also applicable here, based on plaintiff's conduct of charging at Lt. Zelinski as he issued orders. In pertinent part, N.Y. Penal Law §240.20(1) states that a person is guilty of disorderly conduct when he "engages in fighting or in violent, tumultuous, or threatening behavior…." See also Mesa v. City of New York, 2013 U.S. Dist. LEXIS 1097, at *36, (S.D.N.Y. 2013) Here, the irrefutable evidence shows that plaintiff was personally warned to disperse. Exhibit D, at 14:37. Lt. Zielinski can be seen issuing another general order to disperse. Id. at 14:42. As Lt. Zielinski turns his back, plaintiff can be seen charging towards him shouting. Id. at 14:46. Lt. Zielinski turns around, apparently startled after having been rushed by plaintiff in an aggressive and in the very least tumultuous manner. Id. 14:47. Plaintiff's action of charging the officer gave rise to probable cause under N.Y. Penal Law §240.20(1) and therefore all claims related to his arrest should be dismissed.

These actions of charging the officer also made him susceptible to charges for menacing in the third degree. Under N.Y. Penal law §120.15, "a person is guilty of menacing in the third degree when, by physical menace, he or she intentionally places or attempts to place another person in fear of death, imminent serious physical injury or physical injury." Plaintiff's action of lunging at an officer, while he carried out his law enforcement duties could reasonably have caused one to become fearful of personal injury, especially as Lt. Zelinski was surrounded by a crowd of protestors. It should be noted that menacing in the third degree requires neither an injury nor an intent to cause injury. See Holley v. County of Orange, 625 F. Supp. 2d 131, 138 (S.D.N.Y. 2009).

Where, as here, there is probable cause to arrest for any offense a false arrest claim is subject to dismissal. Marcavage, 689 F.3d 98, 110; citing Jaegly v. Couch, 439 F.3d 149, 154 (2d Cir. 2006); see also Devenpeck v. Alford, 543 U.S. 146, 153-54 (2004); Zellner v.

Summerlin, 494 F.3d 344, 369 (2d Cir. 2007).  Although plaintiff may allege that his arrest was predicated on his shouting of "treason!" (see Exhibit A, ¶59)[2]; plaintiff cannot refute the existence of probable cause to arrest based on statutes cited above.  Accordingly, all of plaintiff's claims relating to his arrest must be dismissed.

To the extent plaintiff's violation(s) somehow falls short of probable cause, the individual defendants are still entitled to qualified immunity.  A police officer is entitled to qualified immunity from a claim for arrest without probable cause if: (1) it was objectively reasonable for the officer to believe that probable cause existed; or (2) officers of reasonable competence could disagree on whether there was probable cause.  Zellner v. Summerlin, 494 F.3d 344, 369 (2d Cir. 2007) (citations omitted).  "An officer's actions are objectively unreasonable when no officer of reasonable competence could have made the same choice in similar circumstances."  Lennon v. Miller, 66 F.3d 416, 420-21 (2d Cir. 1995).

The "doctrine of qualified immunity shields public officials performing discretionary functions from civil liability insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known . . . or insofar as it was objectively reasonable for them to believe that their acts did not violate those rights."  Bradway v. Gonzales, 26 F.3d 313, 317-18 (2d Cir. 1994) (internal citations and quotations omitted).  Qualified immunity is applicable regardless of "whether a government actor's error is a mistake of law, a mistake of fact, or a mistake based on mixed questions of law and fact."  Pearson v. Callahan, 555 U.S. 223, 231 (2009) (citations omitted).  The Supreme Court has noted time and again that "[t]he qualified immunity standard 'gives ample room for

---

[2] It should be noted that although plaintiff pleads in his complaint that protestors were prevented from climbing the steps of the State Supreme Court buildings, he pleads no facts to suggest that he attempted to ascend the steps or that this was a reason for his arrest or alleged retaliation. See Exhibit B, 6:7-14.

mistaken judgments' by protecting 'all but the plainly incompetent or those who knowingly violate the law.'"  <u>Hunter v. Bryant</u>, 502 U.S. 224, 229 (1991) (per curiam) (<u>quoting Malley v. Briggs</u>, 475 U.S. 335, 341 (1986)).

As outlined above, there was probable cause to arrest plaintiff for the statues outlined above.  Plaintiff's intent should not be at issue in making a determination of probable cause or qualified immunity.  At issue is only whether the officers were incompetent in believing probable cause existed.  As plaintiff violated numerous statutes, at the time of his arrest the officers' conduct cannot be described as anything but reasonable and subject to qualified immunity.

## ANY CLAIMS PREDICATED ON EXCESSIVE FORCE SHOULD BE DISMISSED

An "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment ..."  <u>Graham v. Connor</u>, 490 U.S. 386, 394 (1989).  The Courts have consistently held "that the right to make an arrest or investigatory stop necessarily carries with it the right to use some degree of physical coercion or threat thereof . . . ."  <u>Graham</u>, 490 U.S. at 396 (citations omitted).  Thus, "[d]etermining whether the force used to effect a particular seizure is 'reasonable'… requires a careful balancing of 'the nature and quality of the intrusion on the individual's Fourth Amendment interests against the countervailing governmental interests at stake."  <u>Graham</u>, 490 U.S. at 396 (citations omitted).

A plaintiff must establish "through evidence, that the 'alleged use of force is objectively sufficiently serious or harmful enough to be actionable.'"  <u>Rincon v. City of New York</u>, 2005 U.S. Dist. LEXIS 4335, *11 (S.D.N.Y. 2005); <u>citing United States v. Walsh</u>, 194 F.3d 37, 50 (2d Cir. 1999)).  Furthermore, "not every push or shove, even if it may later seem

unnecessary in the peace of a judge's chambers, violates the Fourth Amendment." Graham v. Connor, 490 U.S. 397; citing Johnson v. Glick, 481 F.2d 1028, 1033 (2d Cir. 1973)).

"The right to make an arrest carries with it the right to use some degree of physical coercion as long as the force used is reasonable based on the perception of the arresting officer at the time of arrest. Faruki v. City of New York, 2012 U.S. Dist. Lexis 47310, *17 (S.D.N.Y. 2012); citing Kerman v. City of New York, 261 F.3d 229, 239 (2d Cir. 2001).

The Second Circuit has been clear that minimal injuries also speak to the reasonableness of force used. Tracy v. Freshwater, 623 F.3d. 90, 97 (2d Cir. 2010)(Striking multiple times with a metal flashlight in the course of a hand-to-hand struggle is subject to qualified immunity, even where plaintiff claims he was not resisting). Therefore, where an arrestee suffers *de minimis* injuries, and/or fails to provide evidence of any alleged injuries, an excessive force claim must fail. Esmont v. City of New York, 371 F.Supp. 2d 202, 214 (E.D.N.Y. 2005). Accordingly, "a *de minimis* use of force will rarely suffice to state a Constitutional claim." Romano v. Howarth, 998 F.2d 101, 105 (2d Cir. 1993).

As a preliminary matter, and noted above, *supra*, plaintiff pleads no facts to suggest that any force was used, in connection with his arrest on November 12, 2011. He also pleads that he was handcuffed but makes no mention of them being tight, etc. Therefore, the only excessive force claim could be premised on the allegations that relate to his November 5, 2011 arrest where he pleads that he was grabbed, forcefully pulled away from other protestors and had handcuffs applied tightly. See Exhibit A, ¶¶ 60, 65. Yet even these allegations do not give rise to a cognizable claim for excessive force. Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y. May 12, 2015) is particularly instructive on this matter as the court dealt with a similar issue on a 12(b)(6) motion to dismiss.

In dismissing plaintiff's claim for excessive force, the court found that although: "[Plaintiff's] excessive force claim could be premised on the allegation that the defendants pulled his legs out from under him as he was climbing down from the phone booth, or on the allegation that he was handcuffed too tightly, [] neither of these is sufficient to state a claim." Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y. May 12, 2015) Similarly, plaintiff here has presented only the bare allegation that he was forcefully handled and tightly cuffed.  Absent any claim of injury, or any overtly aggressive act, plaintiff's excessive force claim must be dismissed as *de minimis*.  See Thimmesch v. City of New York, 2013 U.S. Dist. LEXIS 53587 (S.D.N.Y. Apr. 9, 2013) (dismissing tight handcuffing claim on a 12(b)(6) motion to dismiss). Painful handcuffing does not amount to a constitutional violation as a matter of law.  Schy v. Vermont, 2 F. App'x 101, 101-02 (2d Cir. 2001); Beckles v. City of New York, No. 11-1226-cv, 2012 U.S. App. LEXIS 17433, at *5, (2d Cir. Aug. 20, 2012) "'Frequently, a reasonable arrest involves handcuffing the suspect, and to be effective[,] handcuffs must be tight enough to prevent the arrestee's hands from slipping out.'" Grant v. City of New York, 500 F. Supp. 2d 211, 217 (S.D.N.Y. 2007). It should also be noted that plaintiff pleads no facts to suggest that he requested his handcuffs be loosened or removed.[3] Nor does plaintiff plead facts that suggest he either requested or sought medical attention in connection to his arrests. Accordingly plaintiff's excessive force claim should be dismissed.

## PLAINTIFF'S CLAIMS ARE TIME BARRED

Plaintiff filed an Amended Complaint on November 5, 2014 alleging violations of his civil rights, stemming from his arrests and prosecution. See Exhibit A generally. Plaintiff

---

[3] The *de minimis* nature of plaintiff's alleged excessive force claim is further highlight when plaintiff's counsel was asked by the court at the April 23, 2015 pre-motion conference whether plaintiff ever requested that the handcuffs be loosened.  Plaintiff's counsel responded *"I can't answer that of the top of my head. I don't recall."* See Exhibit B, 15:18-22.

added fourteen (14) additional defendants in his amended pleading. Id.  Accordingly, in order to avoid claim preclusion on statute of limitations grounds, plaintiff was required to serve any prospective defendant in connection with this action by March 5, 2015.  Plaintiff failed to effectuate service on the Officers, or any individual defendant by this date.  (See Civil Docket Nos. 38-46).

Federal courts considering claims brought under 42 U.S.C. § 1983 follow the state statute of limitations governing general personal injury actions within their respective judicial district.  Wilson v. Garcia, 471 U.S. 261 (1985).  New York Civil Practice Law and Rule § 214(2), imposes a three-year statute of limitations on actions to recover based on liability created or imposed by a statute.  As a result, the statute of limitations period in § 1983 cases in New York is three years.  Pearl v. City of Long Beach, 296 F.3d 76, 79 (2d Cir. 2002).  Federal law governs the date of accrual for federal claims, and it is well established in the Second Circuit that the time of accrual is the point in time when the plaintiff knows or has reason to know of the injury which is the basis of his action."  Singleton v. City of N.Y., 632 F.2d 185, 191 (2d Cir. 1980) (citation omitted)).

With respect to the current action, there is no ambiguity as to when plaintiff's claims accrued.  The incidents occurred on November 5, 2011 and November 12, 2011 wherein plaintiff was arrested during OWS demonstrations. See Exhibit A, ¶¶ 50, 61, 74, 76. Therefore, on November 5, 2011 and November 12 2011, plaintiff became aware of the purported constitutional injury underlying his claims.  Failure to serve process within the 120 day period provided by Rule 4(m) will result in the claim being dismissed unless good cause is shown. Yosef v. Passamaquoddy Tribe, 876 F.2d 283, 287 (2d Cir. 1989) (dismissal of an action is

mandatory under Rule 4(j) [now Rule 4(m)] when the 120 day limit is violated unless good cause can be shown).

Furthermore, a dismissal pursuant to Rule 4(m) does not insulate the neglecting party "from the consequences of time defenses, such as the statute of limitations." Alexander v. Forrest City Pierrepont Associates et al., 94 Civ. 3961 (ILG), 1995 U.S. Dist. LEXIS 22079 at *5 (E.D.N.Y. June 29, 1995) (citing Mendez v. Elliot, 45 F.3d 75, 78 (4th Cir. 1995). Should a party anticipate needing more time than allotted under Rule 4(m) to effect service of process, a request for judicial extension of the 120 day period must be sought *before* it expires. Yosef, 876 F.2d at 287. In addition, failure to effect service due to an attorney's neglect will not warrant relief. Klein v. Williams, 144 F.R.D. 16, 20 (E.D.N.Y. 1992) (denying relief under Rule 60(b) where government defendant warned plaintiff prior to the expiration of the 120 day period that service had not been properly effected).

Here, plaintiff has shown no good cause as to why the individual defendants were served beyond the 120 days as permitted by the statute and plaintiff failed to seek judicial extension prior to the expiration of the 120 day period. As plaintiff's statute of limitations has passed, these defendants are entitled to dismissal with prejudice.

## THE AMENDED COMPLAINT FAILS TO ALLEGE ANY FACTS TO SUPPORT PERSONAL INVOLVEMENT FOR MANY OF THE INDIVDUAL DEFENDANTS

Although defendants believe that plaintiff's claims are time barred as it relates to the individual defendants, defendants also note that plaintiff pleads no facts to suggest that many of the defendants were personally involved in the underlying incidents.[4]

---

[4] It should be noted that the parties filed a stipulation in which plaintiff agreed to discontinue this action for some of the named defendants (See Docket No. 50). Nonetheless, defendants assert that there are still individual officers that remain in which no personal involvement is plead.

As a threshold matter, it is well established that § 1983 imposes liability only upon a defendant who personally "subjects, or causes to be subjected" any person to the deprivation of any federal right. <u>Bass v. Jackson</u>, 790 F.2d 260, 263 (2d Cir. 1986). Accordingly, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." <u>Williams v. Smith</u>, 781 F.2d 319, 323 (2d Cir. 1986) (quoting <u>McKinnon v. Patterson</u>, 568 F.2d 930, 934 (2d Cir. 1977), <u>cert</u> <u>denied</u> 434 U.S. 1087 (1978)); <u>Sealey v. Giltner</u>, 116 F.3d 47, 51 (2d Cir. 1997); <u>Wright v. Smith</u>, 21 F.3d 496, 501 (2d Cir. 1994). Absent personal involvement, no individual can be held liable for the alleged violations of plaintiff's civil rights. <u>Williams</u>, 781 F.2d at 323-24.

Here, plaintiff has named Deputy Inspector Elisa Cokkinos, Lieutenant Bill Cook, and Lieutenant Daniel Albano as defendants in this action; however, he fails to plead any factual allegations to suggest they were involved in any constitutional violations against him. Further, plaintiff fails to even provide notice as to what date of incident might even apply to these officers. As noted above, the requirement of personal involvement is critical in sustaining an action pursuant to §1983. The lack of personal involvement as it relates to these officers is particularly telling as plaintiff's counsel admitted during the pre-motion conference on this matter that the amended complaint was filed before having any evidence or information to support such a claim. See Exhibit B, 8: 9-17; 12: 14-18. It is clear from the complaint and the admissions made in open court that plaintiff added these officers and others who had no personal involvement in his underlying claims. Therefore, these officers must be dismissed. <u>See</u> generally <u>Purcell v. Coughlin</u>, 790 F.2d 263, 265 (2d Cir. 1986).

**PLAINTIFF FAILS TO STATE A CLAIM FOR MUNICIPAL LIABILITY AGAINST THE CITY OF NEW YORK**

Plaintiff argues for Municipal Liability on the theories that the police targeted Occupy Wall Street participants for arrest without cause, and engaged in random arrests during peaceable assemblies.  These claims are without merit and must be dismissed as a matter of law.

While municipalities may be sued under 42 U.S.C. § 1983, they are not liable under the theory of *respondeat superior*.  The Supreme Court held in Monell v. Department of Social Services of the City of New York, 436 U.S. 658 (1978) that:

> The language of § 1983, read against the background of the same legislative history, compels the conclusion that Congress did not intend municipalities to be held liable unless action pursuant to official municipal policy of some nature caused a constitutional tort. In particular, we conclude that a municipality cannot be held liable solely because it employs a tortfeasor -- or, in other words, a municipality cannot be held liable under § 1983 on a respondeat superior theory.

Where there is no underlying constitutional violation, there can be no liability pursuant to Monell.  City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986); Martinez v. City of New York, 2008 U.S. Dist. LEXIS 49203, at *12 (S.D.N.Y. 2008) (noting that "[a] municipality cannot be liable for acts by its employees which are not constitutional violations."), aff'd Martinez v. Muentes, 340 Fed. Appx. 700 (2d Cir. 2009).  Here, where Plaintiff's arrests were justified, no underlying constitutional violation can be claimed and no liability pursuant to Monell can be maintained on any theory.

Additionally a municipal entity may only be liable if the alleged conduct was undertaken pursuant to "a policy statement, ordinance, regulation, or decision officially adopted and promulgated by [its] officers" or a "governmental 'custom' even though such a custom has not received formal approval through [ ] official decision making channels."  Monell, 436 U.S. at

690-91.  Here plaintiff cannot show that any customary policy exists with respect to targeting participants for arrest as he must. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 322-23 (1986).  In fact, plaintiff's pleadings allude to assorted alleged arrests before relying on unrelated law school clinic reports on force and newspaper articles.  Exhibit A, ¶¶ 133-151.   Plaintiff's list of conclusory examples of various purported incidents and arrests during Occupy Wall Street cannot establish plaintiff's sweeping and vague claim of policies targeting Occupy Wall Street participants.  <u>Escobar v. City of New York</u>, 765 F.Supp.2d 415, 420 (E.D.N.Y. 2011) (finding "a handful of isolated incidents insufficient to create a material fact in dispute about the existence of any seizure-related policy"); <u>Edwards v. City of New York</u>, 2005 U.S. Dist. LEXIS 34376, *33 (S.D.N.Y. 2005) (<u>Monell</u> "would be rendered sterile if, as plaintiff asserts, mere conclusory allegations of a few isolated incidents ... were sufficient to hold the municipality liable").  Accordingly, plaintiff fails to sufficiently plead and cannot push across the threshold of plausibility a <u>Monell</u> claim in this matter.

Similarly, Plaintiff's arguments that there is a policy of random arrests, or targeted arrests of Occupy demonstrators, are not supported by the evidence, and certainly not by Plaintiff's own case.  As outlined above there was ample probable cause for plaintiff's November 5, 2011 arrest, and the amended complaint fails to sufficiently allege any viable facts which support plaintiff's claims arising from his arrest on November 12, 2011.  Plaintiff's conduct, and the numerous warnings and requests that went unheeded before any action was taken, make clear that the police acted properly and with restraint at all times.  As the video evidence shows, far from plaintiff being randomly plucked from a crowd or targeted, a crowd was requested to disperse, and plaintiff was one of a few who deliberately ignored the lawful orders.  The facts at issue plainly contradict plaintiff's claimed theories.  Plaintiff's supports this

claim with several conclusory statements and by discussing several arrests from press articles. This is inadmissible and insufficient to maintain a claim at this stage, and regardless is meritless in the face of Plaintiff's justified arrests that he seemingly sought out.   As plaintiff cannot establish either theory his Monell claim must be dismissed as a matter of law.   Ying Jing Gan v. City of New York, 996 F.3d 522, 532 (2d Cir. 1993)

Plaintiff's Monell claims must also be dismissed as implausible.   Even when looking to a theory that as alleged is "consistent with an unlawful agreement," the Court must dismiss that same claim where it is "more likely explained by, lawful [] behavior."   Atlantic Corp. v. Twombly, 550 U.S. 544, 567 (2007); see also Ashcroft v. Iqbal, 556 U.S. 662, 681-2 (2009) ("Taken as true, these allegations are consistent with [discrimination based on race, religion or national origin].   But given more likely explanations they do not plausibly establish this purpose.")  Plaintiff's first theory, that Occupy Wall Street protestors were targeted for arrest is unsupported by his pleadings, and implausible.  Occupy Wall Street demonstrations spanned a period of over a year and included many thousands of individuals making their voices heard. And despite individual demonstrators sometimes engaging in illegal conduct, and some large scale plans to break the law, the movement resulted in relatively few arrests, owing in part to the professionalism of the New York City Police Department and its respect for the First Amendment.   "Plaintiffs have neither plausibly alleged that the officers intended to discourage protesting nor explained why, had they intended to do so, they would have arrested only the protesters who [violated the law]."   Garcia v. Bloomberg, 865 F. Supp. 2d 478, 492-3 (S.D.N.Y. 2012) (dismissing as implausible plaintiff's broad conspiratorial policy to allegedly deter Occupy Wall Street protests).  It is far more plausible that any arrests were based on illegal conduct and civil disobedience as described at length above.

Similarly, the idea that the police undertook unjustified uses of force to deter First Amendment activity is implausible on its face.  The plans to disrupt the functioning of lower Manhattan, coupled with the warnings by officers and the opportunities given to demonstrators to comply before any arrest amply demonstrate the respect for the First Amendment by the police department.  Plaintiff's November 5, 2011 arrest illustrates that point as his arrest was clearly a last resort after lawful orders were made an unheeded by plaintiff.

Plaintiff's <u>Monell</u> claim must be dismissed as he suffered no constitutional violation, any constitutional violation was not caused by any illegal policy, and plaintiff fails to plausibly allege, and cannot show a prima facie entitlement to relief as he is required to at this stage.

## <u>CONCLUSION</u>

For the foregoing reasons, defendants, respectfully request that the Court dismiss plaintiff's complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:      New York, New York
            May 28, 2015

                        ZACHARY CARTER
                        Corporation Counsel of the City of New York
                        *Attorney for Defendants*
                        100 Church Street
                        New York, New York 10007
                        (212) 356-2323


                        By: _____/s/_____
                            Joy T. Anakhu
                            Andrew J. Lucas
                            Assistant Corporation Counsel
                            Special Federal Litigation Division