UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

JOSE MEDIAVILLA,

Plaintiff,

-against-

CITY OF NEW YORK, et al.

Defendants.

**REPLY MEMORANDUM OF LAW IN SUPPORT OF DEFENDANTS' CONVERTED R. 12 MOTION AND IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

***ZACHARY W. CARTER***
*Corporation Counsel of the City of New York*
*Attorney for Defendants*
*100 Church Street*
*New York, N.Y. 10007*

Of Counsel: Joy Anakhu & Andrew Lucas
Tel: (212) 356-2323
Matter No. 2014-043975

# TABLE OF CONTENTS

TABLE OF CONTENTS ............................................................................................. i

TABLE OF AUTHORITIES ...................................................................................... iii

PRELIMINARY STATEMENT .................................................................................. 1

PLAINTIFF CANNOT SHOW, AND HAS NOT PLED, ANY CONSTITUTIONAL
VIOLATION IN THIS ACTION ................................................................................. 2

      PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST, AND THE
      DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY ..................... 5

          A.   Probable Cause Existed to Arrest Plaintiff for
          Menacing and Plaintiff Does Not Oppose
          Defendants Motion For Dismissal Under NY PL §
          240.20(1) ....................................................................................... 6

          B.   Probable Cause Existed to Arrest Plaintiff
          Under NY PL § 240.20(5) And (6) ............................................... 8

          C.   Probable Cause Existed to Arrest Plaintiff
          Under NY PL § 195.05 ............................................................... 11

      PLAINTIFF FAILS TO ADEQUATELY SET FORTH, AND CANNOT SHOW,
      ANY EXCESSIVE FORCE CAUSE OF ACTION, AND DEFENDANTS ARE
      ENTITLED TO QUALIFIED IMMUNITY ......................................................... 11

      PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS AND DEFENDANTS
      ARE ENTITLED TO QUALIFIED IMMUNITY ............................................... 14

      PLAINTIFF'S MUNICIPAL LIABILITY THEORY FAILS ............................ 20

PLAINTIFF'S PROPOSED AMENDED COMPLAINT FAILS AS FUTILE AND UNTIMELY,
AND LEAVE TO AMEND SHOULD BE DENIED .................................................... 23

      PLAINTIFF STILL FAILS TO SET FORTH PERSONAL INVOLVEMENT OF
      THE INDIVIDUAL DEFENDANTS ................................................................ 25

          A.   ABUSE OF PROCESS: ................................................................ 27

          B.   RETALIATORY PROSECUTION ................................................. 29

          C.   FALSE CRIMINAL CHARGES ................................................... 30

          D.   EQUAL PROTECTION AND DUE
          PROCESS ................................................................................... 30

EVEN AS AMENDED PLAINTIFF FAILS TO PLEAD A CLAIM FOR
MUNICIPAL LIABILITY .................................................................................... 32

PLAINTIFF'S ACTION AGAINST NUMEROUS INDIVIDUAL DEFENDANTS ARE TIME
BARRED AND THE PARTIES ARE NOT SUBJECT TO PERSONAL JURISDICTION ...... 35

PLAINTIFF'S IMMATERIAL AND SCANDALOUS  PLEADINGS SHOULD BE STRICKEN
PURSUANT TO RULE 12(F) .................................................................................... 36

CONCLUSION ......................................................................................................... 36

...................................................................................................................................

# TABLE OF AUTHORITIES

**Cases**                                                                    **Pages**

## CASES

Acosta v. City of N.Y., No. 11 Civ. 856 (KBF), 2012 U.S. Dist. LEXIS 60460, 2012 WL 1506954 (S.D.N.Y. Apr. 26, 2012) ................................................................. 13

Albright v. Oliver, 510 U.S. 266, 273 (1994) ................................................................. 31

Amnesty Am. v. Town of W. Hartford, 361 F.3d 113 (2d Cir. 2004) .................................. 21, 33

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................. 26, 32

Ashcroft v. Iqbal, 556 U.S. 662 (2009) ................................................................. 32

Baltazar v. Petland Discounts, Inc., 2014 U.S. Dist. LEXIS 94695 (E.D.N.Y. May 22, 2014) ................................................................. 23

Barrington v. Johnson, 2006 U.S. Dist. LEXIS 86354 (S.D.N.Y. 2006) .................................. 27

Bass v. Jackson, 790 F.2d 260 (2d Cir. 1986) ................................................................. 25

Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n, 38 N.Y.2d 397 (1975) ..................... 28

Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965 (2007) ................................................. 32

Bell v. Lennon, 971 F. Supp. 830 (S.D.N.Y. 1997) ................................................................. 31

Bery v. City of New York, 97 F.3d 689 (2d Cir. 1996) ........................................................ 17

Bohm v. Holzberg, 365 N.Y.S.2d 262 (App. Div. 1975) ..................................................... 29

Bosone v. Cnty. of Suffolk, 274 A.D.2d 532, 534 (2d Dep't 2000) ........................................ 34

Cash v. County of Erie, 654 F.3d 324 (2d Cir. N.Y. 2011) .................................................. 22

City of Canton v. Harris, 489 U.S. 378 (1989) ................................................. 21, 22, 33

City of Los Angeles v. Heller, 475 U.S. 796 (1986) ................................................................. 20

City of Renton v. Playtime Theatres, Inc., 475 U.S. 41 (1986) ............................................. 18

Concerned Jewish Youth v. McGuire, 621 F.2d 471 (2d Cir. 1980) ...................................... 17

Connick v. Thompson, 563 U.S. 51 (2011) ................................................................. 22

Cook v. Sheldon, 41 F.3d 80 (2d Cir. 1994) ................................................................. 27

Cox v. Louisiana, 379 U.S. 559 (U.S. 1965) ................................................................. 16

Crenshaw v. City of Mount Vernon, 372 F. App'x. 202 (2d Cir. 2010) ................................ 9, 17

Curiano v. Suozzi, 63 N.Y.2d 113 (1984) ................................................................. 28

Curley v. Vill. of Suffern, 268 F.3d 65 (2d Cir. 2001) ........................................................ 29

Daniels v. Williams, 474 U.S. 327 (1986) ................................................................. 31

Dwares v. City of New York, 985 F.2d 94 (2d Cir. 1993) .................................................. 21, 32

Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003) ................................................................. 23

Fabrikant v. French, 691 F.3d 193 (2d Cir. 2012) ................................................................. 14

Faruki v. City of New York, 2012 U.S. Dist. LEXIS 47310 (S.D.N.Y. Mar. 30, 2012) ............... 4

Garcia v. Bloomberg, 865 F. Supp. 2d 478 (S.D.N.Y. 2012) ............................................. 23, 35

Garcia v. Doe, 2014 U.S. App. LEXIS 24772, *3 (2d Cir. 2015) ........................................... 4

Graham v. Connor, 490 U.S. 386 (1989) ................................................................. 31

Hartman v. Moore, 547 U.S. 250 (2006) ................................................................. 29

Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227 (S.D.N.Y. May 12, 2015) ................................................................. 13

Hollender v. Trump Village Cooperative, Inc., N.E.2d 432 (1983) ...................................... 30

Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466 (S.D.N.Y. 2010) ........................... 27

Jackson v. County of Nassau, 2009 U.S. Dist. LEXIS 11547 (E.D.N.Y. 2009) ........................ 27

**Cases**      **Pages**

Jean-Laurent v. Wilkerson, 461 F. App'x 18 (2d Cir. 2012) ........................................................ 33
Joyner-El v. Giammarella, 2010 U.S. Dist. LEXIS 40417 (S.D.N.Y. 2010) .............................. 29
Kuck v. Danaher, 600 F.3d 159 (2d Cir. 2010) ......................................................................... 15
Lennon v. Miller, 66 F.3d 416 (2d Cir. 1995) ........................................................................... 13
Lipsky v. Commonwealth United Corp., 551 F.2d 887 (2d Cir. 1976) ...................................... 34
Lopez v. City of New York, 901 F. Supp. 684 (S.D.N.Y. 1995) ................................................. 28
Lukowski v. County of Seneca, 2009 U.S. Dist. LEXIS 14282, 2009 (W.D.N.Y. 2009) ............ 36
Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990) ................................................................ 29
Marcavage v. City of New York, 689 F.3d 98 (2d Cir. 2012)............................................... passim
Mastrovincenzo v. City of New York, 435 F.3d 78 (2d Cir. 2006)............................................. 17
McCoy v. Goord, 255 F. Supp. 2d 233 (S.D.N.Y. 2003) ........................................................... 26
Mercado v. City of New York, 2011 U.S. Dist. LEXIS 140430 (S.D.N.Y. Dec. 5, 2011) .......... 35
Milanese v. Rust-Oleum Corp., 244 F.3d 104 (2d Cir. 2001) .................................................... 23
Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658 (1978) ...................... 32, 33, 34, 35
Mozzochi v. Borden, 959 F.2d 1174 (2d Cir. 1992)................................................................... 29
Murphy v. Lynn, 118 F.3d 938 (2d Cir. 1997) .......................................................................... 30
Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006)...................................................... 10, 15, 19
People v. Johnson, 22 NY3d 1162 (N.Y. 2014) ........................................................................... 9
People v. Jones, 9 NY 3d 259 (N.Y. 2007)................................................................................... 8
Pinter v. City of New York, 976 F.Supp. 2d 539 (S.D.N.Y. 2013)............................................. 28
Pluma v. City of New York, 13 CV 2017 (LAP)........................................................................... 3
Quniones v. City of New York, 2013 U.S. Dist. LEXIS 176271 (S.D.N.Y. 2013)...................... 23
Richardson v. N.Y.C. City Health & Hosps. Corp., 2009 U.S. Dist. LEXIS 25247
    (S.D.N.Y. 2009) ...................................................................................................................... 28
Rochin v. California, 342 U.S. 165 (1952) ................................................................................. 31
Salahuddin v. Cuomo, 861 F.2d 40 (2d Cir. 1988)..................................................................... 36
Santulli v. Russelo, 2013 U.S. App. LEXIS 5285 (2d Cir. 2013) .............................................. 15
Savino v. City of New York, 331 F.3d 63 (2d Cir. 2003) ............................................................ 27
Scott v. Harris, 550 U.S. 372, 380 (2007)................................................................................... 4
Sealey v. Giltner, 116 F.3d 47 (2d Cir. 1997)............................................................................ 25
Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358 (S.D.N.Y. 2009). ......................... 27
Shain v. Ellison, 273 F.3d 56 (2d Cir. 2001) ............................................................................. 30
Simms v. City of New York, 480 Fed. Appx. 627 (2d Cir. 2012)................................................ 22
Singer v. Fulton County Sheriff, 63 F.3d 110 (2nd Cir. 1995)................................................... 29
Spears v. City of New York, 2012 U.S. Dist. LEXIS 145517 (E.D.N.Y. Oct. 9, 2012) ............. 34
Stephenson v. Doe, 332 F.3d 68 (2d Cir. 2003) ......................................................................... 13
United States v. Nelson, 500 Fed. Appx. 90, (2d Cir. 2012) ........................................................ 9
Villa v. City of New York, 2013 U.S. Dist. LEXIS 49830, at *20 (S.D.N.Y. 2013) .................. 13
Walker v. City of New York, 2014 U.S. Dist. LEXIS 42272 (S.D.N.Y. 2014) .......................... 33
Weather v. City of Mt. Vernon, 474 Fed. Appx. 821 (2d Cir. 2012) ......................................... 12
Wiles v. City of New York, et al., 13 CV 2898 (VSB) ................................................................. 3
Williams v. Smith, 781 F.2d 319 (2d Cir. 1986) ........................................................................ 25
Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128(PKC), 2011 U.S. Dist. LEXIS 78641,
    2011 WL 2946369 (S.D.N.Y. July 20, 2011) ...................................................................... 13

**Cases**                                                                                           **Pages**

<u>Wright v. Smith</u>, 21 F.3d 496 (2d Cir. 1994).......................................................... 25, 26
<u>Wynder v. McMahon</u>, 360 F.3d 73 (2d Cir. 2004) ........................................... 36

## STATUTES

**NY PL §120.15**............................................................................................... 6, 24
Former New York Penal Law § 722 ............................................................... 8
**NY PL**  § 240.20............................................................................................. 8
**NY PL**  § 240.20(1) ........................................................................................ 6
**NY PL § 195.05**.......................................................................................... 11, 24
NY PL § 240.20 ......................................................................... 7, 8, 11, 24
NY PL § 240.26 ................................................................................................ 7

## OTHER AUTHORITIES

NYC Charter §435 ..................................................................... 17, 18, 19

## RULES

Fed. R. Civ. P. 4 ............................................................................................. 35
Fed. R. Civ. P. 11 ............................................................................................. 3
Fed. R. Civ. P. 12(b)(6)................................................................................... 1
Fed. R. Civ. P. 12(f) ................................................................................... 2, 36
Fed. R. Civ. P. 56 ............................................................................................. 1

## PRELIMINARY STATEMENT

Defendants City of New York, Michael Zielinski, Steven Anger, Anthony Ciaramitaro, Elisa Cokkinos, Daniel Albano, and William Cooke by their attorney Zachary Carter, Corporation Counsel of the City of New York, hereby submit this Reply Memorandum in support of their converted motion to dismiss and in opposition to plaintiff's motion to amend.

In response to defendants' motion for dismissal under Fed. R. Civ. P. 12(b)(6), and defendants' proposal that the Court convert the motion if necessary to consider video evidence, plaintiff reached out to counsel and proposed that the motion be converted to a motion for summary judgment under Fed. R. Civ. P. 56. Plaintiff now opposes dismissal only of his claims for False Arrest, Excessive Force, First Amendment Retaliation and for municipal liability, but simultaneously seeks leave to bring a Second Amended Complaint. As set forth and demonstrated by the evidence, plaintiff's claims for false arrest fails as pled and under the facts of this case. Plaintiff's claim for Excessive Force fails as any force used was reasonable and plaintiff cites to no physical injuries. Plaintiff's First Amendment retaliation claim fails as probable cause existed for his arrest and he cannot show that his arrest was motivated by any protected First Amendment conduct. Finally, plaintiff's Municipal Liability theory fails as he suffered no constitutional violation, has failed to plausibly set forth any theory of municipal liability, and cannot show that any illegal municipal policy was the driving force behind any of the constitutional violations he alleges.

Furthermore, plaintiff's request to amend his Complaint should be denied as futile, particularly in light of his abandoning the bulk of his claims in the face of the converted 12(b) motion, and his inability to maintain the claims he opposed judgment on. Additionally, plaintiff failed to set forth any personal involvement of the bulk of defendants in even his proposed Amended Complaint. Finally, plaintiff's municipal liability theory fails as the

proposed amendment primarily included a range of pleadings that are largely inappropriate under Fed. R. Civ. P. 12(f), and still fails to set forth or support any plausible theory of municipal liability.

### PLAINTIFF CANNOT SHOW, AND HAS NOT PLED, ANY CONSTITUTIONAL VIOLATION IN THIS ACTION

In opposition to defendant's motion plaintiff sets forth an affidavit asserting that on November 5, 2011 he set out with the apparent goal of climbing the Courthouse steps at 60 Centre Street, which he deemed specific and important to the message of the marchers that day. Plaintiff's Memorandum of Law, Docket [69], p. 1, hereinafter "Plaintiff's MOL". Plaintiff goes on to complain about officer testimony in other cases, unrelated to this action or this defendant, Plaintiff's MOL p. 3, and to then propose that the police department should have staffed it with two supervisors of his choosing. Plaintiff's MOL pp. 3-4. Subsequently he goes on to complain about what he perceives as an inadequate understanding of the Constitution by a non-party police officer, Inspector Winski.[1] There is no indication that Officer Winski had any interaction with Plaintiff on November 5, 2011, or that he was even present. Additionally, in the July 28, 2015 letter, docket entry [73], Plaintiff abandoned his claims related to his only other arrest referenced in this lawsuit, and provided no indication of an interaction with Inspector Winski on that or any other day.

Plaintiff then attempts to argue that defendants have not appeared for any parties other than the City of New York, Lieutenant Zielinski, Chief Anger, Officer Ciaramitaro, and Inspector Cokkinos, and therefore do not seek relief any remaining parties. Plaintiff's MOL p. 5.

---

[1] Defendants note that the bizarre and irrelevant inclusion of any pleadings or argument related to Inspector Winski is unfortunately subject to a less benign interpretation than mistake or poor drafting. Counsel for plaintiff has ongoing actions against Inspector Winski in, inter alia, 12 CV 3389 (NRB) and 14 CV 7744 (VSB). Like their attempts to use unresolved lawsuits to bolster an implausible municipal liability theory, this attempt to raise accusations against the Inspector in an irrelevant lawsuit seeks to gain some tactical advantage in another action. As set forth below, all pleadings related to Inspector Winski should be struck pursuant to Fed. R. Civ. P. 12(f).

As plaintiff's counsel tried the same shell game before this Court in the case of <u>Wiles v. City of New York, et al.</u>, 13 CV 2898 (VSB), docket [149], May 15, 2015, this should come as little surprise at the attempt to skirt a ruling on the substance of this action.  Defendants note that plaintiff's addition of fourteen defendants in the First Amended Complaint, on the date the statute of limitations ran, when the vast majority of those individuals were not working or even present, represents a Fed. R. Civ. P. 11 violation.  Unfortunately, this improper tactic of random over suing is something that plaintiff's counsel has engaged in before.[2]  Defendants resolved some of plaintiff's deficiencies without Court intervention by sending a Rule 11 letter threatening motion practice and sanctions.  Plaintiff stipulated to removing some defendants as a result, but declined with respect to any higher-ranking defendants.

Regardless, plaintiff's argument is meritless.  One defendant, Lieutenant Cooke, was not served until after this motion had been filed, Docket [58].  Defendants now submit this reply and opposition on his behalf.  Another defendant, Lieutenant Albano, was already represented when plaintiff framed this argument.  Defendants previously filed their 56.1 statement on his behalf, Docket [61].  Inspector Tloczkowski, though substituted as a defendant by stipulation, Docket [50], has not been served.  Plaintiff cannot now hide from judgment on his demonstrably meritless claims by pointing out that when he improperly added fourteen people to this action and served them after this motion was filed, it slowed and muddied the representation process.

---

[2] While several actions could illustrate this point, the most vivid example is in <u>Pluma v. City of New York</u>, 13 CV 2017 (LAP) where plaintiff's counsel recently named 20 defendants in his Second Amended Complaint, but as the statute of limitations approached he filed two separate actions in both State and Federal Court.  The federal action, 14 Civ. 9969 (LTS), inexplicably named 47 individual defendants and 50 John Does.  Plaintiff's state action, 162488-2014, named 92 individuals.

The evidence in this case provides a clear perspective on precise conduct that led to plaintiff's lawful arrest. Plaintiff sets forth various cases that purport to require resolution of any disputed material facts in his favor, however, viewing facts in the light most favorable to the non-moving party is prescribed to material facts that are in genuine dispute. A non-determinative issue of fact will not defeat a motion, and neither will reliance on demonstrably false assertions by the non-moving party. "At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a genuine dispute as to those facts… When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." Scott v. Harris, 550 U.S. 372, 380 (2007)(relying upon video to resolve a claimed issue of fact). Situations where plaintiff's factual positions are blatantly contradicted by the record includes where conduct has been recorded. Faruki v. City of New York, 2012 U.S. Dist. LEXIS 47310 (S.D.N.Y. Mar. 30, 2012) ("Furthermore, the store owners can be heard on the audio tape of the third 911 call asking Plaintiff to leave the store… Plaintiff's claim that the owners never asked her to leave the store is contradicted by the incontrovertible record[.]") aff'd, 517 Fed. Appx. 1, 2 (2d Cir. 2013); see also Marcavage v. City of New York, 689 F.3d 98, 110 (2d Cir. 2012) (disregarding plaintiffs stated version of events with respect to warnings at a demonstration where it was contradicted by an audio recording); Garcia v. Doe, 2014 U.S. App. LEXIS 24772, *3 (2d Cir. 2015) ("we take as true the facts set forth in the complaint, [] to the extent they are not contradicted by the video evidence.")

Here the indisputable record is clear. Plaintiff and hundreds of others took up the entire sidewalk in front of 60 Centre. They were ordered to disperse for many minutes, and over

that time, numerous individuals took the opportunity to cross to Foley Square and continue their activity. Plaintiff; however, refused to comply and instead approached Lieutenant Zielinski, who was one of several officers trying to ensure their orders to disperse were clear and that people had a chance to move on rather than be arrested. Screaming "Treason!!" in Lieutenant Zielinski's face numerous times, plaintiff was personally asked to back up at least twice. He declined, and ultimately when the Lieutenant turned his back, plaintiff charged him, startling the Lieutenant and causing him to whip around.

Probable cause existed for a number of offenses and plaintiff has failed to rebut the law or evidence against him in light of the incontrovertible evidence. With respect to his charge for disorderly conduct, subsection (1) plaintiff does not even oppose defendants' motion. Similarly, plaintiff has failed to oppose defendants' motion with respect to his excessive force claim for tight handcuffing. Instead he opposes based only on a new theory set forth in neither his Amended Complaint or Proposed Amended Complaint, that taking him to the ground to be handcuffed was excessive. Probable cause and qualified immunity similarly render his First Amendment claims invalid, and his municipal liability theory fails as he suffered no constitutional violation, can identify no training deficiency, and cannot show that such a deficiency caused his arrest regardless.

## PROBABLE CAUSE EXISTED FOR PLAINTIFF'S ARREST, AND THE DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff presents some general law regarding probable cause, but ultimately attempts to skirt the issue by presenting an improper standard, requiring a "clear and present danger" or "breach of the peace." This is nothing more than an attempt to rebut the fact that

plaintiff was breaking the law, deliberately harassing Lieutenant Zielinski -despite personal orders to get back- and properly subject to arrest on a range of charges.

### A. Probable Cause Existed to Arrest Plaintiff for Menacing (§120.15) and Plaintiff Does Not Oppose Defendants Motion For Dismissal Under NY PL § 240.20(1)

Plaintiff argues that he could not properly be arrested for menacing under NY PL § 120.15. For this proposition he relies exclusively on one case which stresses that the menace must be physical and cannot be only words.

But plaintiff was aggressive and confrontational with Lieutenant Zielinski, something that no amount of consideration on the meaning of the word "lunge" can get around. Regardless of what verb the court adopts to describe plaintiff's conduct what is clear is that Lieutenant Zielinski was issuing orders to the crowd to disperse. Plaintiff, evidently upset about these orders, approached him holding papers, in his hand, up to the Lieutenant's face while screaming at him. It is undisputed that the Lieutenant issued an order with his bullhorn and attention squarely aimed at plaintiff stating "Move back. Move back sir. Move back. Move back." 56.1 ¶ 73. Plaintiff attempts to contest that the order was issued to him, but the video makes clear that the Lieutenant was reacting to plaintiff getting too close and screaming at him. Decl. Ex C 08:06-08:09. That order was the second time the Lieutenant had to personally order plaintiff to get back. Decl. Ex C 08:03-08:05. Plaintiff continuously disregarded these orders, as well as the general orders Lieutenant Zielinski had issued over minutes prior.

Plaintiff cannot deny in light of the video, that he swiftly approached the Lieutenant as he turned his back to him. With his hands low, plaintiff approached Lieutenant Zielinski near his right hip, where he carried his firearm that day, causing the Lieutenant to quickly turn around. 56.1 ¶¶ 81. Plaintiff continued to shout in the Lieutenant's face, having

just closely approached when his attention was turned, in contravention of multiple personal orders to get back, and general orders to disperse. 56.1 ¶ 83; Decl. Ex. D 14:45-14:50. Plaintiff's actions speak for themselves and are plainly confrontational, aggressive, and in direct contravention of lawful orders by the police.

Plaintiff tries to obscure his physical interactions with Lieutenant Zielinski that preceded his arrest to argue against probable cause, but Plaintiff ran up to the Lieutenant and closely approached him several times, loudly yelling in his face as he did so, and holding paperwork in a fist by the Lieutenant's head. Plaintiff elides over the fact that he was personally ordered to move back on two separate occasions as captured on video. Rather than comply with those proper and sensible orders, plaintiff chose to wait until the Lieutenant turned his back and closely approach him where he carried his firearm. As Plaintiff spends much of his brief discussing his time as a marine, surely he should know better than to move aggressively towards someone, disregard their requests to get back from their personal space and then wait to approach their firearm from behind. Even if these actions did not rise to the level of menacing, at the very least they rise to the level of harassment under NY PL § 240.26 for plaintiff's continued following of the Lieutenant after orders to get back and close, if not direct, physical contact requiring those orders. Additionally, plaintiff does not oppose, and cannot contest that his actions created probable cause for his arrest under NY PL § 240.20(1) for engaging in tumultuous and threatening behavior at a minimum.

Plaintiff's attempt to make this charge inapplicable by pretending he was only attempting to speak to the Lieutenant does not survive in light of the video. His claim that the Lieutenant may not have been sufficiently in fear is both irrelevant to this set of facts, and undermined by the fact that the Lieutenant had to stop issuing orders to the crowd twice to

personally instruct the plaintiff to get back.  Coupled with the quick reaction of the Lieutenant as plaintiff approached him the Lieutenant's concerns for his own safety based on plaintiff's approach from behind are apparent.  Regardless, to a reasonable officer seeing the same interaction it would reasonably appear that plaintiff had given the Lieutenant cause to be concerned for his own security by aggressively screaming and close personal interaction, before quickly approaching him, and probable cause exists.  To the extent it did not, the officer would still be entitled to qualified immunity, particularly as plaintiff's only case post-dates this arrest, and reasonable officers could at least differ on the question of probable cause for menacing, harassment, and disorderly conduct, subsection 1.

### B.  Probable Cause Existed to Arrest Plaintiff Under NY PL § 240.20(5) And (6)

Before substantively looking at the two disorderly conduct sections, plaintiff proposes a new mens rea requirement gleaned from the statute that preceeded NY PL § 240.20, Penal Law § 722.  That statute provides the quote that plaintiff relies upon from People v. Jones, 9 NY 3d 259, 263 (N.Y. 2007).  There the Court of Appeals, in footnote 2, underscored only that plaintiff's purported requirement of "intent to provoke a breach of the peace, or [intentional conduct] whereby a breach of the peace may be occasioned" comes from law that is no longer on the books.

As it relates to NY PL § 240.20(6), plaintiff argues that two cases show that the orders issued are improper and defendants have insufficiently relied upon 'district or county' cases for the legal standard.  Defendants will set forth the applicable law here, as plaintiff attempts to argue against them by referencing a case that does not deal with NY PL § 240.20(6), and another from 1932.  "Under this statute a person is guilty of committing disorderly conduct if he refuses to obey an officer's order to move, unless the order was purely arbitrary and not

-8-

calculated in any way to promote the public order." <u>Crenshaw v. City of Mount Vernon</u>, 372 F. App'x. 202, 206 (2d Cir. 2010) (summary order); <u>See</u> <u>United States v. Nelson</u>, 500 Fed. Appx. 90, 93 (2d Cir. 2012). These Second Circuit decisions provide clear guidance that, also neatly bookends the state of the law as it existed on November 5, 2011. Plaintiff's reliance on a handful of state cases that predate these decisions are immaterial. The only case plaintiff relies upon that post dates this case is <u>People v. Johnson</u>, 22 NY3d 1162 (N.Y. 2014). There, the court found that a group of four, where only one is creating a partial obstruction of a doorway, are not committing any crime where there is no evidence that anyone was obstructed. Even if the Court set aside the applicable case law when the officers in this action were forced to act, <u>Johnson</u> does not apply to the situation here. As defendants have testified and the videos make clear, the sidewalk was completely obstructed by well over 100 protestors. 56.1 ¶¶ 13-34, 42. The legitimate governmental interest, and statutory duty, sanctioned and required the police to regulate traffic at that demonstration. Additionally, legitimate safety concerns regarding more than the complete obstruction of the sidewalk separately justified the orders to disperse, including because of heightened risks from protestors taking the steps. 56.1 ¶¶ 17-19, 22-23, 27-29; Pl. Decl. Ex. N pp. 224:1-225:23. Plaintiff's attempt to rely upon an outdated statute and inapposite cases underscore the only conclusion, and highlight the Second Circuit standard with respect to these orders to disperse. Officers were reasonable in ordering protestors to disperse from 60 Centre street, entitled to rely upon their supervisors requesting they be read, and plaintiff, and other protestors, were subject to arrest for willfully defying them. Additionally, the officer making the arrest is also entitled to rely upon his supervisors issuing those orders as they would reasonably appear lawful as legitimate safety concerns, and the complete obstruction of the sidewalk, present two significant governmental interests.

Alternatively, the individual defendants are entitled to qualified immunity as any law that would render those orders improper was not sufficiently defined, and reasonable officers could differ regarding the propriety of the charge for refusal to obey the order to disperse.

Plaintiff was also subject to arrest under subsection five for obstructing pedestrian or vehicular traffic. As noted above plaintiff has misconstrued the law in an attempt to frame a new standard, inapplicable to the facts here. Relying upon Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006), plaintiff argues that more than mere inconvenience must be established. However, the Court in Papineau was considering the momentary presence of unidentified protestors on an interstate handing out leaflets before returning to private land. Here, hundreds of protestors completely blocked a sidewalk, deliberately sat down in groups compounding the problem, and aggressively rallied against police lines to try and get to a location that presented additional safety and security concerns. Most importantly, this was not momentary before returning to private property as in Papinaeu, but continued for a significant amount of time, with building frustration and defiance of lawful orders, and continued disregard for any members of the public.

Plaintiff points out that defendant's 56.1 statement presents limited facts with respect to identified indivduals attempting to get by. However, that is because the hundreds of protestors were too thick a crowd, and took up too much of the sidewalk to show many approaching individuals in the various videos available. What is clear from review of the video and attention to the surrounding sidewalks is that, as in much of Manhattan on a sunny weekend afternoon, numerous members of the public were present and unable to pass at that location. Compounding plaintiff's problem in defeating probable cause, even if the video did show lower Manhattan as the wasteland he describes, the statute makes plain that recklessly creating a risk of

public inconvenience suffices for the statute, and he does not contest that he was part of a group completely blocking the sidewalk.

## C. PROBABLE CAUSE EXISTED TO ARREST PLAINTIFF UNDER NY PL § 195.05

Plaintiff briefly opposes defendants argument for probable cause for Obstruction of Governmental Administration arguing that no action the police took that day was authorized, and therefore no claim under NY PL § 195.05 can provide probable cause. Specifically, plaintiff addresses the orders to disperse, considered above as part of NY PL § 240.20(6). As discussed above, those orders were lawful under the applicable legal standard. However, even if they were not, officers would at least be entitled to qualified immunity in the belief that they were lawful. Accordingly, the act of enforcing the law based on those orders must similarly be covered by qualified immunity even if probable cause is lacking.

## PLAINTIFF FAILS TO ADEQUATELY SET FORTH, AND CANNOT SHOW, ANY EXCESSIVE FORCE CAUSE OF ACTION, AND DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff's claim for excessive force is unsupported by the record and insufficiently pled regardless. Plaintiff sets forth a half a page in opposition relying on only one case. There, the court performing an analysis of a jury award finding excessive force where no arrest was made. Plaintiff then sets forth new facts that he now claims rise to the level of excessive force, which are omitted from any excessive force claim in his complaint.

Here, officers were properly placing plaintiff under arrest after he disregarded scores of orders to disperse, personal orders to back up from an officer, and approached him from behind screaming throughout, with his hands at waist level near the hip where the Lieutenant keeps his gun. Officers were entitled to place plaintiff in custody, or at least entitled

to qualified immunity in placing him in custody. That alone sets apart the lone case plaintiff relies on. Weather v. City of Mt. Vernon, 474 Fed. Appx. 821 (2d Cir. 2012). Compounding that difference is the fact that plaintiff was not only disregarding police orders, he was acting at least confrontationally, if not aggressively, by screaming in the Lieutenants face from a close distance and charging him from behind. The only logical conclusion, and certainly the reasonable one, is that plaintiff may have been a potential threat while he angrily screamed and lunged towards officers once they looked away. Decl. Ex. C 08:02-08:15; Ex D 14:30-14:50. Additionally, once officers attempted to place him in custody, he did not freely surrender his hands and turn around. In fact he did not even stop screaming at the officers, shouting "treason" an additional ten or more times, Decl. Ex. D 14:49-15:00, and physically resisting by freeing at least his right arm and reaching for Lieutenant Zielinski after officers took him by the arm and the shoulder, Decl. Ex. D 14:51-14:55.

Plaintiff could have been arrested for a range of offenses ranging from, *inter alia*, misdemeanors for his threatening behavior and obstructing the police in their duties, to violations for fighting, tumultuous conduct, ignoring lawful orders and blocking the sidewalk. His conduct was at a minimum aggressive and confrontational towards the police, and when he was placed in custody he fought to free his arms and continued yelling at the police as he had before his arrest. Nonetheless, he presented only a claim for excessive force based on tight handcuffing in either his Amended Complaint, or proposed Amended Complaint. Apparently he now abandons that theory and relies on a new theory that he was "pulled from behind and knocked to the ground" and that "four to five police officers sat or kneeled on him while effecting his arrest." Setting aside that plaintiff has omitted this theory from all of his pleadings and only advanced it in opposition to the converted motion to dismiss, plaintiff still sets forth no claim that he was

punched or kicked, no claim of injury, and no requests for treatment. In fact the video evidence undermines even his latest theory related to force, showing that while it may have taken several officers to place plaintiff in handcuffs, none appear to be kneeling on him. Decl. Ex. C 08:29-09:01.

Plaintiffs' new theory of excessive force also fails under applicable law.

> Courts in this District have routinely dismissed excessive force claims where the plaintiff alleged that he was thrown to the ground, but did not allege any physical injuries. See, e.g.,Acosta v. City of N.Y., No. 11 Civ. 856 (KBF), 2012 U.S. Dist. LEXIS 60460, 2012 WL 1506954, at *10-11 (S.D.N.Y. Apr. 26, 2012) (dismissing an excessive force claim where the plaintiff alleged that he was punched in the chest and thrown to the ground face first, but did not allege any specific physical injury); Wims v. N.Y.C. Police Dep't, No. 10 Civ. 6128(PKC), 2011 U.S. Dist. LEXIS 78641, 2011 WL 2946369, at *5 (S.D.N.Y. July 20, 2011) (dismissing an excessive force claim where the plaintiff alleged that he was "thrown flat on his face unto the filthy ground" (alteration omitted)). Nor does Higginbotham allege the extent of the damage to his camera. In short, there is nothing in the complaint that would allow the Court to infer that the defendants' actions in grabbing his legs were objectively unreasonable or constituted more than a de minimis use of force.

Higginbotham v. City of New York, 2015 U.S. Dist. LEXIS 62227, at *14-15 (S.D.N.Y. May 12, 2015). Here the video shows the conduct that sanctioned plaintiff's arrest, his physically confrontational approach to the police, and his continued resistance. Therefore, plaintiff's excessive force claim must be dismissed both as pled, which plaintiff abandons, and as improperly set forth for the first time in his opposition to the converted motion to dismiss.

Alternatively, defendants are still entitled to qualified immunity on any claim for excessive force. The Second Circuit has held that "the qualified immunity defense is generally available against excessive force claims [where] a reasonable officer could have believed that the use of force alleged was objectively reasonable in light of the circumstances." Villa v. City of New York, 2013 U.S. Dist. LEXIS 49830, at *20 (S.D.N.Y. 2013) (citing Lennon v. Miller, 66 F.3d 416, 425 (2d Cir. 1995); see also Stephenson v. Doe, 332 F.3d 68, 77 (2d Cir. 2003)

("[E]ven officers who are found to have used excessive force may be entitled through the qualified immunity doctrine to an extra layer of protection from the sometimes hazy border between excessive and acceptable force." (internal quotation marks omitted)). A reasonable officer could believe that placing an individual in handcuffs, and placing a struggling defendant on the ground to be handcuffed during the course of an arrest is an acceptable measure of force. As described above the Courts in this district have routinely dismissed similar claims, and where reasonable judges have differed, certainly reasonable officers could as well, making them entitled to qualified immunity.

### PLAINTIFF'S FIRST AMENDMENT CLAIM FAILS AND DEFENDANTS ARE ENTITLED TO QUALIFIED IMMUNITY

Plaintiff spends eight pages arguing that his First Amendment rights were violated on November 5, 2011.  Plaintiff's MOL p. 22-29.  However, plaintiff's argument sidesteps not only the relevant law, but his own allegations as set forth in both his Amended Complaint and Proposed Amended Complaint.  Plaintiff sets forth that his First Amendment claim relates to his arrest in retaliation for shouting "TREASON" at officers, and that this shouting led to his arrest. Pl. Decl. Ex. A., Plaintiff's Proposed Amended Complaint (hereinafter "PAC"), ¶¶ 172-177. Plaintiff reiterates that his First Amendment claim is premised on the alleged retaliatory arrest and use of force.  PAC ¶¶ 178-179.  He does not make any reference to the Courthouse at 60 Centre street or any purported challenge to a time, place and manner restriction.

Despite ignoring his claims and spending the bulk of his memorandum discussing the case law around time place and manner restrictions, plaintiff has misapprehended the relevant law.  Probable cause is a complete defense to plaintiff's First Amendment claim.  "Fabrikant's claims of…unreasonable search and seizure, and First Amendment retaliation fail because defendants had probable cause…." Fabrikant v. French, 691 F.3d 193, 215-216 (2d Cir. 2012).

This is necessarily true, because engaging in protected speech while engaged in illegal conduct cannot insulate a person from the natural consequences of breaking the law. "One would not be justified in ignoring the familiar red light because this was thought to be a means of social protest." Papineau v. Parmley, 465 F.3d 46, 59 (2d Cir. 2006)(quotations omitted).

      Plaintiff is clear that he was present at the protest from the time the officers began making announcements. Plaintiff's Opposition Exhibit A, Plaintiff's Affidavit (hereinafter P. Aff.) ¶¶ 9-17. Plaintiff is also clear that he was able to circulate through the crowd and interact with a number of police officers in different locations regarding what he considered improper, and he faced no sanction for this. P. Aff ¶¶ 10-17. Plaintiff also stresses, as the video shows, that despite his confrontational and aggressive behavior, he was not placed under arrest until he approached the officer making announcements from behind while continuing to yell, against orders issued to him personally to back up, as well as numerous orders to disperse. P. Aff ¶¶ 18-19; Decl. Ex. C 08:02-08:15; Ex D 14:30-14:50.

      On the incontrovertible facts, or even the selective facts set forth in plaintiff's affidavit, his First Amendment claim fails, even if somehow probable cause were lacking and the officers were not entitled to qualified immunity. In short, plaintiff cannot establish the necessary elements of his First Amendment claim. That requires "1) he has an interest protected by the First Amendment; 2) defendants' actions were motivated or substantially caused by his exercise of that right; and 3) defendants' actions effectively chilled the exercise of his First Amendment right." Kuck v. Danaher, 600 F.3d 159, 168, (2d Cir. 2010); Santulli v. Russelo, 2013 U.S. App. LEXIS 5285, at *3-4 (2d Cir. 2013). Instead, plaintiff's sworn statement, and the video record makes clear that his arrest was not motivated by his conduct, even if it rises to the level of protected speech, and it was not motivated by his participation in a protest. Hundreds of

protestors were present and were not arrested, and plaintiff himself was able to freely deliver his message to numerous officers, including Lieutenant Zielinski. Plaintiff's arrest was motivated by his rapid approach of an officer in violation of numerous orders as soon as the officer turned his back on plaintiff, thus startling the officer enough to come to "an unexpected stop." P. Aff. ¶ 18; Decl. Ex. C 08:02-08:15; Ex D 14:30-14:55.

Alternatively, as discussed above an individual defendant who plaintiff claims was involved in his purported First Amendment violation is entitled to qualified immunity. Officers were reasonable in believing he should be subject to arrest, and that the minimal force used to place him in custody was reasonable.

As plaintiff spends the majority of his discussion of the First Amendment addressing the legal standards related to time place and manner restrictions, that deserves mention despite being absent from plaintiff's Complaint, Amended Complaint and Proposed Amended Complaint, and irrelevant to plaintiff's First Amendment claims. Time, place, and manner challenges analyze prior restraints on speech put in place by statute, administrative action, or policy. See Cox v. Louisiana, 379 U.S. 559, 568 (U.S. 1965); Marcavage v. City of New York, 689 F.3d 98, 103 (2d Cir. 2012). Here plaintiff does not set forth, and does not challenge any prior restraint but attempts to couch the decision to clear the sidewalk as a policy decision which he akin to the creation of planned demonstration areas at large events. Plaintiff's MOL p. 24. While the creation of a planned demonstration area, and the restriction of First Amendment activity nearby, may be subject to a time, place and manner restriction, this is not that case.

Plaintiff has left unspecified what specific statute or decision he purportedly challenges, and he fails to even address the numerous statutes and cases that stress both the

propriety of the police action, and their right to regulate the traffic at that location.  See NYC

Charter §435(a); Marcavage v. City of New York, 689 F.3d 98, 104 (2d Cir. 2012)

("Government certainly has a significant interest in keeping its public spaces safe and free of

congestion.") (quoting Bery v. City of New York, 97 F.3d 689, 697 (2d Cir. 1996); accord

Mastrovincenzo v. City of New York, 435 F.3d 78, 100 (2d Cir. 2006) ("[R]educing sidewalk

and street congestion in a city with eight million inhabitants[] constitutes[s] [a] significant

governmental interest[]…") (internal quotation marks omitted); see also Concerned Jewish

Youth v. McGuire, 621 F.2d 471, 478 (2d Cir. 1980) (where the Court found that the interests of

residents, visitors and workers must be balanced with that of protestors).  He also fails to

address, and cannot overcome the clear Second Circuit law that clearly renders the dispersal

orders proper given the bulk of the crowd, and the policing concerns at that location.  Crenshaw

v. City of Mount Vernon, 372 F. App'x. 202, 206 (2d Cir. 2010) (summary order) (noting that

under New York's disorderly conduct statute, an order to disperse is lawful unless the order was

purely arbitrary and not calculated in any way to promote the public order.)  Those policing

concerns are described by, inter alia, Chief Anger in his deposition where he notes the risks and

dangers of the protest proceeding onto the steps.  Plaintiff's Decl. Ex. O, Deposition of Chief

Anger (hereinafter "Anger Dep."), pp. 224:1-225:23.  Lieutenant Zielinski also described, as can

be readily seen in Defendants' Exhibit D and E, that protestors massing in front of 60 Centre

Street obstructed the sidewalk from the building to the street, and pushed against police lines.

Plaintiff's Decl. Ex. N, (hereinafter "Zielinski Dep."), pp. 79:13-80:10.  Chief Anger echoed that

at various points throughout his testimony, particularly as it related to another plaintiff arrested

for refusing to disperse.  Pl. Decl. Ex. O, Anger Dep, pp. 196:18-197:1; 205:4-205:9.  As the

orders were patently lawful, probable cause or arguable probable cause existed for platiniff's

arrest and renders the vague, unpled, and unsupported opposition by reference to a time place and manner restriction inapposite.

Regardless, any such theory must still fail on the merits. Even if plaintiff was engaged in protected speech, and conceding that the sidewalk is a traditional public forum for First Amendment purposes, plaintiff cannot argue that any restriction was anything but content neutral. "A regulation is content neutral when it is 'justified without reference to the content of the regulated speech.'" Marcavage, 689 F.3d at 104; citing City of Renton v. Playtime Theatres, Inc., 475 U.S. 41, 48 (1986). The restriction plaintiff puts at issue is apparently clearing the sidewalk. Setting aside that managing pedestrian and vehicular traffic, including at demonstrations, is a power statutorily belonging to the police department, plaintiffs own theory does not ascribe anything content related to any restriction. A general restriction on being on the sidewalk flatly has no content component and is indisputably neutral. Plaintiff highlights his lack of a theory or claim by arguing that defendants have not stated what policy was being applied to the protest, but that is clear, as stated in papers and statutorily allowed. It is *inter alia*, a policy of enforcing the law, including under NY PL 240.20(5) and (6) and the statutory duties under NYC Charter §435(a).

Plaintiff's argument further fails as there is no reference to the content of speech in any restriction plaintiff ever identifies[3], the legitimate and serious governmental interest in this case is clearly defined and significant, and any restriction served that interest and by definition allowed ample alternative expression.

As stated above, the governmental interest in regulating traffic, including at political demonstrations is significant, legitimate, and clearly set forth in both statute and case

---

[3] In fact, rather than concede that he has failed to identify any restriction, as he must to maintain this claim, plaintiff instead demurs on this point of his analysis. Plaintiff's MOL pp. 24-25.

law.  See NYC Charter §435(a); Marcavage v. City of New York, 689 F.3d 98, 104 (2d Cir. 2012).  Plaintiff attempts to argue that these governmental interests are diminished to the point of insignificance in lower Manhattan on a weekend, however, the law is clear.  Additionally, plaintiff cannot contest the significant policing concerns at that location on that day, both related to traffic and safety.  Pl. Decl. Ex. N pp. 224:1-225:23; Pl. Decl. Ex. O pp. 77:5-13; 56.1 ¶ 15; Decl. Ex. D 00:00-04:15.

Finally, plaintiff attempts to argue directly into the face of what is clearly depicted on the video evidence, and that cannot reasonably be disputed.  An ample alternative means of communication was readily available to everyone who crossed the street over the minutes while plaintiff chose to ignore the orders to disperse.  Plaintiff does not contest that across the street is sufficiently close to constitute a sufficient alternative, and could not do so on the merits.  "In this Circuit, an alternative channel is adequate and therefore ample if it is within 'close proximity' to the intended audience" Marcavage, 689 F.3d 106; citing Ward, 491 U.S. 791; United for Peace & Justice, 323 F.3d 175, 177 (2d Cir. 2003).  In United for Peace & Justice, a permit was granted for a location across a major avenue and two blocks away from the protestors desired location, the entrance to the United Nations.  United For Peace, 323 F.3d 177.  The location two blocks and across an avenue away was both close proximity and permissible under First Amendment.  United for Peace, 323 F.3d 177.  Given the readily accessible, ample alternative channel adopted by the vast majority of the protestors prior to plaintiff's arrest, plaintiff's bare argument that there was no alternative fails.  Finally, plaintiff's block quote from Papineau v. Parmley, 465 F.3d 46 (2d Cir. 2006) fails to apply in any way, as it dealt with arrests without probable cause during a protest on private property.  That is undisputedly not the case here, and certainly leads

to a different result than the "clear and present danger of riot" standard plaintiff mistakenly seeks to hold the defendants to here.

Plaintiff's First Amendment retaliation claim fails as probable cause and qualified immunity render his arrest privileged, and regardless his expression on the facts as presented by plaintiff, did not cause his arrest. Plaintiff's discussion of a time, place and manner restriction appears for the first and only time in his opposition papers. This undeveloped theory does not identify any prior restraint, or any statute or policy at all, that he purports to challenge. Regardless, this theory fails as any restriction was enforced without reference to content, and the police enforced the law properly and in light of significant and legitimate governmental interests, both as a matter of law and given the specific events that day, and protestors had ample alternative means of communication that plaintiff simply chose to ignore.

## PLAINTIFF'S MUNICIPAL LIABILITY THEORY FAILS

Plaintiff's theory of municipal liability fails at the outset as he suffered no underlying constitutional violation. City of Los Angeles v. Heller, 475 U.S. 796, 799 (1986).

He sets forth a purported theory, that the City of New York has been deliberately indifferent and failed to train officers with respect to enforcement of the disorderly conduct statute, and policing of demonstrations. He continues to opine that this is established by reference to a 15% conviction rate that is 'only' double the rate of cases where the district attorney declines to prosecute. He argues that the sort of statistical analysis he presents here is somehow relevant to his purported theory regarding inadequate training. Finally, rounding out his theory he bitterly complains that commercial interests are allowed to use public spaces, citing to *inter alia*, television shows, ice cream vendors, and film festival galas.

As it relates to plaintiff's theory of inadequate training "the simple recitation that there was a failure to train municipal employees . . . does not suffice to allege that a municipal custom or policy caused the plaintiff's injury in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). Conclusory allegations of a failure to train are insufficient and must result in plaintiff's Monell claim being dismissed.

A plaintiff must identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129 (2d Cir. 2004); quoting City of Canton v. Harris, 489 U.S. 378, 391 (1989). In other words, plaintiff has failed to demonstrate that the municipal employee's "shortcomings . . . resulted from . . . a faulty training program rather than from negligent implementation of a sound program or other, unrelated circumstances." Amnesty Am. v. Town of W. Hartford, 361 F.3d 113, 129-30 (2d Cir. 2004) (quotations omitted). Here plaintiff has only represented a vague idea that some additional training could be presented, however, none of that seems causally related to the arrest of plaintiff, who deliberately defied apparently lawful orders.

Should the Court decline to dismiss plaintiff's claim of a failure to train, supervise or discipline as conclusory, plaintiff's Monell complaint must still satisfy the plausibility standard under a "stringent standard of fault… [where a] (1) policymaker knows to a moral certainty that its employees will confront a given situation; (2) either situation presents employees with difficult choice that will be made less so by training or supervision, or there is a record of employees mishandling situation; and (3) wrong choice by employees will frequently cause deprivation of constitutional rights." Cash v. County of Erie, 654 F.3d 324, 334 (2d Cir.

N.Y. 2011) (citations omitted).  The 2nd Circuit, relying upon the Supreme Court, has discussed this requirement:

> A municipality may be held liable under § 1983 for its failure to train or adequately supervise its employees only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact. As described recently by the Supreme Court: [D]eliberate indifference is a stringent standard of fault, requiring proof that a municipal actor disregarded a known or obvious consequence of his action. Thus, when city policymakers are on actual or   constructive notice that a particular omission in their training program causes city employees to violate citizens' constitutional rights, the city may be deemed deliberately indifferent if the policymakers choose to retain that program. . . .   A pattern of similar constitutional violations by untrained employees is ordinarily necessary to demonstrate deliberate indifference for purposes of failure to train. . . . Without notice that a course of training is deficient in a particular respect, decision makers can hardly be said to have deliberately chosen a training program that will cause violations of constitutional rights. Simms v. City of New York, 480 Fed. Appx. 627, 629-630 (2d Cir. 2012); quoting City of Canton v. Harris, 489 U.S. 378, 388 (1989); Connick v. Thompson, 563 U.S. 51 (2011);

The Second Circuit in Simms subsequently dismissed the failure to train claim despite plaintiff's citation to other lawsuits, alleged policies, and other alleged constitutional violations.  Plaintiffs only attempt to show notice of a deficiency in training is a conviction rate of approximately 15%, however, there is no indication of why cases were dismissed, and the more plausible explanation is that the district attorney did not aggressively seek to penalize protestors without criminal records arrested for violations.  Regardless, that does not implicate the police department, does not indicate any failure to train, and those statistics would not have been available until the prosecution of individuals arrested was complete, something that undoubtedly could not be analyzed when the Occupy Wall Street protests were only six weeks old on November 5, 2011.

The police department does train on the penal law, demonstrations, and the First Amendment.  Neither in his Amended Complaint or his opposition can plaintiff point to any specific deficiency, and his reference to various officers from unrelated cases does not establish any failure to train, and certainly not one linked to his arrest.  What is made clear by review of

Pl. Decl. Ex. N and O, is that the officers who were actually present when plaintiff was arrested understood the penal law, and understood that probable cause to arrest, be it for tumultuous and threatening conduct, menacing and harassing Lieutenant Zielinski, blocking pedestrian traffic or refusing lawful orders, did not dissipate because plaintiff believed he was engaged in protest.

The sweeping breadth of plaintiff's claim underscores the implausibility of his theory. Garcia v. Bloomberg, 865 F. Supp. 2d 478, 492 (S.D.N.Y. 2012). The Court in Garcia went on to discuss the specific examples of the policy offered as insufficient, and that failure as fatal to the claim. In this case plaintiff fails to plead, or specifically identify any training deficiencies, and cannot push across the threshold of plausibility, the claim of inadequate training, supervision or discipline.

### PLAINTIFF'S PROPOSED AMENDED COMPLAINT FAILS AS FUTILE AND UNTIMELY, AND LEAVE TO AMEND SHOULD BE DENIED

Although rule 15(a)(2) of the Federal Rules of Civil Procedure provides that "the court should freely give leave to amend when justice so requires". It is also "well established that leave to amend a complaint need not be granted when [an] amendment would be futile." Ellis v. Chao, 336 F.3d 114, 127 (2d Cir. 2003). See also, Quniones v. City of New York, 2013 U.S. Dist. LEXIS 176271, at *7-8 (S.D.N.Y. 2013) (quoting Ellis, 336 F.3d at 127)). "Leave to amend will be denied as futile [] if the proposed [amendment] cannot withstand a motion to dismiss"); Baltazar v. Petland Discounts, Inc., 2014 U.S. Dist. LEXIS 94695 (E.D.N.Y. May 22, 2014) (holding that plaintiff's proposed claim would not survive a motion to dismiss and the proposed amendment would therefore be futile); Milanese v. Rust-Oleum Corp., 244 F.3d 104, 110 (2d Cir. 2001) (citation omitted)). As outlined above and in defendants' converted motion to dismiss, plaintiff's claims fail as a matter of law. Therefore, any proposed amendment would be futile.

In ¶¶ 49-51 of plaintiff's proposed Second Amended Compliant (Pl, Dec, Exhibit A "PAC"), plaintiff highlights that the "City of New York is unaware as to who made the decision to either "close the stairs at 60 Centre Street" or prevent protestors from ascending the steps at 60 Centre Street.  Yet this addition to the proposed complaint is essentially nothing more than a "red herring" that does nothing to negate probable cause. The evidence shows that plaintiff was not arrested for either climbing or attempting to climb the steps of the New York State Supreme Court Building. Quite the contrary, as noted by the irrefutable video evidence and plaintiff's arrest report, plaintiff was arrested, *inter alia*, after he refused numerous lawful orders to disperse and instead charged at Lt. Zielinski.  Similarly, as noted above, plaintiff's conduct gave rise to probable cause to arrest him for an array of statutes including N.Y. Penal Law §§195.05; 240.20(1) and 120.15.

Similarly, many other aspects of plaintiff's proposed Amended Complaint contain red herrings that have no bearing on probable cause or on any of the claims plaintiff purports to assert. This is evidenced by ¶¶53-55, 65 of the proposed Amended Complaint where plaintiff asserts that the New York Supreme Court Building or its steps had been used in the past for "commercial endeavors" (i.e. VANITY FAIR) or "expressive speech activity".  To support these paltry allegations, plaintiff attaches several articles and pictures either showcasing demonstrations or seemingly sidewalks filled with people. **See Pl's Dec. Exhibits K(i)-(iii), DD(i-v,v).**  Yet, again these factual amendments are nothing more than makeweight that does nothing to bolster plaintiff's claims. Further, plaintiff's assertions in his proposed Complaint that he merely "attempted to alert" officers that their actions of preventing protestors from climbing the stairwell of the Court building and clearing the sidewalk violated the officer's oath of office and was essentially treason. See PAC ¶¶70-74, 93-94. While plaintiff may believe that his desire

to communicate his disagreement with police actions warranted him disobeying lawful orders. An objectively reasonable officer could conclude that plaintiff's repeated refusals after numerous warning were given, was a violation of 240.20(6).

## PLAINTIFF STILL FAILS TO SET FORTH PERSONAL INVOLVEMENT OF THE INDIVIDUAL DEFENDANTS_____

As defendants noted in their moving papers, plaintiff fails to allege that many of the individual defendants personally subjected or caused him to be subjected to a deprivation of his constitutional rights. See Bass v. Jackson, 790 F.2d 260, 263 (2d Cir. 1986). As this Court is well aware, "personal involvement of defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." Williams v. Smith, 781 F.2d 319, 323 (2d Cir. 1986) (quoting McKinnon v. Patterson, 568 F.2d 930, 934 (2d Cir. 1977), cert denied 434 U.S. 1087 (1978)); Sealey v. Giltner, 116 F.3d 47, 51 (2d Cir. 1997); Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994).  Absent personal involvement, no individual can be held liable for the alleged violations of plaintiff's civil rights.  Williams, 781 F.2d at 323-24.

For the first time in his opposition to defendants' converted motion to dismiss, plaintiff provided some factual allegations against some of the defendants.  For example, plaintiff alleges that Lt. Cook and Lt. Zielinski issued orders and instructions that "predicate" plaintiff's arrest. Plaintiff also alleges that both lieutenants were physically involved in his arrest along with Lt. Albano personally involved in placing plaintiff in physical custody. Yet these are not enough to plausibly find that these officers violated plaintiff's constitutional rights.

Additionally, plaintiff's allegations that Deputy Inspector Cokkinos was the supervisor of Lt. Cook and Lt. Zielinski, while Deputy Chief Anger held a title of "incident commander" and directed activities at 60 Centre Street, is also not enough to show that they were

personally involved in a deprivation of a constitutional right. A defendant in a § 1983 action may not be held liable merely because he holds a high position of authority. Wright v. Smith, 21 F.3d 496, 501 (2d Cir. 1994). Instead, "each Government official . . . is only liable for his . . . own misconduct." Ashcroft v. Iqbal, 556 U.S. 662, 677 (2009). "[W]here the complaint names a defendant in the caption but contains no allegations indicating how the defendant violated the law or injured the plaintiff, a motion to dismiss the complaint in regard to that defendant should be granted." McCoy v. Goord, 255 F. Supp. 2d 233, 258 (S.D.N.Y. 2003) (quotation marks and citations omitted).

In plaintiff's cross motion to Amend the Complaint, plaintiff asserts that the Court should grant him leave to amend his complaint for the second time because he has "dismissed numerous officers named in the Amended Complaint, and replaced one officer with Deputy Inspector Tlockowski[4]." See Plaintiff's MOL, p. 37. Plaintiff further asserts that his motion should be granted because "there were more than a dozen white shirt supervisor officers present, including Chief, Deputy Inspectors and Lieutenants, who either made the decision to close the stairwell and then the sidewalk, or failed to intervene to stop this conduct". Plaintiff's MOL, p. 37. Yet as noted above, these allegations do not show that the high ranking officials on the scene were personally involved in depriving plaintiff of his constitutional rights. This is further evidenced by plaintiff's proposed Amended Complaint where plaintiff's only allegations against Deputy Chief Anger as well as Deputy Inspectors Tlockowski and Cokkinos are that they "created the confrontation with the protestors" by closing the courthouse stairs and sidewalk. See PAC ¶¶ 83-84.

---

[4] As previously noted, the removal of these officers was not a charitable endeavor. Many of the officers named in the First Amended Complaint were either not working on the date of the incident or even present. In short, these officers were added in violation of Rule 11 of the Federal Rules of Civil Procedure. It was only after the threat of sanctions did plaintiff agree to remove them.

Allegations against high-ranking officials are routinely dismissed where a plaintiff fails to allege personal involvement on behalf of that official. Jackson v. County of Nassau, 2009 U.S. Dist. LEXIS 11547, at *7-10 (E.D.N.Y. 2009) (denying leave to amend to name Nassau County Police Commissioner as a defendant where complaint was "devoid of specific factual allegations" against him); Barrington v. Johnson, 2006 U.S. Dist. LEXIS 86354, at *5-6 (S.D.N.Y. 2006) (dismissing claims against Police Commissioner Kelly where complaint failed to allege that he was personally involved in the constitutional violation). Because plaintiff fails to provide a showing of personal involvement for many of the officers, even with his proposed Second Amended Complaint, any leave to amend should be denied and the officers should be dismissed.

### A.    ABUSE OF PROCESS:

As noted above and in defendants' moving papers, plaintiff's arrest was privileged and he fails to plead any facts in his proposed Amended Complaint to suggest that his arrest was made without probable cause. Therefore, any claim for malicious abuse of process fails. See Irish v. City of New York, 2010 U.S. Dist. LEXIS 130466, *15-16 (S.D.N.Y. 2010) (a finding of probable cause defeats a claim for malicious abuse of process) (citing Sforza v. City of New York, 2009 U.S. Dist. LEXIS 27358, at *49-50 (S.D.N.Y. 2009).

Even if this Court were to find that Plaintiff's arrest lacked probable cause, his claim for malicious abuse of process still fails as a matter of law. In order to withstand a motion for summary judgment, Plaintiff must show that Defendants "(1) employ[ed] regularly issued legal process to compel performance or forbearance of some act; (2) with intent to do harm without excuse or justification; and (3) in order to obtain a collateral objective that is outside legitimate ends of process." Savino v. City of New York, 331 F.3d 63, 76 (2d Cir. 2003) (quoting Cook v. Sheldon, 41 F.3d 80 (2d Cir. 1994)); Curiano v. Suozzi, 63 N.Y.2d 113, 116

(1984)).  As it relates to the collateral element, courts in New York have found detailed allegations such as the infliction of economic harm, extortion, blackmail and retribution as examples of objectives meeting this prong.  <u>See</u> <u>Bd. of Educ. v. Farmingdale Classroom Teachers Ass'n</u>, 38 N.Y.2d 397, 404 (1975).

Here, plaintiff's Second Amended Complaint fails to sufficiently plead that Defendants employed process in order to obtain a collateral objective. Plaintiff's proposed complaint merely alleges that officers arrested him in retaliation for yelling "treason!" after expressing his belief that the actions of the officers were unconstitutional. (<u>See</u> Ex. A, PAC, ¶¶87-95).  Yet, this alone is not a showing of a collateral objective.  As noted in <u>Pinter v. City of New York</u>, "it is not sufficient for a plaintiff to allege that the defendants were seeking to retaliate against him by pursuing his arrest and prosecution. Instead, he must claim that they aimed to achieve a collateral purpose beyond or in addition to his criminal prosecution."  <u>Pinter v. City of New York</u>, 976 F.Supp. 2d 539 (S.D.N.Y. 2013) (citations omitted).  Further, plaintiff's proposed Second Amended Complaint is devoid of any facts to suggest a collateral objective occurred after the criminal process was initiated. <u>See</u> <u>Richardson v. N.Y.C. City Health & Hosps. Corp.</u>, 2009 U.S. Dist. LEXIS 25247, at *45-47 (S.D.N.Y. 2009) (collecting cases); <u>Lopez v. City of New York</u>, 901 F. Supp. 684, 691 (S.D.N.Y. 1995) ("The pursuit of a collateral objective must occur after the process is issued; the mere act of issuing process does not give rise to a claim."). Here, Plaintiff pleads no facts regarding any Defendants' post-arraignment conduct.

Moreover, Plaintiff pleads no plausible facts to suggest he suffered actual or special damages from the alleged abuse of process. <u>See</u> <u>Bd. Of Educ. v. Farmingdale Classroom Teachers Ass'n</u>, 38 N.Y.2d 397, 405 (1975) (citing <u>Bohm v. Holzberg</u>, 365 N.Y.S.2d 262, 264

(App. Div. 1975) ("[P]laintiff's allegations contain no mention of special damage, but only of alleged compensatory and punitive damages…the law is clear that a cause of action for [abuse of process] must contain a statement of reasonably identifiable losses sustained by the plaintiff, i.e., only actual or special damages can be recovered…"). Any conclusory statements that Plaintiffs suffered "loss of freedom, loss of property, damage to property", etc (Ex. A, PAC, ¶138), without factual support are not enough to maintain this claim and must be dismissed.

### B.    RETALIATORY PROSECUTION

Similarly, any claim for retaliatory prosecution also fails (PAC, ¶134(e)) where there is probable cause or an entitlement to qualified immunity. See Singer v. Fulton County Sheriff, 63 F.3d 110, 120 (2nd Cir. 1995) (citing Mozzochi v. Borden, 959 F.2d 1174, 1179-80 (2d Cir. 1992) (probable cause) and Magnotti v. Kuntz, 918 F.2d 364, 368 (2d Cir. 1990) (qualified immunity)).

Even if probable cause or qualified immunity were not available, it is "insufficient to merely plead facts upon which an inference of retaliatory prosecution may be drawn". See Singer, at 120. Therefore in order to establish a claim for retaliatory prosecution plaintiff must show that in addition to a lack of probable cause or an entitlement of qualified immunity "(1) he has an interest protected by the First Amendment; (2) the defendants' actions were motivated or substantially caused by his exercise of that right; and (3) the defendants' actions effectively chilled the exercise of his First Amendment right. See Joyner-El v. Giammarella, 2010 U.S. Dist. LEXIS 40417, *12 (S.D.N.Y. 2010) (citing Curley v. Vill. of Suffern, 268 F.3d 65, 73 (2d Cir. 2001) (establishing first three elements); Hartman v. Moore, 547 U.S. 250 (2006) (requiring demonstration of probable cause)).

Here, plaintiff is unable to establish the second and third prongs. The irrefutable evidence shows that plaintiff's arrest was not motivated by his statements to officers but instead

after he refused numerous lawful orders to disperse and charged at Lt. Zielinski. This non-motivation is further evidenced by plaintiff's proposed Complaint and Affidavit where he notes that he engaged in expressive speech and spoke freely to numerous officers well before he was placed under arrest. <u>See</u> PAC, ¶¶88-89 and P Aff, ¶¶12-18. Plaintiff concedes he spoke to officers and even Lt. Zielinski, who merely walked away from him after he yelled "treason!" Finally, neither the proposed Complaint nor plaintiff asserts in any meaningful way that his arrest or the actions of the officers effectively chilled the exercise of his First Amendment right. The evidence actually shows the opposite of a chilling effect, as plaintiff admits to being arrested numerous times related to his OWS activities including on November 12, 2011, just seven days after his November 5, 2011 arrest. Based on the foregoing, any claim related to retaliatory prosecution fails and must be dismissed.

## C.     FALSE CRIMINAL CHARGES

Although not entirely clear, plaintiff appears to allege that officers violated his rights to be free from false criminal charges. <u>See</u> PAC, ¶134(c). To the extent plaintiff is crouching this allegation as a claim for malicious prosecution, this claim fails based on plaintiff's admission that he received an Adjournment in Contemplation of Dismissal ("ACD"). <u>See</u> PAC, ¶111. Under New York law, an ACD is not a favorable termination for purposes of a malicious prosecution claim even though it precludes further prosecution on the same criminal charges. <u>See</u> <u>Shain v. Ellison</u>, 273 F.3d 56, 68 (2d Cir. 2001) ("an adjournment in contemplation of dismissal is not considered to be a favorable termination" for malicious prosecution claims.); <u>Murphy v. Lynn</u>, 118 F.3d 938, 949 (2d Cir. 1997) (<u>citing</u> <u>Hollender v. Trump Village Cooperative, Inc.</u>, N.E.2d 432 (1983)). To the extent plaintiff's allegation of false criminal charges is based on his alleged false arrest claim, it should be dismissed a duplicative.

## D.     EQUAL PROTECTION AND DUE PROCESS

Plaintiff also appears to allege his rights were violated based on due process. <u>See</u> PAC, ¶134(a). Nonetheless, plaintiff does not provide facts that would support an independent claim under this theory. It is well noted that "[w]here a particular Amendment 'provides an explicit textual source of constitutional protection' against a particular sort of government behavior, 'that Amendment, not the more generalized notion of substantive due process, must be the guide for analyzing' such a claim." <u>Albright v. Oliver</u>, 510 U.S. 266, 273 (1994) (quoting <u>Graham v. Connor</u>, 490 U.S. 386, 395 (1989)) (internal quotation omitted); <u>see</u> <u>also</u> <u>Bell v. Lennon</u>, 971 F. Supp. 830, 833 (S.D.N.Y. 1997) ("analysis of plaintiffs' claims under the substantive due process clause would be duplicative and is therefore barred by the rule articulated in <u>Albright</u>.").  Here, plaintiff's complaint already sets out specific claims for false arrest, excessive force, First Amendment Retaliation, etc. These claims already have explicit textual sources of constitutional protection (.i.e. Fourth & First Amendments); therefore, any due process claim should be dismissed as duplicative. Even assuming, *arguendo*, that plaintiff could bring a separate claim under due process; this claim would still be subject to dismissal. A substantive due process claim is only appropriate where governmental conduct "shocks the conscience" and transgresses the "decencies of civilized conduct." <u>Rochin v. California</u>, 342 U.S. 165, 172-73 (1952). Purely negligent conduct by officials is not constitutionally recognized under a substantive due process claim. <u>See</u> <u>Daniels v. Williams</u>, 474 U.S. 327, 328 (1986). Nor is recklessness or gross negligence except in rare instances. <u>See</u> <u>County of Sacramento</u>, 523 U.S. at 849-50 (citations omitted). In the case at bar, the action of placing plaintiff under arrest after he refused numerous lawful orders to disperse and charged at Lt. Zielinski, cannot be seen as conduct that "shocks the conscience" and transgresses the "decencies of civilized conduct." Therefore any claim under due process must be dismissed.

Similarly, any conclusory allegations that officers deprived plaintiff of equal protection is also without merit. See PAC, ¶134(h). Plaintiff fails to plead any plausible facts to suggest he was deprived of equal protection under the law. As noted in Iqbal, the Court may and should disregard "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements." Ashcroft v. Iqbal, 556 U.S. 662, 663 (2009). Factual allegations contained in plaintiff's SAC does not assert enough facts "to raise a right to relief above the speculative level" as it relates to an equal protection claim. See Bell Atlantic v. Twombly, 127 S. Ct. 1955, 1965 (2007). Therefore, any claim predicated on equal protection under the 14th Amendment must be dismissed.

**EVEN AS AMENDED PLAINTIFF FAILS TO PLEAD A CLAIM FOR MUNICIPAL LIABILITY**

Plaintiff's PAC appears to allege a municipal liability theory that the City of New York fails to "train, supervise, and discipline" officers as it relates to First Amendment expressive activity. See PAC, ¶¶ 196, 233. To bolster this argument, plaintiff cites to the deposition of officers from other lawsuits, a report generated by a few law clinics, and a handful of OWS lawsuits. See PAC, ¶¶ Yet these citations, even as "proposed", fails to allege a harm suffered as a result of an identified municipal "policy", "custom", or "practice". Monell v. New York City Dep't of Soc. Servs., 436 U.S. 658, 691 (1978).

As this Court is well aware, "[t]he simple recitation that there was a failure to train municipal employees . . . does not suffice to allege that a municipal custom or policy caused the plaintiff's injury in the absence of allegations of fact tending to support, at least circumstantially, such an inference." Dwares v. City of New York, 985 F.2d 94, 100 (2d Cir. 1993). Here, plaintiff ironically provides allegations in the PAC that question his own theory as

it relates to First Amendment training. This is evidenced by his own admission that "at least two high-ranking officers within the NYPD have testified to an appropriate understanding of the interplay between First Amendment expressive speech activity and policing such individuals engaged in these activities." See PAC, ¶¶197-199. It is further evidenced by nearly all of the officers plaintiff cites whereby they acknowledge receiving some form of First Amendment training. See PAC, ¶¶219, 223, 226.

Even assuming, *arguendo*, that this training were insufficient, plaintiff's argument still fails as he can point to no specific defect as it relates to the training or that his injuries are in any way connected to this purported failure to train. Conclusory allegations of a failure to train are insufficient and must result in plaintiff's <u>Monell</u> claim being dismissed. Even plaintiff's citation to various lawsuits arising out of the Occupy Wall Street demonstrations or his reliance on a report by various law clinics is not enough to overcome this presumption. "[C]itation to various lawsuits" [or incidents] is "not probative of the existence of an underlying policy that could be relevant" <u>Jean-Laurent v. Wilkerson</u>, 461 F. App'x 18, 22-23 (2d Cir. 2012);  "The paltry number of complaints (none resulting in an adjudication of liability), spread over a period so long in a city  so large, hardly suggests the frequency or pervasiveness of the purported custom that is required to state a <u>Monell</u> claim." <u>Walker v. City of New York</u>, 2014 U.S. Dist. LEXIS 42272, 6-7 (S.D.N.Y. 2014).

As noted above, plaintiff must identify "a specific deficiency in the city's training program and establish that that deficiency is 'closely related to the ultimate injury,' such that it 'actually caused' the constitutional deprivation."  <u>Amnesty Am. v. Town of W. Hartford</u>, 361 F.3d 113, 129 (2d Cir. 2004; <u>quoting</u> <u>City of Canton v. Harris</u>, 489 U.S. 378, 391 (1989). In other words, plaintiff has failed to demonstrate that the municipal employee's "'shortcomings . . .

resulted from . . . a faulty training program' rather than from negligent implementation of a sound program or other, unrelated circumstances." Amnesty Am. v. Town of W. Hartford, 361 F.3d 129-30 (2d Cir. 2004).

Here plaintiff' proposed Complaint fails to sufficiently plead a specific failure to train, screen, supervise or discipline and instead merely states in conclusory terms that the City of New York "did not conduct any specific lessons or training via disorder control…" concerning First Amendment activities. This is insufficient as a matter of law. Lipsky v. Commonwealth United Corp., 551 F.2d 887, 892-94 (2d Cir. 1976); Spears v. City of New York, 2012 U.S. Dist. LEXIS 145517, at *36-41 (E.D.N.Y. Oct. 9, 2012). Plaintiff has not shown why First Amendment training by the NYPDs disorder control unit would be different or otherwise more effective than the First amendment training officers receive from the police academy. Likewise, plaintiff has failed to show a causal connection between his alleged constitutional injuries and his misguided allegations against Inspector Edward Winski. See PAC, ¶¶201-208, 213, 230-232. There is no evidence to suggest that Inspector Winski was involved, either directly or indirectly, with plaintiff's arrest November 5, 2011. Therefore, as noted *infra*, all sections related to Inspector Winski should be stricken from plaintiff's pleading.

Plaintiff also appears to allege other poorly plead policies of "failing upwards", not speaking to OWS protesters or "ignor[ing] NYPD Legal Bureau Bulletins". See PAC, ¶¶230-232. These remaining claims fail as a matter of law. As noted previously, there is no connection between the Monell claims alleged, and plaintiff's alleged injury as required by Monell. Monell, 436 U.S. 658, 691-694; Bosone v. Cnty. of Suffolk, 274 A.D.2d 532, 534 (2d Dep't 2000). "To establish Monell liability, the causal link must be strong; that is, the policy must be the 'moving force' behind a constitutional violation." Mercado v. City of New York, 2011 U.S. Dist. LEXIS

140430, at *23 (S.D.N.Y. Dec. 5, 2011); quoting Monell, 436 U.S. at 691, 694.  As discussed in Garcia v. Bloomberg, 865 F. Supp. 2d 478 (S.D.N.Y. 2012) the overbreadth of plaintiff's alleged conspiracy regarding de facto policies, demonstrates its implausibility.  Regardless, there is no bridge between the alleged policies and plaintiff's claimed injuries. Further any conclusory statements related to a purported deliberate indifference is without merit and should be disregarded.

As Plaintiff's proposed complaint fails to sufficiently plead any claim under Monell, any proposed amendments would be futile.

### PLAINTIFF'S ACTION AGAINST NUMEROUS INDIVIDUAL DEFENDANTS ARE TIME BARRED AND THE PARTIES ARE NOT SUBJECT TO PERSONAL JURISDICTION

Plaintiff's request for leave to Extend the time for service for the First Amended Complaint should be denied as his failure to serve prospective defendants within the statutory time period. Fed. R. Civ. P. 4(m) "governs both (1) the dismissal of actions for untimely service of process and (2) extensions of the time in which service may be effected." Zapata v. City of New York, 502 F.3d 192, 195 (2d Cir. 2007). Rule 4(m) notes that an extension is warranted upon a showing of good cause; and while courts have found that extensions may be granted in situations absent a showing of good cause, courts should deny extensions where defendants would be prejudiced by the granting of plaintiff request for relief from the provision. See Zapata, 502 F.3d at 195 (citing prejudice on defendants as a factor to consider when deciding to extend the time of service). Contrary to plaintiff's assertions in his motion for leave to extend the time of service, the unserved defendants would be prejudiced as because the claims at issue are otherwise time barred. As noted in Zapata, "[p]rejudice is assumed in the case of individuals sued after the Statute of Limitations has run." Zapata, 502 F.3d at 195. Finally, as noted above,

because there was probable cause for plaintiff's arrest or in the very least the individual officers are entitled to qualified immunity, any extension of time to serve additional officers would be futile.

### PLAINTIFF'S IMMATERIAL AND SCANDALOUS PLEADINGS SHOULD BE STRICKEN PURSUANT TO RULE 12(F)

Fed. R. Civ. P. 12(f) provides that "[t]he court may strike from a pleading . . . any redundant, immaterial, impertinent, or scandalous matter." Rule 12(f). See also Wynder v. McMahon, 360 F.3d 73, 81 (2d Cir. 2004) (where the Second Circuit relied on Salahuddin v. Cuomo for the proposition that the Court may strike redundant or immaterial matter. Salahuddin v. Cuomo, 861 F.2d 40, 43 (2d Cir. 1988)). Here, the court should strike ¶¶201-208, 231-232 and any other section of plaintiff's proposed Amended Complaint which references Inspector Edward Winski. The inclusion of Inspector Winski is immaterial to this action before the court. Further, plaintiff cannot show, and in actuality pleads no facts to suggest, that Inspector Winski was personally involved in depriving him of his constitutional rights on November 5, 2011.  The inclusion of Inspector Winski supplies no background, historical material or other matter of an evidentiary nature and serves no other purpose but to unduly prejudice the defendants. See Lukowski v. County of Seneca, 2009 U.S. Dist. LEXIS 14282, *46, 2009 (W.D.N.Y. 2009) (citations omitted). Base on the foregoing, all references to the Inspector should be stricken.

### CONCLUSION

For the foregoing reasons, defendants, respectfully request that the Court dismiss plaintiff's complaint with prejudice, and grant such other and further relief as the Court deems just and proper.

Dated:  New York, New York
     August 28, 2015

         ZACHARY CARTER
         Corporation Counsel of the City of New York
         *Attorney for Defendants*
         100 Church Street
         New York, New York 10007
         (212) 356-2323

         By: _____/s/_____
           Joy T. Anakhu
           Andrew J. Lucas
           Assistant Corporation Counsel
           Special Federal Litigation Division