UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

JOSE MEDIAVILLA
        *Plaintiff,*

v.                             Case No. 14 CV 8624 (VSB)

THE CITY OF NEW YORK, el al
        *Defendants.*

---

**PLAINTIFF'S REPLY MEMORANDUM OF LAW
IN SUPPORT OF
PLAINTIFF'S CROSS-MOTION TO AMEND THE COMPLAINT**

---

**JOSE MEDIAVILLA,**
Plaintiff

BY:    DAVID A. THOMPSON
        WYLIE M. STECKLOW
        STECKLOW & THOMPSON
        217 CENTRE STREET – 6TH FLOOR
        NEW YORK  NY   10013
        Phone:     212 566 8000
        Fax:        212 202 4952
        E-mail:     ECF@WylieLAW.com

## **TABLE OF CONTENTS**

I.     LEAVE TO AMEND IS PROPER BECAUSE QUESTIONS OF FACT

       SURROUND PROBABLE CAUSE AND QUALIFIED IMMUNITY ISSUES .................5

II.    PROBABLE CAUSE TO ARREST PLAINTIFF HERE IS NOT ESTABLISHED

       AS A MATTER OF LAW BUT IS AN ISSUE FOR A FACTFINDER AT TRIAL .........5

III.   THE PROPOSED SECOND AMENDED COMPLAINT

       ADEQUATELY STATES A CLAIM FOR MUNICIAPL LIABILITY ...............................8

IV.    DEFENDANTS ARE NOT ENTITLED

       TO QUALIFIED IMMUNITY AS A MATTER OF LAW ...................................................11

V.     LEAVE TO EXTEND THE TIME FOR SERVICE SHOULD BE GRANTED..............12

VI.    THE PROPOSED SECOND AMENDED COMPLAINT SETS FORTH THE

       PERSONAL INVOLVEMENT OF THE INDIVIDUAL DEFENDANTS .......................15

# TABLE OF AUTHORITIES

## CASES

*Ackerson v. City of White Plains*, 702 F.3d 15 (2d Cir. 2012) ........................................... 6, 12

*Ahmad v. City of New York*, 129 A.D.3d 443 (N.Y. App. Div. 1st Dep't 2015) .......................... 2

*Am. Family Mut. Ins. v. Roth*, 2007 U.S. Dist. LEXIS 60220 (N.D. Ill. Aug. 16, 2007) ............ 15

*Barboza v. D'Agata, et al.*, 13 CV 4067, Seibel D.J., Slip Op. (S.D.N.Y. September 10, 2015) .......... 11

*Broughton v. State*, 37 N.Y.2d 451 (N.Y. 1975) ........................................................... 2

*Brown v. City of New York*, 2014 U.S. Dist. LEXIS 83513 (S.D.N.Y. 2014) .............................. 4

*C.G. v. City of New York*, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. Oct. 24, 2013) ................... 4

*Cantwell v. Connecticut*, 310 U.S. 296 (1940) ....................................................... 7, 11

*Castro v. City of New York*, 2007 U.S. Dist. Lexis 77878 (S.D.N.Y. 2007) .......................... 13, 14

*Concerned Jewish Youth v. McGuire*, 621 F.2d 471 (2d Cir 1980) ......................................... 3

*Connick v. Thompson*, 131 S. Ct. 1350 (2011) ....................................................... 9, 10

*Cox v. La.*, 379 U.S. 536 (U.S. 1965) ................................................................. 2

*Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503 (S.D.N.Y. 1999) .......... 13

*Edwards v. South Carolina*, 372 U.S. 229 (1963) ................................................. 2, 3, 7

*Fakoya v. City of New York*, 115 A.D.3d 790 (N.Y. App. Div. 2nd Dep't 2014) .......................... 2

*Haus v. City of New York*, 2011 U.S. Dist. LEXIS 155735 (S.D.N.Y. Aug. 31, 2011) ............. 3, 4, 12

*Holland v City of Poughkeepsie*, 90 A.D.3d 841 (N.Y. App. Div. 2d Dep't 2011) ......................... 6

*Johnson v. City of New York*, 2008 U.S. Dist. LEXIS 78984 (S.D.N.Y. Sept. 29, 2008) .................. 4

*Kerman v. City of New York*, 374 F.3d 93 (2d Cir. 2004) ........................................ 11, 12

*Lennon v. Miller*, 66 F.3d 416 (2d Cir. N.Y. 1995) .................................................... 4

*Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) ..................................... 2, 3, 8

*Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. N.Y. 2006) .................................. 4

*Matter of Ashley M.*, 30 A.D.3d 178 (1st Dep't 2006) .................................................. 4

*Milanese v. Rust-Oleum Corp.*, 244 F.3d 104 (2d Cir. 2001) ........................................... 5

*Papineau v. Parmley*, 465 F.3d 46 (2d Cir. 2006) ................................................. 2, 3, 7

*People v. Barktow*, 96 N.Y.2d 770 (2001) ......................................................... 8, 12

*People v. Grant*, 480 N.Y.S. 2d 1010 (Crim. Ct. Bx. Cty. 1984) ....................................... 4

*People v. Greene*, 221 A.D.2d 559 (2d Dep't 1995) .................................................... 7

*People v. Hanson*, 683 N.Y.S.2d 386 (N.Y. Dist. Ct. 1998) ............................................. 4

*People v. Jones*, 9 N.Y.3d 259 (2007) ................................................................. 8

*People v. Perez*, 47 A.D.3d 1192 (4th Dep't 2008) .................................................... 7

*People v. Tichenor*, 89 N.Y.2d 769 (1997) ......................................................... 6, 8

*Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774 (2d Cir. N.Y. 1984) .... 5

*Schumann v. New York*, 270 F. Supp. 730 (S.D.N.Y. 1967) .............................................. 4

*Searles v. Pompilio*, 652 F. Supp. 2d 432 (S.D.N.Y. 2009) ............................................. 6

*Simms v. City of New York*, 480 Fed. Appx. 627 (2d Cir. 2012) .................................... 9, 11

*Sorensen v. City of New York*, 2000 U.S. Dist. LEXIS 15090 (S.D.N.Y. Oct. 13, 2000) .................. 2

*Stephenson v. Doe*, 332 F.3d 68 (2d Cir. 2003) ...................................................... 12

*Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703 (S.D.N.Y. Mar. 26, 2015) .................. 13

*Warren v. Dwyer*, 906 F.2d 70 (2d Cir. 1990) ........................................................ 12

*Zapata v. City of New York*, 502 F.3d 192 (2d Cir. N.Y. 2007) ................................... 13, 14

*Zellner v. Summerlin*, 494 F.3d 344 (2d Cir. 2007) .................................................. 11

## STATUTES

Penal Law § 195.05 ................................................................................. 6, 7

Penal Law § 240.20 .............................................................................. 5, 6, 7

Penal Law § 240.20(1) ................................................................................. 5

Penal Law § 240.20(5) ................................................................................. 7

Penal Law § 240.20(6) ............................................................................. 6, 7

Penal Law § 240.26 ............................................................................................................8, 12
Penal Law §120.15 ..................................................................................................................5

## RULES

F.R.C.P. § 4(m) ....................................................................................................................13
F.R.C.P. § 7(b) .....................................................................................................................15
F.R.C.P. 15(a) ........................................................................................................................5

## INTRODUCTION

Defendants' Opposition[1] to Plaintiff's motion to amend the Complaint cannot and does not eliminate the numerous triable issues of fact in this action regarding Defendants' affirmative defenses and Plaintiff's causes of action, including for municipal liability. Leave to amend should thus be granted because the proposed amended complaint[2] is not futile.

## I.   LEAVE TO AMEND IS PROPER BECAUSE QUESTIONS OF FACT SURROUND PROBABLE CAUSE AND QUALIFIED IMMUNITY ISSUES

Leave to amend a complaint should be freely granted when justice so requires. F.R.C.P. 15(a). Where the proposed amendment presents "at least colorable grounds for relief, justice does so require" in the absence of bad faith, undue delay or undue prejudice. *Ryder Energy Distribution Corp. v. Merrill Lynch Commodities, Inc.*, 748 F.2d 774, 783 (2d Cir. N.Y. 1984). When a plaintiff cross-moves to amend the complaint in response to a motion for summary judgment, leave should be granted where, as here, evidence before the Court presents triable issues of fact precluding dismissal.[3] *See Milanese v. Rust-Oleum Corp.*, 244 F.3d 104, 110 (2d Cir. 2001) (applying summary judgment standard and allowing amendment).

## II.   PROBABLE CAUSE TO ARREST PLAINTIFF HERE IS NOT ESTABLISHED AS A MATTER OF LAW BUT IS AN ISSUE FOR A FACTFINDER AT TRIAL

Defendants must, but cannot, demonstrate that no triable issues of fact exist as to whether the NYPD had probable cause to arrest plaintiff under various disorderly conduct and other related statutes. Defendants bear the burden of conclusively showing that there was probable cause to arrest; Plaintiff must only show that the evidence is inconclusive and suitable for determination by a fact finder at trial. Crucially, Defendants fail completely to address the legal standards for probable cause

---

[1] Reply Memorandum Of Law In Support Of Defendant's Converted R. 12 Motion And In Opposition To Plaintiff's Motion To Amend The Complaint (Docket No. 78), filed August 29, 2015, ("Def.'s Opp.").

[2] Second Amended Complaint (Docket 72-1) ("The Complaint" or "Compl.").

[3] Because the summary judgment standard is used to test the sufficiency of an amended complaint offered as a cross motion, this brief will address many of the same issues addressed in Plaintiff's prior opposition.

under the disorderly conduct statutes where the arrestee, as here, is exercising First Amendment rights of free speech and assembly in a public, political protest. The law is unambiguous: the probable cause standard is more exacting in such a context.

As an initial matter, warrantless arrests are presumptively unlawful. "Whenever there has been an arrest . . . without a warrant . . . the presumption arises that such an arrest [is] unlawful." *Broughton v. State*, 37 N.Y.2d 451, 458 (N.Y. 1975); *cert denied sub nom. Schanbarger v. Kellogg*, 423 US 929 (1975); *Ahmad v. City of New York*, 129 A.D.3d 443, 444 (N.Y. App. Div. 1st Dep't 2015) (same). "As a matter of pleading," the defendant in an action for a false warrantless arrest "has the burden of proving legal justification as an affirmative defense". *Broughton*, 37 N.Y.2d at 458 (affirming judgment for plaintiff); *Fakoya v. City of New York*, 115 A.D.3d 790, 791 (N.Y. App. Div. 2nd Dep't 2014) (burden on defendant) (*citing Broughton*). The burden must be met "bear[ing] in mind the fact that 'probable cause is a flexible common-sense standard.'" *Sorensen v. City of New York*, 2000 U.S. Dist. LEXIS 15090, *28 (S.D.N.Y. Oct. 13, 2000).

Second, in the context of a political demonstration, the standard for a disorderly conduct arrest is elevated and stringent. Because the Constitution affords political speech the highest possible measure of protection, *Marcavage v. City of New York*, 689 F.3d 98, 104 (2d Cir. 2012), it is well-settled that a public protest may be lawfully dispersed by the police only if it creates a "*clear and present danger* of riot, disorder, interference with traffic upon the streets, or other immediate threat to public safety, peace, or order." *Papineau v. Parmley*, 465 F.3d 46, 57 (2d Cir. 2006) (emphasis added) (affirming denial of summary judgment for defendants because "police may not interfere with orderly, nonviolent protests merely because they . . . fear possible disorder"). *See also Edwards v. South Carolina*, 372 U.S. 229, 233 (1963) (breach of the peace arrests unconstitutional where political protestors defied dispersal order and "engaged in . . . 'boisterous,' 'loud,' and 'flamboyant' conduct" such as "loudly singing 'The Star Spangled Banner' . . . while stamping their feet and clapping"); *Cox v. La.*, 379 U.S. 536, 550, fn 12 (U.S. 1965) (dispersal order to political protestors

2

based on fear of violence unconstitutional where "fear of violence seems to have been based upon the reaction of" those antagonistic to the protest). Thus, "the police may not interrupt or disperse a gathering that is the occasion for the exercise of First Amendment rights -- notably, a political demonstration -- either because they disagree with the content of the speech or because of fear of disorder." *Haus v. City of New York*, 2011 U.S. Dist. LEXIS 155735, *71 (S.D.N.Y. Aug. 31, 2011) *recon denied* 2011 US Dist. Lexis 15025 (S.D.N.Y. Dec. 20, 2011) (Report and Recommendation) (denying City's motion for summary judgment on false arrest and excessive force claims arising from a demonstration involving an estimated 100,000 political protestors).

Defendants ignore this well settled standard and do not, because they cannot, cite to any objective evidence of a clear and present danger or any immediate threat to public safety or order. Instead, Defendants argue that "officers should not be forced to wait for congestion to arise before" dispersing a demonstration. (Def.'s Opp. at 11). Put into practice, Defendants' position violates the clearly established rule that the "police may not interfere with orderly, nonviolent protests merely because they . . . fear possible disorder." *Papineau*, 465 F.3d at 57; *see also Edwards*, 372 U.S. at 237. Counsel's argument articulates well the policy adopted and the practice implemented by the NYPD in this case and others, is contrary to law, and shows that Plaintiff's *Monell* claim is well founded (*see infra*, section III).

The few First Amendment disorderly conduct cases Defendants cite do not support the legality of the police actions at issue here. *Concerned Jewish Youth v. McGuire*, 621 F.2d 471 (2d Cir 1980) and *Marcavage v. City of New York*, 689 F.3d 98 (2d Cir. 2012) held that certain pre-planned time, place and manner restrictions regulating public protest were valid. *Concerned Jewish Youth* upheld such restrictions for a demonstration outside the Russian Consulate on East 67th Street between Lexington and Third Avenues were valid because of the "substantial interest in protecting foreign officials and their property" and "the residents of the area." 621 F.2d at 474. In *Marcavage*, plaintiffs refused to leave a "no demonstration" zone on Seventh Avenue across from Madison

3

Square Garden during the Republican National Convention which had been pre-designated to allow "commuters, shoppers, tourists, residents, and other people" to pass through. 689 F.3d at 105. In both cases, unlike here, the issue was the validity of a plan which police had in place before the demonstration to regulate traffic and ensure safety. Moreover, "[t]he validity of time, place and manner restrictions ultimately rests on an evaluation of how they were actually implemented . . . ." *Haus*, 2011 U.S. Dist. LEXIS 155735, *64-65.[4] Here, the restrictions on First Amendment activities, as implemented, violate clearly established law.

Defendants also argue that the dispersal of protestors from in front of the New York County Courthouse was a content neutral restriction on First Amendment activity. (Def.'s Opp. at 18). Just one week prior to the events at issue here however, NYPD officers held a massive demonstration in front of the Bronx County Courthouse (unlike here, while the Courthouse was open and conducting business) to protest the prosecution of fellow officers charged in the NYPD ticket fixing scandal. (Compl. ¶ 54).[5] That demonstration was not dispersed. In light of these facts, the assertion that dispersal of the protest at issue here was content neutral is dubious and is at least a question for the

---

[4] In arguing that probable cause existed under the Disorderly Conduct and Obstructing Governmental Administration statutes, Defendants rely on numerous cases that do not address the issue of permissible regulation of vehicular and pedestrian traffic "in the context of where individuals are protesting and exercising their First Amendment rights," as the Court instructed the parties to do. (Docket No. 54-2, at 16): *Brown v. City of New York*, 2014 U.S. Dist. LEXIS 83513 (S.D.N.Y. 2014) (arrestee banging on door of closed coffee shop); *C.G. v. City of New York*, 2013 U.S. Dist. LEXIS 153020 (E.D.N.Y. Oct. 24, 2013) (crowd of students loitering outside a convenience store); *Johnson v. City of New York*, 2008 U.S. Dist. LEXIS 78984 (S.D.N.Y. Sept. 29, 2008) ("domestic dispute at the apartment of plaintiff and his live-in girlfriend"); *Lennon v. Miller*, 66 F.3d 416, 424 (2d Cir. N.Y. 1995) ("street confrontation" between separated spouses over ownership of a car); *People v. Hanson*, 683 N.Y.S.2d 386, 387 (N.Y. Dist. Ct. 1998) (defendant "intent on a physical fight" with another "which would have ensued except for the action of the officer"); *People v. Grant*, 480 N.Y.S. 2d 1010, 1011 (Crim. Ct. Bx. Cty. 1984) ("teachers had complained . . . classes were being disrupted by [defendant] playing a loud radio outside the school", defendant refused to turn radio down or leave area); *Schumann v. New York*, 270 F. Supp. 730, 733 (S.D.N.Y. 1967) (plaintiff protestors denied injunction preventing enforcement of statute requiring permit to wear masks in public, because they had never applied for such a permit); *Matter of Ashley M.*, 30 A.D.3d 178, 179 (1st Dep't 2006) (defendant physically attacked and fought with officer patrolling sidewalk at protest, unlike here). *See also Bery v. City of New York*, 97 F.3d 689, 691 (2d Cir. N.Y. 1996) (artists sought "to display and sell their creations in public spaces in the City without a general vendors license"; held, license requirement "constitutes an unconstitutional infringement of their First Amendment rights"); *Mastrovincenzo v. City of New York*, 435 F.3d 78 (2d Cir. N.Y. 2006) (unlicensed street vendors of clothing painted with graffiti). These cases are simply not relevant here.

[5] As this memorandum of law is a Reply in support of Plaintiff's cross motion for leave to amend the Complaint, Plaintiff cites to the Complaint rather than his 56.1 Statement.

fact finder that cannot be decided on this motion as a matter of law. Further, the Courthouse at 60 Centre Street is frequently used for commercial purposes and the steps to the Courthouse are the site of a large annual party sanctioned by the City. (Compl. ¶ 53). Allowing commercial speech while prohibiting political speech calls into question the neutrality of the dispersal order at issue here.

Defendants argue that, as a matter of law, they had probable cause to arrest Plaintiff under NY PL §120.15 [Menacing, 3rd Degree] and NY PL §240.20(1) [disorderly conduct]. The video evidence (Def. Ex. D) belies Defendant's argument that no reasonable fact finder could find a lack of probable cause for arrest under those statutes. Defendants argue that Plaintiff made "close, if not direct, physical contact" (Def.'s Opp, p. 7) with Lt. Zielinski. But as the video uncontrovertibly shows, Plaintiff never touched the Lieutenant. Defendants argue that Plaintiff "charged at" the Lieutenant. (Id., p. 24). But the video shows that Plaintiff did not charge in the Lieutenant's direction. Perhaps recognizing this, Defendants mistakenly argue that it does not matter "what verb the court adopts to describe plaintiff's conduct" (Id., p.6). This, the crux of Defendants' argument, is simply legally wrong. Probable cause to arrest plaintiff for Menacing in the third degree requires that Plaintiff "*by physical menace* ... intentionally place[d] or attempt[ed] to place [Lt. Zielinski] in fear of death, imminent serious physical injury or physical injury." NY PL §120.15 (emphasis added). No reasonable fact finder could watch the video and conclude that any officer would mistake Plaintiff's admittedly emphatic, loud and persistent political speech, or brandishing of the Constitution, as "physical menace," or impute to Plaintiff an intent to put the Lieutenant in fear of physical injury or worse, as the statute requires.[6] Moreover, there is no evidence, such as an affidavit or deposition testimony, from Lt. Zielinski that he experienced any fear as a result of Plaintiff's

---

[6] Defendants additionally assert that Plaintiff "approach[ed Lt. Zielinsk's] firearm from behind." (Def.'s Opp. at 7). This is bald speculation of counsel unsupported by any evidence. At this stage it is, at the very least, a fact question as to whether the video evidence indicates that any police officer on the scene believed Plaintiff made any attempt to touch Lt. Zielinski's gun. Such testimony, if elicited in discovery, would be subject to a credibility determination following cross examination. Further, this assertion of fact by counsel that Plaintiff approached Lt. Zielinski's firearm is not included in Defendant's 56.1 Statement, not mentioned in Defendant's moving papers, and is unsupported by any testimony from any police officer at the scene.

5

actions or believed that Plaintiff was attempting to place him in fear of serious injury or worse. *Ackerson v. City of White Plains*, 702 F.3d 15, 20 (2d Cir. 2012) ("perceived danger [of injury] must be immediate"). A reasonable fact finder could likewise determine that Plaintiff's conduct could not possibly be interpreted as "fighting or violent, tumultuous or threatening behavior," as NY PL §240.20(1) requires. Because these are triable issues of fact, the Amended Complaint is not futile.

Moreover, as set out in Plaintiff's Opposition to Defendant's motion (Docket No. 69, at 17), all subsections of the disorderly conduct statute, NY PL § 240.20, require an "intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof." NY PL §240.20. There is simply no evidence that Plaintiff, exercising his First Amendment rights during an organized political protest, proclaiming that Lt. Zielinski's orders were unconstitutional, intended to or recklessly caused cause public inconvenience, annoyance or alarm, much less evidence sufficient to establish such mens rea as a matter of law.[7] Nor can holding a copy of the United States Constitution (termed mere "paperwork" by Defendants [Def.'s Opp. at 7]) near the Lieutenant while shouting "Treason!" in the midst of political protest establish such mens rea as a matter of law. Plaintiff's state of mind in undertaking that political speech and action in this context is a fact question. Because the mens rea element is applicable to all subsections of § 240.20, probable cause under each is a fact question that cannot be decided as a matter of law. *Holland v City of Poughkeepsie*, 90 A.D.3d 841, 845 (N.Y. App. Div. 2d Dep't 2011) (denying defendant summary judgment in §1983 false disorderly conduct arrest action despite finding tumultuous behavior; "triable issue of fact" re intent precluded finding probable cause); *Searles v. Pompilio*, 652 F. Supp. 432 (S.D.N.Y. 2009) (same).

Defendants argue that Plaintiff was in fact arrested because he did not disperse when told to do so, in violation of NY PL §§ 240.20 (6) and 195.05 (Def.'s Opp, pp. 24), and that probable cause

---

[7] Defendants take issue with Plaintiff's use of the term "breach of the peace" with regard to the disorderly conduct statute, arguing that it "comes from law that is no longer on the books." (Def.'s Opp. at 8). The New York Court of Appeals however "equate[s] that term with public inconvenience, annoyance or alarm, the governing phrase of our current disorderly conduct statute." *People v. Tichenor*, 89 N.Y.2d 769, 774 (1997), *cert. denied* 522 U.S. 918. Defendant's objection to the term is both puzzling and misplaced.

6

to arrest him existed under § 240.20(5) [obstructing pedestrian traffic]. (Id., p. 10).

Here, in addition to mens rea, probable cause to arrest Plaintiff for defying a dispersal order or obstructing pedestrians must also be judged against the rule that "[n]either energetic, even raucous, protesters who annoy or anger audiences, nor demonstrations that slow traffic or inconvenience pedestrians, justify police stopping or interrupting a public protest." *Papineau*, 465 F.3d at 58. The dispersal order was legal, or authorized, only if made in response to a "clear and present danger" of an "immediate threat to public safety, peace, or order." *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940). The video evidence shows a peaceful demonstration, with people dancing, distributing copies of the Constitution, milling about and chanting. It does not show pedestrians unable to cross the expanse of Foley Square. Defendants do not cite to any objective evidence of the "clear and present danger" to public safety which has been required, since before World War II, in order for police dispersal of peaceful political protest to be authorized by law. *Edwards*, 372 U.S. at 233 (arrest of peaceful, "boisterous" political protestors for defying dispersal order unconstitutional).

In the absence of a "clear and present danger" the dispersal order was unconstitutional and unauthorized. *Cantwell*, 310 U.S. 296 at 308. The defining element of §240.20(6) [disorderly conduct] is the "refus[al] to comply with a lawful order". Thus no probable cause can exist to arrest a person under that statute for refusal to comply with an unlawful order. For the same reason, there cannot have been probable cause to arrest Plaintiff under §195.05. Where an "arrest [i]s not authorized," an individual cannot, as a matter of law, violate the statute. *People v. Perez*, 47 A.D.3d 1192, 1193-1194 (4th Dep't 2008) *app. denied*, 10 N.Y.3d 814 (2008); *People v Greene*, 221 A.D.2d 559 (2d Dep't 1995) (violation possible only when police conduct is "authorized"). Defendants' argument re §240.20(5) that "creating a risk of public inconvenience suffices for the statute" (Def.'s Opp. at 11), ignores both this well settled law interpreting §195.05 and, most tellingly, long standing

7

precedent requiring a clear and present danger to justify dispersal of a political protest.[8]

Finally, Defendants argue that, as a matter of law, there was probable cause to arrest Plaintiff under §240.26 [Harassment, 2nd Degree]. All subsections of Harassment in the 2nd Degree require an "intent to harass, annoy or alarm another person." NY PL § 240.26. As shown above, Plaintiff's intent is a question of fact for trial and cannot be determined as a matter of law. Moreover, "[t]he crux of section 240.26(1) is the element of physical contact: actual, attempted or threatened." *People v. Barktow*, 96 N.Y.2d 770, 772 (2001) (holding without physical contact, statute does not apply). *Cf. Lynn v. State of New York*, 33 A.D.3d 673 (2d Dep't 2006) (head-butting officer provided required element). Defendants argue that "Plaintiff tries to obscure his physical interactions with Lt. Zielenski" (Def.'s Opp. at 7) but the evidence shows conclusively that there was no physical interaction. (Def. Ex. D at 14:00 et. seq.). Defendants' contention that Plaintiff's following of Lt. Zielinski provided probable cause under subsection two borders on the frivolous. Even engaging in a verbal dispute using foul language, and then following a person and "trying to continue the verbal dispute" do not satisfy this element. *People v Hogan*, 698 N.Y.S.2d 388 (2d Dep't 1998). But Plaintiff here did not even use foul language; he used political speech, during a political demonstration, to protest Lt. Zielinski's unconstitutional order that the demonstration disperse. Finally, under subsection three, probable cause could exist here only if political speech and protest "serve no legitimate purpose." NY PL §240.26(3). That is not the law. *Marcavage*, 689 F.3d at 104.

## III.   THE PROPOSED SECOND AMENDED COMPLAINT ADEQUATELY STATES A CLAIM FOR MUNICIAPL LIABILITY

Plaintiff has met his pleading burden under current Second Circuit law for a *Monell* claim

---

[8] Moreover, Defendants' argument that disobeying an order to move along provides grounds to arrest under the disorderly conduct statute unless the order is "purely arbitrary and not calculated in any way to promote the public order" relies on federal cases which failed to apply binding State precedent. As explained in Plaintiff's Opposition to Defendants' motion for summary judgment (Docket No. 69, at 18-19), the New York Court of Appeals overruled the "purely arbitrary" standard. *See People v. Tichenor*, 89 N.Y.2d 769, 774 (1997), *cert. denied* 522 U.S. 918 and *People v. Jones*, 9 N.Y.3d 259 (2007). Where the meaning of a state statute is in dispute, "the Supreme Court has long shown a strong preference that the controlling interpretation of the relevant statute be governed by state, rather than federal, courts." *Allstate Ins. Co. v. Serio*, 261 F.3d 143, 150 (2d Cir. 2001).

grounded in violation of his First and Fourth Amendment rights, as a direct result of the City's deliberate failure to train its police officers in protestors' Constitutional rights, despite the City's knowledge that its officers have violated such rights in the past and that they were likely, indeed certain, to encounter protestors who would again seek to exercise those rights.  Plaintiff has plead "(1) an official policy or custom that (2) causes the plaintiff to be subjected to (3) a denial of a constitutional right." *Simms v. City of New York*, 480 Fed. Appx. 627, 629 (2d Cir. 2012).  To fulfill the first element in this failure to train action, Plaintiff has plead deliberate indifference on the part of city policymakers with facts showing actual "notice that a particular omission in their training program cause[d] city employees to violate citizens' constitutional rights," and that "the policymakers choose to retain that program." *Id.*, quoting *Connick v. Thompson*, 131 S. Ct. 1350, 1360 (2011).

First, the Complaint pleads the omission from the city's police training program of training on First Amendment rights as they relate to public protest.  The Complaint quotes police officer testimony that "I don't know of a specific training of that, but I don't – I can't recall what specific training" he had received regarding the First Amendment, and that regarding training on police respect for those rights, "Not to – I'm not really sure.  They would – what they would instruct us." (Compl. ¶ 219).  Another officer testified that he recalled no training other than that protestors could say what they want. (Compl. ¶223).  A third testified that "I don't know" what the First Amendment means in police work, that "I don't" know whether Occupy Wall Street ("OWS") protestors were involved in First Amendment activity, and that he was not trained in First Amendment activity in Disorder Control Training. (Id. ¶226).  The Complaint cites the "policy to ignore NYPD Legal Bureau Bulletins" of the 1st Precinct's Commanding Officer, where the OWS protests were based (Id. ¶¶229, 231), and that training conducted specifically to prepare for OWS protests covered techniques for dispersal of protestors and the use of batons and pepper spray, but not training on the circumstances in which arrests of protestors engaged in First Amendment speech are, and are not, lawful. (Id., ¶¶ 192-195).

In contrast to these well plead facts, Defendants make the naked assertion that the NYPD

"does train on the penal law, demonstrations, and the First Amendment," (Def.'s Opp. at 22), without citing to any affidavit or other evidence. Defendants argue that there has been no showing that such training "by the disorder control unit would be different or otherwise more effective" than training at the Academy has been. (Id., p. 34). Post Academy training, such as disorder control training, is would be more effective for officers whose careers can span 25 years or longer than is the absence of such training. The NYPD recognizes this by conducting ongoing training in crowd control tactics. Where, in the absence of training, officers cannot obtain the knowledge they require to avoid constitutional violations, "there is an obvious need for some form of training." *Connick*, 131 S. Ct. at 1361.

Second, the City was on actual notice that its failure to train had previously resulted in Constitutional violations identical to that suffered by Plaintiff. As recounted in the Complaint, the City faced significant liability for identical violations due to suppression of protests during the Republican National Convention seven years before the OWS protests. (Id., ¶¶ 184-185). At least from that point onward, City policymakers knew that the training of NYPD officers was likely to result in the violation of political demonstrators' Constitutional rights. However, seven years later, as recounted in the testimony cited above, that training had not been modified to prevent such violations. In the interim, the City conducted no training on the policing of protests at which the rights of free speech and free assembly were expected to be exercised. (Id., ¶ 196). Such violations predictably occurred again, by October 2, 2011 at the latest, by which point the NYPD had made significant arrests of OWS public protestors engaged in First Amendment protected activity on two occasions. (Id., ¶ 191). The City ultimately paid $635,000 in damages for unconstitutional arrests of OWS protestors made in September, 2011. (Id., ¶ 259). These facts show "that a particular omission" in the NYPD "training program cause[d police officers] to violate citizens' constitutional rights," and that "the policymakers ch[]ose to retain that program." *Connick*, 131 S. Ct. at 1360. The City's "knowledge of and support for its officers' unconstitutional conduct can be inferred from its

failure to curtail that conduct." *Barboza v. D'Agata, et al.*, 13 CV 4067, Seibel D.J., Slip Op., at 26 (S.D.N.Y. September 10, 2015) (nine prior similar arrests sufficient to establish jury question as to pattern; denying defense summary judgment motion in §1983 false arrest action based on violation of right to free speech).

Finally, Plaintiff has plead that the lack of training directly "cause[d] the plaintiff to be subjected to [] a denial of a constitutional right," *Simms*, 480 Fed. Appx. at 629, alleging specifically that his arrest resulted directly from the policy and custom of failing to train officers in the First Amendment rights of protestors, by causing his arrest in violation of his constitutional rights to free speech. (Compl. ¶¶ 260, 264, 269-270, 272).

## IV.    DEFENDANTS ARE NOT ENTITLED TO QUALIFIED IMMUNITY AS A MATTER OF LAW

"[I]f, on an objective basis, it is obvious that no reasonably competent officer would have concluded that probable cause existed, defendants will not be immune." *Zellner v. Summerlin*, 494 F.3d 344, 367 (2d Cir. 2007). Here, no competent officer would have concluded that probable cause existed to arrest Plaintiff for any subsection of disorderly conduct or for obstructing governmental administration based on his engaging in First Amendment activities, including shouting "Treason!" and disobeying orders to disperse.[9] "In order for a right to be clearly established, the contours of the right must be sufficiently clear that a reasonable official would understand that what he is doing violates that right." *Kerman v. City of New York*, 374 F.3d 93, 110 (2d Cir. 2004) (internal quotes omitted). As outlined above, the dispersal order was legal only if made in response to a "clear and present danger" of an "immediate threat to public safety, peace, or order." *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940).

Similarly, as a matter of law, no competent officer would have concluded that probable cause

---

[9] Indeed, as argued above, the basis of Plaintiff's *Monell* claim is that the NYPD officers at the scene were not competent in this area as a direct result of the City's failure to train its officers in the rights of political demonstrators established by long-standing law despite its knowledge that, lacking such training, officers had in the past and would again violate those rights.

existed to arrest Plaintiff for Menacing in the circumstances here. "Police officers of reasonable competence could not disagree over whether probable cause existed without th[e] crucial element" of physical menace. *Ackerson*, 702 F.3d at 21 (no qualified immunity for false arrest because no physical menace). For the same reason, no competent officer would have arrested Plaintiff for harassment. "The crux of section 240.26(1) is the element of physical contact: actual, attempted or threatened." *People v. Bartkow*, 96 N.Y.2d 770, 772 (2001) (statute does not apply without contact).

If the Court should find that "notwithstanding [the] clear delineation of the rights and duties of the respective parties," fact questions must be resolved to determine whether it was objectively reasonable for the police to believe they had probable cause to arrest plaintiff, those determinations must be made by the trier of fact and summary dismissal is improper. *Kerman*, 374 F.3d at 109 (if facts concerning immunity defense are disputed, immunity should not be decided by the court before fact determinations by jury). "[S]ummary judgment cannot be granted on basis [of qualified immunity] because there are triable issues of fact pertaining to the circumstances surrounding th[]e arrest[] and whether there was any clear and present danger of sufficient moment to justify denying . . . plaintiff the opportunity to continue to participate in the demonstration." *Haus*, 2011 U.S. Dist. LEXIS 155735, *73. *See also Stephenson v. Doe*, 332 F.3d 68, 81 (2d Cir. 2003) (court to determine "whether qualified immunity attaches" based on fact finder's determination of "what the facts were that the officer faced or perceived"); *Warren v. Dwyer*, 906 F.2d 70 (2d Cir. 1990) *cert. denied*, 498 U.S. 967 (1990) (same).

## V.   LEAVE TO EXTEND THE TIME FOR SERVICE SHOULD BE GRANTED

Defendants argue the Court should not grant leave to extend the time for service. As an initial matter, Defendants have misinformed the Court, asserting that "Plaintiff failed to effectuate service on the Officers, or any individual defendant" by March 5, 2015 (120 days after Plaintiff's

12

First Amended Complaint was filed).[10]  In fact, defendants Anger and Zielinski were properly served with the Amended Complaint on December 5, 2014 and defendant Ciaramitaro was properly served on December 8, 2014.  (Docket Nos. 33, 34 and 35, respectively).  The docket shows conclusively that Defendants' argument is groundless with regard to these individual defendants.

Because a dismissal here "without prejudice in combination with the statute of limitations would result in a dismissal *with* prejudice" the court must "weigh[] the impact that a dismissal or extension would have on the parties." *Zapata v. City of New York*, 502 F.3d 192, 197 (2d Cir. N.Y. 2007) (emphasis in original).  In weighing that impact, courts are to consider "(1) whether the applicable statute of limitations would bar the refiled action; (2) whether the defendant had actual notice of the claims asserted in the complaint; (3) whether the defendant had attempted to conceal the defect in service; and (4) whether the defendant would be prejudiced by the granting of plaintiff's request for relief from the provision." *Eastern Refractories Co. v. Forty Eight Insulations, Inc.*, 187 F.R.D. 503, 506 (S.D.N.Y. 1999) *citing* Advisory Committee Notes to F.R.C.P. § 4(m).

Defendants Albano and Cokkinos were served on March 9, 2015 and defendant Cook was served on June 18, 2015.  (Docket Nos. 38, 40 and 58).  Defendant Tloczkowski, who was not served, was stipulated by the parties as substituted for a prior defendant (Docket No. 50).

Where as here the statute of limitations would bar the refiled action, the first factor weighs in favor of an extension because of the prejudice it would work on plaintiff.  *Tieman v. City of Newburgh*, 2015 U.S. Dist. LEXIS 38703, *29 (S.D.N.Y. Mar. 26, 2015) (granting extension).  *See also Castro v. City of New York*, 2007 U.S. Dist. Lexis 77878, *19-20 (S.D.N.Y. 2007) (granting extension and collecting cases in which courts "focus on their discretionary authority to deny dismissal in addressing these types of motions").  Defendants' sole argument against granting leave to extend service on unserved individual defendants – that they "would be prejudiced as because [sic]

---

[10] Memorandum Of Law In Support Of Defendants' Motion To Dismiss (Docket No. 55), dated May 29, 2015, at p. 18 (Def.'s Moving Br.).

the claims at issue are otherwise time barred" (Def.'s Opp. at 35) – is thus precisely backwards. Defendants cite to the Second Circuit decision in *Zapata*, claiming that it held prejudice to a defendant is "assumed in the case of individuals sued after the Statute of Limitations has run." (Def.'s Opp. at 35). **But that quoted language is from the District court's decision <u>reversed</u> by *Zapata*.** In reviewing that lower decision, the Second Circuit in fact held that "we decline to adopt such a per se rule on the matter." *Zapata*, 502 F.3d at 198 (noting "we disagree with the district court's formulation that a dispositive degree of prejudice to the defendant is 'assumed' when statute of limitations would bar the re-filed action.").

Relying on this misreading of *Zapata*, Defendants do not address the effect here of the other three factors. As to the second, actual notice of the claims asserted, Defendants admit that the City was served.[11] Where "Plaintiff served the Law Department," unserved individual municipal employee "defendants necessarily ha[ve] actual or constructive notice of both the lawsuit and plaintiff's claims within the 120-day period." *Castro*, 2007 U.S. Dist. Lexis 77878, *26. The second factor thus weighs in favor of an extension.

Third, Defendants did in fact attempt to conceal defective service. On May 18, 2015, the parties entered into a Stipulation So Ordered by this Court providing that defendant Tloczkowski "will be retroactively added to the complaint in place of defendant Duffy". (Docket No. 50). Defense counsel entered into the Stipulation over two months after March 5, 2015, despite the fact that they did not respond to Plaintiff's request that they accept service on Duffy's behalf.[12] At the time of the Stipulation, they did not identify any service requirement for the newly substituted defendant. This conduct concealed (and estopped) any objection to service on Tloczkowski.

Fourth, none of the individual defendants are prejudiced. While Defendants Albano,

---

[11] Defendants' Response to Plaintiff's 56.1 Statement (Docket No. 77), at ¶ 3).

[12] For security reasons, Corporation Counsel never discloses the location of retired officers.

Tloczkowski and Cook were not named in Defendants' May 29, 2015 notice of motion,[13] and

Corporation Counsel had not yet appeared on their behalf, Counsel argues that Defendants' motion

for summary judgment was made on behalf of these defendants. (Def.'s Opp. at 2-3).  These

defendants have thus been represented by Counsel in all stages of this litigation and cannot be

prejudiced by *nunc pro tunc* leave to extend the time for service.

## VI.    THE PROPOSED SECOND AMENDED COMPLAINT SETS FORTH
##        THE PERSONAL INVOLVEMENT OF THE INDIVIDUAL DEFENDANTS

The plaintiff's proposed amended complaint alleges personal involvement for all named

defendants.  This complaint states that Defendants Anger, Cokkinos and Tloczkowski directed that

the steps of the courthouse be closed to the protestors, and that Anger, Cokkinos directed defendant

Zielinski to issue unlawful orders to disperse the protestors. (Compl. ¶¶ 83-86).  These

Constitutionally unlawful orders triggered the interaction between the plaintiff and Zielinski (Compl.

¶¶ 90-95), which was the immediate pretext of his arrest by Defendants Ciaramitaro, Cook, and

Albano. (Compl. ¶ 98; Pl. Aff. 56.1 ¶ 81).  Defendant Ciaramitaro was also the plaintiff's official

arresting officer.


## CONCLUSION

For the reasons set forth above, Plaintiff respectfully requests that the Court grant Plaintiff's

Cross Motion to Amend The Complaint.

---

[13] A party cannot seek relief except by motion.  *See* F.R.C.P. § 7(b).  The purpose of a notice of motion is to "provide notice . . . of what must be responded to." *Am. Family Mut. Ins. v. Roth*, 2007 U.S. Dist. LEXIS 60220 (N.D. Ill. Aug. 16, 2007).  Defendants' notice of motion did not mention Albano, Tloczkowski or Cook, and did not provide the Plaintiff with notice that he must respond to any motion by these individuals.  While these parties can oppose Plaintiff's motion for leave to amend, they have not moved for summary judgment pursuant to the Federal Rules.