IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK
_____

JOSE MEDIAVILLA,

                                                            Index No. 14-cv-08624-VSB

                              PLAINTIFF,

              vs.                                           Memorandum of Law
                                                            in Support of Plaintiff's
                                                            Motion for Reconsideration
THE CITY OF NEW YORK, a municipal entity,
et al.,

                              DEFENDANTS.
_____

# **Table of Contents**

I.   Preliminary Statement --------------------------------------------------------------- 1

II.   Summary of Determinative Facts------------------------------------------------- 3

III.  Standard of Review------------------------------------------------------------------ 4

IV.  The Orders to Disperse Were Not Lawful; Probable Cause Was Lacking for
240.20(6) and 195.05 ----------------------------------------------------------------- 5

    A.   *Galpern* (1932), Approving Orders So Long as "Not Purely Arbitrary" Is Old Law
Superseded by *Jones* (2007) and Other Cases............................................5

    B.   The Defendants Failed to Provide Evidence of Public Harm ...............................13

    C.   The City Charter Provides No Basis for an Order to Disperse ...........................15

    D.   Probable Cause Was Lacking for 240.20(6) and 195.05 ......................................18

V.   Probable Cause Was Lacking for Penal Law 240.20(1) and 240.26------------------ 19

VI.  Conclusion---------------------------------------------------------------------------- 20

# <u>Table Of Authorities</u>

## <u>Cases</u>

*Bery v. City of N.Y.*, 97 F.3d 689 (2d Cir. 1996) ........................................................................ 8

*Citizens United v. Federal Election Commission,* 558 U.S. 310 (2010) ................................. 17

*Davis v. Strack*, 270 F.3d 111 (2d Cir. N.Y. 2001) ................................................................... 16

*Doona v. Onesource Holdings, Inc.*, 680 F. Supp. 2d 394 (E.D.N.Y. 2009) .......................... 13

*Eisemann v. Greene*, 204 F.3d 393 (2d Cir. N.Y. 2000) ............................................................ 5

*King v. Conde*, 121 F.R.D. 180 (E.D.N.Y. 1988) ....................................................................... 2

*Marcavage v. City of New York*, 689 F.3d 98 (2nd Cir. 2012) ................................................. 15

*Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157 (2d Cir. N.Y. 1999) ......... 4

*Newton v. Rumery*, 480 U.S. 386 (1987) .................................................................................... 2

*Osterweil v. Bartlett*, 706 F.3d 139 (2d Cir. 2013) .................................................................. 16

*Papineau v. Parmley,* 465 F.3d 46 (2nd Cir. 2006) ................................................................. 14

*People v Carcel*, 3 NY2d 327 (1957) ....................................................................................... 10

*People v Finch*, 23 NY.3d 408 (2014) ...................................................................................... 15

*People v Jensen*, 86 NY2d 248 (1995) ..................................................................................... 15

*People v Peacock*, 68 NY2d 675 (1986) ................................................................................... 15

*People v. Baker*, 20 N.Y.3d 354, 359 (2013) ........................................................................... 13

*People v. Johnson*, 22 N.Y.3d 1162 (2014) .............................................................................. 13

*People v. Jones*, 9 N.Y.3d 259 (2007) ................................................................................ passim

*People v. Nixon*, 248 N.Y. 182 (1928) ...................................................................................... 14

*People v. Pearl*, 66 Misc. 2d 502, 321 N.Y.S.2d 986 (1st Dep't 1971) .................................. 14

*People v. Todaro*, 26 N.Y.2d 325 (1970) ........................................................................ 8, 9, 11

*People v. Weaver*, 16 N.Y.3d 123 (2011) ........................................................................... 12, 13

*Regatos v. N. Fork Bank*, 396 F.3d 493 (2d Cir. N.Y. 2005) .................................................. 16

*Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148 (S.D.N.Y. 1999) .................................. 5

*Wood v. Breier*, 54 F.R.D. 7 (D. Wis. 1972) .............................................................................. 3

## <u>Statutes</u>

Penal Law § 15.05(3) ................................................................................................................. 10

Penal Law § 240.20(7) ................................................................................................................. 6

## <u>Other Authorities</u>

New York City Charter § 435(a) .......................................................................................... passim

*People v. Mehdi*, 29 N.Y.2d 824 (1971) ................................................................................. 6, 7

*People v. Munafo*, 50 N.Y.2d 326 (1980) ................................................................................... 6

*People v. Pritchard*, 27 N.Y.2d 246 (1970) ............................................................................... 6

Section 722 ............................................................................................................................... 5, 6

## I.  Preliminary Statement

The Court's decision rests on two primary grounds.  First, the Court found that the police orders to disperse were lawful, and that therefore there was probable cause to arrest the plaintiff for failure to obey these orders to disperse under Penal Law 240.20(6) and/or Penal Law 195.05.  Second, the Court found that the plaintiff's loudness and proximity to the police, in particular Lt. Zielinksi, provided probable cause for his arrest pursuant to Penal Law 240.20(1) or 240.26.

The defendants did not prove beyond dispute either the public harm which the controlling state law requires for a lawful order under Penal Law 240.20, or any other specific reason (such as a specific and articulable safety hazard) justifying the order.  In holding that the defendants proved circumstances which rendered the orders lawful, the Court relied on law, such as *People v. Galpern*, 259 N.Y. 279 (1932), which has been superseded by law such as *People v. Jones*, 9 N.Y.3d 259 (2007).  The Court also relied on Section 435(a) of the New York City Charter, which has never been employed in like fashion by any court of New York State.

In holding that the plaintiff's conduct indisputably violated Penal Law § 240.20(1), the Court construed ambiguities in the evidence against the non-movant plaintiff.  While it is possible that a jury might find that the protestor seen repeatedly patting the plaintiff's shoulder did so because the protestor was "alarmed" at the plaintiff's actions, this is surely not the only possible interpretation of the video evidence.  Where such an ambiguity exists, the Court must draw inferences in the **plaintiff's** favor, not in favor of the defendants.  With respect to Penal Law 240.26, the defendants had the opportunity to present evidence by affidavit that defendant Zielinski or some other officer

was, in fact, "alarm[ed] or seriously annoy[ed]" by the plaintiff's conduct. The defendants, despite knowing their obligation to present their proof, did not do so. The officers' mental state is not something that can be discerned from videotape beyond any material dispute. This Court should not have drawn inferences concerning the officers' state of mind, in the defendants' favor, where proof easily accessible to the defendants was withheld by them.

Clearly, this Court, having found several independent bases existed for its decision, may well find that – even if the plaintiff is correct in some arguments made herein -- the Court's ultimate decision should nevertheless stand. If the Court reaches such a conclusion, the plaintiff respectfully requests that the Court modify its decision to the extent that the arguments herein show such modification to be warranted. In civil rights litigation, it is not only the final result which is important. How the result is obtained impacts deeply important public interests.

One of the purposes of civil rights actions pursuant to Section 1983 is to further "significant public interests." *Newton v. Rumery*, 480 U.S. 386, 394-395 (1987). "Section 1983 represents a balancing feature in our governmental structure whereby individual citizens are encouraged to police those who are charged with policing us all." *King v. Conde*, 121 F.R.D. 180, 195 (E.D.N.Y. 1988) (quoting *Wood v. Breier*, 54 F.R.D. 7, 11 (D. Wis. 1972)).

These important public interests compel that particular care be taken in announcing judicial decisions which might prejudice the very interests that Section 1983 was enacted to advance. For this reason, if the Court finds some of the plaintiff's arguments herein to be persuasive, but nevertheless determines that dismissal of this case

was the proper result, the plaintiff respectfully requests that the Court modify and narrow

the scope of its decision even if the dismissal itself is not reconsidered.  To the extent that

this Court is persuaded that some aspects of its decision have overlooked binding law, or

have incorrectly applied the law to the facts, the plaintiff urges the Court to consider the

benefit to the public interest which would accrue from correcting such errors, which

might otherwise perpetuate themselves in future cases.

## II. Summary of Determinative Facts

Because the Court is fully familiar with the record, this summary will focus only

on facts which the plaintiff believes are determinative of the need to modify the Court's

decision.  The plaintiff incorporates by reference the facts stated above and herein, as

well as those set forth in the plaintiff's filings on the summary judgment motion.

The protestors at 60 Centre Street initially intended to hold their protest on the

steps of the courthouse, which was not in session. (Docket 71, Plaintiff's Affirmative

56.1 at paragraph 36, hereinafter "PA56.1 @_").  Had the protest been allowed to take

place there, no inconvenience to any pedestrians on the sidewalk would have occurred.

Instead of allowing use of the steps, the police required the protestors to remain on the

sidewalk. PA56.1 @ 38.  The police never made any effort, prior to "closing" the

sidewalk entirely, to use crowd control to open a lane on the sidewalk for any non-

protestor pedestrians who might have been present.

The defendants, despite having the opportunity to do so, provided no evidence

that any non-protestor pedestrians actually were anywhere in the vicinity.  Foley Square

is, of course, largely surrounded by government buildings which were closed and

minimally staffed on that Saturday, November 5, 2011.  The presence of non-protestor pedestrians cannot be presumed.

When the police declared the sidewalk closed, they announced that the reason for the closure was some unspecified "hazard."  The defendants have provided no evidence of any actual or reasonably foreseeable hazard on that sidewalk.  The defendants, having denied the protestors the use of the steps, and then the use of the sidewalk in front of the steps, made arrests without offering or providing any alternative forum for the protest. PA56.1 @ 83-86.

The plaintiff's allegedly arrestable conduct was limited to walking in proximity to police officers, and saying, in increasing loud tones, "Treason!", PA56.1 @ 77, reflecting the plaintiff's opinion that the police were betraying their obligation to respect and enforce the founding document of our nation, the Constitution.

## III.   Standard of Review

"[S]ummary judgment is a 'drastic device, since its prophylactic function, when exercised, cuts off a party's right to present his case to the jury.'  Accordingly, the moving party bears a heavy burden of demonstrating the absence of any material issues of fact. Moreover, in reviewing a Rule 56 motion, a district court must resolve all ambiguities and draw all reasonable inferences in favor of the party defending against the motion. If, in this generous light, a material issue is found to exist, summary judgment is improper, and the case must proceed to trial."  *Nationwide Life Ins. Co. v. Bankers Leasing Ass'n*, 182 F.3d 157, 160 (2d Cir. N.Y. 1999).

"To be entitled to reargument, a party must demonstrate that the Court overlooked controlling decisions or factual matters that were put before it on the underlying motion."

*Eisemann v. Greene*, 204 F.3d 393, 395 (2d Cir. N.Y. 2000).  "The decision to grant or deny a motion for reargument is within the sound discretion of the district court."  *Shamis v. Ambassador Factors Corp.*, 187 F.R.D. 148, 151 (S.D.N.Y. 1999).

## IV.   The Orders to Disperse Were Not Lawful; Probable Cause Was Lacking for 240.20(6) and 195.05

The plaintiff respectfully asks this Court to reconsider its finding that the orders to disperse given by the police were lawful.  The plaintiff respectfully contends that the Court overlooked binding New York State Court of Appeals precedent, such as *People v. Jones*, 9 N.Y.3d 259 (2007), which requires some articulable public harm before an order to disperse may lawfully be given.  The plaintiff asks this Court to reconsider its reliance on older Court of Appeals authority, in particular *People v. Galpern*, 259 N.Y. 279 (1932), which has been superseded by changes in the Penal Law and by subsequent decisions like *Jones*.  The plaintiff also respectfully requests that the Court reconsider its reliance on Section 435(a) of the New York City Charter, which has never been employed by any New York State Court as providing probable cause for an arrest.

### A.   *Galpern* (1932), Approving Orders So Long as "Not Purely Arbitrary" Is Old Law Superseded by *Jones* (2007) and Other Cases.

This Court followed an 85 year old case, *People v. Galpern*, 259 N.Y. 279 (1932), as defining the standard for enforcement of Penal Law § 240.20(6), quoting the decision's holding that refusal to obey a police order to disperse "can be justified only where the circumstances show conclusively that the police officer's direction was purely arbitrary and was not calculated in any way to promote the public order."  Based on *Galpern*, this Court held that it was unlawful for the plaintiff to refuse to obey police orders to leave the sidewalk.  Separately (i.e., not relying on *Galpern*), the Court held that

the First Amendment modified the application of Penal Law 240.20(6) not at all. (Decision pp. 22-23).

This Court should reconsider its reliance on *Galpern*, which is not current or good law. *Galpern* does not, in itself, have anything to say about the interpretation of Penal Law 240.20(6), because the 1932 Court of Appeals was not interpreting that statute. The court was interpreting a significantly different statute, Section 722. Section 722 was a predecessor statute to Penal Law § 240.20, but the State Legislature repealed Section 722 and replaced it for a reason – the Legislature wanted to change the law of the State. The scope of the statute was narrowed to exclude acts that did not cause a breach of the peace:

> The former disorderly conduct statute (Penal Law, § 722) included acts, such as begging and loitering for immoral purposes, that did not have a tendency to breach the peace. The revisers of the new statute (Penal Law, § 240.20) excluded these acts and significantly narrowed the law to include only those acts tending to disrupt public order, or, to use their modern phraseology, "to cause public inconvenience, annoyance or alarm." *People v. Pritchard*, 27 N.Y.2d 246, 250 (1970) (Jasen, J. dissenting) (citing Proposed New York Penal Law, Commission Staff Notes, p. 388.).[1]

The New York City Law Department likes *Galpern*, because the Law Department thinks that, in judicial hands, *Galpern*'s statement that any police order which is not "purely arbitrary" must be obeyed, will mean that any police order must be obeyed, full stop. The 'not purely arbitrary' standard of *Galpern* invites speculation in the absence of

---

[1]     The majority opinion in *Pritchard* provided a similar characterization of the difference between Section 722 and Section 240.20(6): "The proscription of [240.20], 'unlike the former statute (§ 722), is limited to that type of conduct which involves a genuine intent or tendency to provoke a 'breach of the peace' or, to use the revision's more modern phraseology, 'to cause public inconvenience, annoyance or alarm.'" *People v. Pritchard*, 27 N.Y.2d 246, 248-249 (1970). In 1980, the Court of Appeals said; "a requirement that the disruptive behavior proscribed by our disorderly conduct statute be of public rather than individual dimension was evolving even before subdivision 2 of section 722 of the former Penal Law was replaced by the present section 240.20. The clear aim was to reserve the disorderly conduct statute for situations that carried beyond the concern of individual disputants to a point where they had become a potential or immediate public problem." *People v. Munafo*, 50 N.Y.2d 326, 331 (1980).

evidence of concrete harm.  This obviously favors police officer defendants.  On the other hand, of course, 'not purely arbitrary' means "**not** purely arbitrary."  Even in the world of *Galpern*, there has to be a reason for the order.  Because *Galpern* is not good law, however, for this case the Court must consider what **current** law says about Penal Law 240.20.  It is not necessary to determine what the 'not purely arbitrary' standard means, because it is no longer the law.

Shepardizing *Galpern* makes it abundantly clear that the case is not good law. The last time the New York Court of Appeals cited *Galpern*, it was in a dissent, in 1971. *See People v. Mehdi*, 29 N.Y.2d 824, 827 (1971) (Gibson, J., dissenting).  The majority opinion reversed the defendant's conviction for disorderly conduct, where the defendant had burned a flag, allegedly creating a hazardous condition (Penal Law § 240.20(7)).  As described by the dissent:

> The defendant was on "a public street [East 70th] in Manhattan, in the midst of a closely packed crowd of demonstrators, isolated and confined by police barricades. … [A]pproximately 150 to 200 people had congregated at the scene and [] 50 to 75 of them were then, for purposes of their demonstration, permitted to enter [the] confined area. … While other demonstrators held the flag outstretched, defendants ignited it with matches and lighters. When the flag was afire, the demonstrators were, according to the proof, standing close to the defendants, right around them. … The officer who testified at trial noted that while he felt the fire presented no danger to property or to passing pedestrians, he believed that it constituted a hazard to the demonstrators themselves."  *Id.* at 825-827.

The majority, in reversing the conviction, explained: "Intentional or reckless creation of a hazard is not established merely by the subjective conclusion of the police officer that there was a crowd and restraining barriers or that a small fire might have caused or threatened injury to relatively passive bystanders or sympathizers."  *Id.* at 825. In reaching this conclusion, the majority rejected the dissent's view that *Galpern* and another then-recent Court of Appeals case, *People v. Todaro*, 26 N.Y.2d 325 (1970),

provided the controlling rule.  The dissent quoted *Galpern*: "The courts cannot weigh opposing considerations as to the wisdom of the police officer's directions when a police officer is called upon to decide whether the time has come in which some directions are called for."  *Id.* at 827.  In rejecting the application of *Galpern* to this case, the Court of Appeals expressly "weigh[ed] opposing considerations" to the police officer's "subjective" view that the burning flag created a hazardous condition.  In so doing, the Court of Appeals held that speculation – even rational speculation – that a hazard might exist is not a lawful basis for a disorderly conduct arrest.

This Court should consider the similarities between the facts in the present case and those in *Mehdi*.  In the present case, the police pretext for closing the sidewalk was some unspecified "safety hazard."  The Court apparently accepted this allegation of a safety hazard as a sufficient basis for the orders to disperse: "The officers' orders to disperse were motivated, at least in part, by a desire to keep the sidewalks safe, which is of 'significant interest' to the City."  (Decision pp. 21-22) (citing *Bery v. City of N.Y.*, 97 F.3d 689, 697 (2d Cir. 1996)).  *Bery*, of course, struck down the speech regulation at issue before it, and it certainly did not hold that mere invocation of the word "safety," or, as the *Medhi* court put it, a "subjective" assessment by the police that some safety risk existed, was sufficient to justify an arrest.  *Bery* had nothing, in fact, to say about when police may or may not make an arrest for alleged safety reasons.[2]

The last New York Court of Appeals case to follow *Galpern* was the aforementioned *Todaro,* in 1970.  Like *Galpern*, *Todaro* involved a fact pattern in which a police officer asked a group of people hanging out on the street at night to move on, and

---

[2]     Because *Bery* is a federal decision, it could not – even if it purported to – modify the law of New York State concerning the lawfulness of orders to disperse.

they refused.  *Todaro* cited *Galpern* and held that the order to disperse was lawful, and must be obeyed on pain of arrest, because it was not arbitrary.  Like *Galpern*, in *Todaro* the Court found the officer's order to be justified not by the disorder caused by the defendant's actions, but by the risk that disorder would result from the defendant's actions, citing the language of 240.20(6).  *People v. Todaro*, 26 N.Y.2d 325, 328 (1970).  The court found such risk in the defendant's "use of clearly 'abusive and obscene language' in response to the officer's repeated requests to move on and his refusal to comply with such requests." *Id.* at 329.

 *Todaro* continues to be cited for the proposition that – as the statute says – reckless creation of risk of disorder is unlawful under 240.20.  No New York court has cited *Todaro* for its quotation of *Galpern*'s 'not purely arbitrary' standard since one local court in Suffolk County did so in 1972.  *See People v. Pettigrew*, 69 Misc. 2d 985, 996 (N.Y. Dist. Ct. 1972).

 The New York Court of Appeals has never expressly overruled *Galpern*, but it has clearly ceased to apply it, and has changed the manner in which similar fact patterns are adjudicated.  In 2007, the Court of Appeals once again addressed a fact pattern like *Galpern*, in which a police officer approached a group of people on a city sidewalk at night and told them to move on.  Unlike in *Galpern*, the Court of Appeals vacated the conviction.  The Court of Appeals described the fact pattern as follows:

> [D]efendant was charged, by information, with disorderly conduct in Manhattan (Penal Law § 240.20 (5)).  The information, tracking the statutory language, states, in part, that on June 12, 2004, at approximately 2:01 A.M., on 42nd Street and Seventh Avenue "defendant, with intent to cause public inconvenience, annoyance and alarm and recklessly creating a risk thereof, obstructed vehicular and pedestrian traffic."  The information further provides a statement by a police officer that: "he observed defendant along with a number of other individuals standing

9

around at the above location, to wit a public sidewalk, not moving, and that as a result of defendants' [sic] behavior, numerous pedestrians in the area had to walk around defendants [sic] . . . [D]eponent directed defendant to move and defendant refused and as deponent attempted to stop defendant, defendant did run." *People v. Jones*, 9 N.Y.3d 259, 260-261 (2007).

The Court of Appeals explained:

To meet the jurisdictional requisite to prosecute defendant for disorderly conduct under Penal Law § 240.20 (5), the People were obliged to set forth a prima facie case that defendant "with intent to cause public inconvenience, annoyance or alarm, or recklessly creating a risk thereof . . . obstruct[ed] vehicular or pedestrian traffic."

The allegations in the information do not meet this burden. Nothing in the information indicates how defendant, when he stood in the middle of a sidewalk at 2:01 A.M., had the intent to or recklessly created a risk of causing "public inconvenience, annoyance or alarm." The conduct sought to be deterred under the statute is "considerably more serious than the apparently innocent" conduct of defendant here.  Something more than a mere inconvenience of pedestrians is required to support the charge (id. at 332). Otherwise, any person who happens to stop on a sidewalk--whether to greet another, to seek directions or simply to regain one's bearings-- would be subject to prosecution under this statute.  *Id.* at 262 (quoting 240.20(5) and *People v Carcel*, 3 NY2d 327, 331 (1957)).

While the charge in *Jones* was 240.20(5), the facts stated by the Court of Appeals show the defendant was arrested as much for refusal to move on as for his presence on the sidewalk to begin with: "[D]eponent directed defendant to move and defendant refused…" *Id.* at 261.

*Jones* is a clear renunciation of the both *Galpern* and *Todaro*.  *Todaro,* after all, justified the police officer's order to disperse by reference to the location, "at the corner of Seventh Avenue and 42nd Street in New York City," saying: "The circumstances present here do not indicate any arbitrariness on the part of the police officer, charged as he was with maintaining public order on one of the busiest street corners in the world." *Todaro*, 26 N.Y.2d at 327, 329.  The defendant in *Jones* was in the **<u>exact</u>** same place,

42nd Street and Seventh Avenue, and yet, the result was the opposite of that reached in *Todaro*. *See People v. Reed*, 19 Misc. 3d 217, 219 (N.Y. City Crim. Ct. 2008) ("The Jones decision appears to have partially overruled, *sub silentio*, the Court's previous ruling in *People v Todaro*.") (citing *Jones*, 9 NY3d at 262); *People v. Taylor*, 19 Misc. 3d 1114(A), 1114A (N.Y. City Crim. Ct. 2008) (same). Federal courts which have applied the 'not purely arbitrary' standard of *Galpern* and *Todaro* have failed to respect changes in New York State law since 1970. With respect to the interpretation of the Penal Law, federal courts are **obliged** to follow the interpretations of the New York courts. *See United States v. Thirty-Seven (37) Photographs*, 402 U.S. 363, 369 (1971) ("we lack jurisdiction authoritatively to construe state legislation.").

While the New York Court of Appeal's decision in *Jones* did not turn on constitutional issues, it is doubtful that the *Galpern* standard would comport with Supreme Court cases which recognize the constitutional right of freedom of movement, including the freedom to loiter. *See e.g., City of Chicago v. Morales*, 527 U.S. 41, 53, (1999) (recognizing "freedom to loiter for innocent purposes" under the Due Process Clause); *Kolender v. Lawson*, 461 U.S. 352, 358, 103 S.Ct. 1855, 75 L.Ed.2d 903 (1983) (Striking down statute which placed ability to walk the streets "at the whim of any police officer;" holding that it implicates consideration of the constitutional right to freedom of movement and First Amendment liberties).

To the extent that *Todaro* lives on for the proposition that, as the statutory language of 240.20 states, "reckless" creation of a "risk" of disorder is a violation of the Penal Law, this Court should nevertheless pay careful heed to how limited the application of that principle is. The Penal Law defines "reckless" conduct as follows: "A person acts

recklessly with respect to a result or to a circumstance described by a statute defining an offense when he is aware of and consciously disregards a substantial and unjustifiable risk that such result will occur or that such circumstance exists. The risk must be of such nature and degree that disregard thereof constitutes a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Penal Law § 15.05(3).

In order to find that someone "recklessly" committed disorderly conduct, then, it is necessary to 1) define the public harm which the defendant's conduct creates a risk of, 2) show that the defendant is aware of the risk of that harm occurring, and 3) show that the defendant's conduct was "a gross deviation from the standard of conduct that a reasonable person would observe in the situation." Penal Law 240.20. Here, the fact that the plaintiff was, in good faith, engaging in protest to further what he viewed as the public interest surely has some significance. Can it really be said – consistent with our ideals as a Republic and with the First Amendment – that participation in a non-violent protest is "a gross deviation from the standard of conduct that a reasonable person would observe"?

The cases that turn on the "reckless" prong of 240.20 involve conduct like intoxicated fighting and shouting of obscenities late at night, disturbing sleeping residents. *See People v. Weaver*, 16 N.Y.3d 123, 126 (2011). Having no redeeming social value whatsoever, it is rational to find that such conduct is, indeed, "a gross deviation" from reasonable standards. For a protest, however, surely it is necessary to show – at a minimum – a gross deviation from the standards a reasonable **protestor** would observe.

The New York Court of Appeals holds that "mere inconvenience" to pedestrians is not unlawful, so it cannot be a "gross deviation" from reasonable conduct for a protestor to merely inconvenience others.  A protest almost always involves some inconvenience to somebody.

Given that protests almost always involve some form of chanting, shouting or signing, it cannot be a "gross deviation" from reasonable conduct in a protest to use the unamplified human voice.

No doubt it is possible to conduct a protest is some fashion which is  sufficiently deviant to be "reckless" as the Penal Law defines that term, but simply standing, walking around, calling out, or even shouting is normal conduct in a protest.  It is reasonable conduct.  In this case, if the plaintiff's conduct did not **actually** create a public harm, the recklessness prong of Penal Law 240.20 cannot endow his arrest with legality.

The foregoing considerations are simply straightforward interpretation of controlling state law.  On top of that, however, is the First Amendment jurisprudence which, in parallel, limits liability to a charge of disorderly conduct in the protest setting to circumstances where there is a clear and present danger of breach of the peace.   "It is axiomatic, for instance, that government officials may stop or disperse public demonstrations or protests  where 'clear and present danger of riot, disorder, interference with traffic upon the public streets, or other immediate threat to public safety, peace, or order, appears.'" *Papineau v. Parmley*, 465 F.3d 46, 56-57 (2d Cir. 2006) (quoting *Cantwell v. Connecticut*, 310 U.S. 296, 308 (1940).  The "police may not interfere with orderly, nonviolent protests merely because they . . . fear possible disorder." *Id.*.

**B.  The Defendants Failed to Provide Any Evidence of Public Harm**

13

As the New York State Court of Appeals made clear: "In virtually all of our prior decisions, the validity of disorderly conduct charges has turned on the presence or absence of adequate proof of public harm." *People v. Baker*, 20 N.Y.3d 354, 359 (2013). *Accord People v. Weaver*, 16 N.Y.3d 123, 127 (2011) (holding that statute is limited to conduct that creates or recklessly threatens a "breach of the peace."); *Jones*, 9 N.Y.3d at 263 (same); *People v. Johnson*, 22 N.Y.3d 1162, 1164 (2014) ("We have made clear that evidence of actual or threatened public harm ('inconvenience, annoyance or alarm') is a necessary element of a valid disorderly conduct charge.").

In the present case, the public harm that might have been occasioned by the protest itself is purely speculative. The defendants at the scene cited some unknown safety hazard. This Court speculated that – if there were pedestrians in the vicinity – they would have "steered clear of the demonstrators" by crossing the street. (Decision p. 24). It must be emphasized, however, (i) that there is no evidence in the record that any non-protestor pedestrians were present, or, (ii) if they were, whether they were more than merely inconvenienced by the protest by crossing the street. The defendants, to obtain judgment in their favor on this issue, were obliged to come forward with evidence. "The boundaries between fact, inference, and speculation are not always clear," but to find for one party on summary judgment "in the absence of evidence … would be to blur the distinction between logical inference and mere, unsupported speculation and conjecture," which Rule 56 forbids. *Doona v. Onesource Holdings, Inc.*, 680 F. Supp. 2d 394, 405 (E.D.N.Y. 2009).

It has been clearly established that "mere inconvenience," such as that hypothesized by this Court, is not sufficient public harm to satisfy demands of Penal Law

240.20.  As the New York Court of Appeals put it in *Jones*: "Something more than a mere inconvenience of pedestrians is required to support the charge" of disorderly conduct.  *People v. Jones*, 9 N.Y. 259, 262 (2007) (dismissing charge).  The Second Circuit (as it must) has followed the controlling precedent of the New York State courts on this issue. In *Papineau v. Parmley,* the Second Circuit held: "New York courts have interpreted this statute to permit punishment **only** where the conduct at issue does more than merely inconvenience pedestrian or vehicular traffic."  *Papineau,* 465 F.3d at 59 (citing *People v. Pearl*, 66 Misc. 2d 502, 321 N.Y.S.2d 986, 987 (1st Dep't 1971)) (emphasis added).  The elements of 240.20(5) have not been met even where demonstrators block a sidewalk, "requiring [pedestrians] to enter the roadway to get to the other side," or "forc[ing] pedestrians out into the street."  *Papineau*, 465 F.3d at 59 (quoting *Pearl*, 66 Misc. 2d 502 and *People v. Nixon*, 248 N.Y. 182, 185, 187 (1928)).

However rude he may have been, the harm which might have been occasioned by Mediavilla's own conduct, such as his yelling of "Treason!" at police officers, is also speculative.  This aspect of the public harm issue is discussed in a later section which deals with Penal Law §§ 240.20(1) and 240.26.

### C.  The City Charter Provides No Basis for an Order to Disperse

The New York State Court of Appeal's decision in *Jones* also demonstrates that the City Charter argument adopted by this Court - that Section 435(a) of the City Charter rendered the order to disperse lawful - is not good law.  The City Charter authorizes the municipality to create a police force, and, in very general terms, defines the scope of what the police force may do.  The scope of permitted activity is generally what one would expect a police force to do.  As this Court noted, the Charter allows the police force to "regulate, direct, control and restrict the movement of vehicular and pedestrian traffic for

the facilitation of traffic and the convenience of the public."  (Decision pp. 20-21)

(quoting City Charter § 435(a)).  If this meant that anything the police did which related

to control of traffic was "authorized" or lawful, then no conviction under 240.20(6) could

**ever** be vacated.  Certainly, the Court of Appeals would have upheld the conviction of

the defendant in *Jones*, who refused to obey an order to move on made by the police.

Similarly, the many cases in which charges of resisting arrest or obstructing

governmental administration were dismissed or vacated because the defendant resisted an

arrest that was unauthorized would not have been decided as they were if Section 435(a)

of the City Charter were determinative.  *See, e.g., People v Finch*, 23 N.Y.3d 408, 416

(2014); *People v Jensen*, 86 NY2d 248, 253 (1995); *People v Peacock*, 68 NY2d 675,

676-677 (1986)).   The *Jones* decision is an example: the defendant refused to move on

when directed to by the police, but the Court of Appeals held that the defendant's arrest

was **not** authorized.  *See Jones*, 9 N.Y.3d at 263.  This result is utterly inconsistent with

this Court's application of the City Charter.

Research has not disclosed a **single** New York State court case in which Section

435 of the City Charter has been employed as the Court has done here.  The fact that the

Second Circuit referenced it in *Marcavage* (without explaining whether its holding

depended on the Charter or not), does not alter the fact that the controlling law on this

issue, which is the law of New York State, does not support the conclusion that the

Charter provides a basis for an arrest under any circumstances.  *Cf. Marcavage v. City of

New York*, 689 F.3d 98, 109-110 (2nd Cir. 2012).[3]  Not only is there no New York State

---

[3]      The Court should note, furthermore, the many differences between *Marcavage* and the present
case, the most important being that *Marcavage* involved a pre-planned, comprehensive system  designed by
the police of accommodating thousands of people in a multi-block zone around a presidential convention,

case law to support the Court's position, the Charter itself limits the power of police to make arrests, stating that police may only arrest "persons guilty of violating any law or ordinance for the suppression or punishment of crimes or offenses."  City Charter § 435(a).

"[F]ederal courts must of course defer to state-court interpretations of the state's laws, so long as those interpretations are themselves constitutional."  *See Davis v. Strack,* 270 F.3d 111, 124 (2d Cir. N.Y. 2001).  Federal courts should abstain from innovating New York State law.  As the Second Circuit has explained: "we have regularly deferred to the views of New York's highest court in areas of first impression in New York law. Principles of federalism and comity require it; a vibrant and effective certification process ensures it."  *Regatos v. N. Fork Bank*, 396 F.3d 493, 498 (2d Cir. N.Y. 2005).

The decision to certify "is made after considering three questions: (1) whether the New York Court of Appeals has addressed the issue and, if not, whether the decisions of other New York courts permit us to predict how the Court of Appeals would resolve it; (2) whether the question is of importance to the state and may require value judgments and public policy choices; and (3) whether the certified question is determinative of a claim before [the federal court]."  *Osterweil v. Bartlett*, 706 F.3d 139, 142 (2d Cir. 2013). Applying the facts at hand to the first two prongs of this test clearly favor certification to the New York Court of Appeals of the questions concerning application of section 435(a) of the City Charter.  There is a complete absence of New York State case law on the question, and it involves public policy choices.  The third prong is less certain, because

---

while the facts of this case involve an *ad hoc* decision by police to disperse a group of protestors without providing any alternative forum whatsoever.

the Court might, by basing its decision on some other ground, possibly obviate the need for certification of the question.

If this Court were to maintain the Charter argument as a basis for its decision, however, it should certify the question of whether, because of Section 435(a) of the Charter, the mere fact that a police order relates to management of traffic renders the order lawful and/or authorized, so that failure to obey the order is a violation of the Penal Law, without regard to whether there is a factual basis supporting the order.

The issue is important, because of the broad sweep that this Court's ruling on the application of Section 435 of the City Charter would have in other cases.  Is there any protest that could not be dispersed if the Charter – alone and without reference to any identifiable hazard or independent violation of the Penal Law – authorizes the police to issue dispersal orders which must be obeyed on pain of arrest?  Even a demonstration pursuant to a permit could be dispersed at will by police (who, after all, issue the permits).  Such an interpretation of the Charter would give the police unquestionable and unlimited power to silence dissent. This Court should not allow itself to be recruited to establish such an anti-democratic principle. [4]

It cannot be the case that political monetary contributions are speech that is immune to governmental interference (*see Citizens United v. Federal Election Commission,* 558 U.S. 310 (2010)), while actual, physical speech in a traditional public forum can be terminated by the police at their whim.

### D.  Probable Cause Was Lacking for 240.20(6) and 195.05

---

[4]     The defendants will no doubt argue that the Second Circuit's ambiguous reference to the charter in *Marcavage* has already made this law.  The opinion is far from clear, and the Second Circuit lacks authority to declare the law of New York State.

By its express terms, an arrest for failure to disperse pursuant to 240.20(6)
requires a lawful order.  *Jones* and other cases show that there must be an articulable
reason, which has objective validity, for such an order to be lawful.  If this were not the
case, every police officer could become a mini-despot, capable of conjuring an arrestable
offense simply by giving an order to move on.  For similar reasons, a police officer
cannot make an unlawful order to disperse and then arrest those who "obstruct" its
enforcement.  This must be especially true where the "obstruction" is mere failure to
obey the order.  Otherwise, the result would be the incongruous situation that a citizen
would not be chargeable with the non-criminal violation 240.20(6), but, for the same
conduct, would be chargeable with the misdemeanor 195.05.  Such an interpretation of
195.05 would make nonsense of rulings of the New York Court of Appeals such as
*Jones*.

## V. Probable Cause Was Lacking for Penal Law 240.20(1) and 240.26

This Court found that there was probable cause to arrest the plaintiff for probable
cause to arrest Plaintiff for Disorderly Conduct and Harassment pursuant to Penal Law §
240.20(1) and Penal Law § 240.26.  (Decision p. 24).  This is unquestionably the
strongest basis for the Court's decision.  The plaintiff was, after all, loud in his
exclamations of "Treason!" near Lt. Zielinksi.  Nevertheless, the Court should reconsider
this aspect of its decision because the defendants failed to present sufficient evidence to
eliminate all questions of fact on these issues.

In holding that the plaintiff's conduct indisputably violated Penal Law §
240.20(1), the Court construed ambiguities in the evidence against the plaintiff.  While it
is possible that a jury might find that the protestors seen repeatedly patting the plaintiff's

shoulder did so because the protestor was "alarmed" at the plaintiff's actions, this is surely not the only possible interpretation of the video evidence.  Where such an ambiguity exists, the Court must draw inferences in the **plaintiff's** failure, not in favor of the defendants.  With respect to Penal Law 240.26, the defendants had the opportunity to present evidence by affidavit that defendant Zielinski or some other officer was, in fact, "alarm[ed] or seriously annoy[ed]."  The defendants, despite knowing their obligation to present their proof, did not do so.  The officers' mental state is not something that can be discerned from videotape beyond any material dispute.  This Court should not have drawn inferences concerning the officers' state of mind, in the defendants' favor, where proof easily accessible to the defendants was withheld by them.

## VI.   Conclusion

For all the foregoing reasons, the plaintiff respectfully requests that this Court reconsider its decision on the motion for summary judgment, and deny that motion in its entirety.

Dated:      New York, N.Y.
            October 13, 2016

_____//s//_____
David Thompson [dt3991]
Stecklow & Thompson
217 Centre Street, 6th Floor
New York, NY 10013
Phone:  (212) 566-8000
Fax:     (212) 202-4952
Email: dave@sctlaw.nyc